**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CARMEN LIDIA JORGE, et al.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**POLICE DEPARTMENT OF COMMONWEALTH OF PUERTO RICO, et al.**<br><br>**Defendants.** | **CIVIL NO.  11-2268(JAG)** |

**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TO THE HONORABLE COURT:**

**COMES NOW**, co-defendants **HON. JOSE LUIS CRUZ CRUZ** and **RADAMES BENITEZ,** in their personal capacities, and without submitting to the Court's jurisdiction and through the undersigned attorney, who appears for the sole purpose of this motion, very respectfully states and prays as follows:

## I.    INTRODUCTION

On December 30, 2011 Plaintiffs filed complaint against several defendants from the Police Department of Puerto Rico("PRPD"), the Police for the Municipality of Trujillo Alto ("Municipal police") and other officials. Appearing defendants are Mayor for the Municipality of Trujillo Alto Honorable José Luis Cruz-Cruz ("the Mayor") and the Police Commissioner for the Municipality of Trujillo Alto Radames Benitez ("the Commissioner"). The complaint states that on December 31, 2010 plaintiff EFG was subjected to the deprivation of his constitutional rights by defendant's use of excessive force. On said date plaintiff EFG was in an automobile with two other individuals that stopped at a recycling center in Trujillo Alto. Apparently, EFG was

unaware of the "intent" of the other individuals, who exited the vehicle and then suddenly rushed back to the same. Dkt. 1, ¶ 22 and 23. The car left the scene being pursued by police officers from the PRPD Mayra Figueroa Diaz, Luis R. Rivera and Miguel Marrero Moya. Dkt. 1, ¶ 24 and 25. The automobile then drove to a nearby housing development named Los Claveles. After fifteen minutes and their being no pursuit by the police, EFG and the other individuals exited the development in the automobile and they were pursued by Municipal police officer Marin and other unidentified municipal officers who were subsequently joined by PRPD officers. Dkt. 1, ¶ 26, 27 and 28. Plaintiffs further allege that officers discharged their firearms at the vehicle with EFJ inside who then fled to the nearby brush. Dkt. 1, ¶ 29 and 30. Police Department officers Ivan Lebron Lebron , Juan Carlos Ortiz , Sergeant Galarza and other unidentified officers arrived at the scene. Likewise, unidentified Municipal police officers and officer Marin were also present. Dkt. 1, ¶ 31, 32 and 33. Officers from the Municipal police and the Police Department shot at EFJ. Officer Juan Carlos Ortiz Cruz from the PRPD allegedly admitted to shooting at plaintiff. Dkt. 1, ¶ 35 and 37. EFJ was shot twice in the back. Dkt. 1, ¶ 41. According to plaintiffs, EFJ was subsequently taken to Auxilio Mutuo Expreso Hospital in a way that violated EFJ constitutional rights. Dkt. 1, ¶ 43-46.

In the case of appearing defendants, plaintiffs allege that the Mayor, in authorizing the use of excessive force by Municipal Officers, engaged in inadequate recruitment, training and supervision of the municipal police force. Dkt. 1, ¶ 57. Additionally, plaintiffs state that both the Mayor and the Commissioner were aware of the findings of the Investigative Report of the US Department of Justice of September 5, 2011 and ignored the same when it came to working in collaboration with the PRPD. This, according to plaintiffs, eventually led to the unconstitutional acts committed on EFJ and the damages caused by those acts. Dkt. 1, ¶ 58. Pursuant to the

above, plaintiff brings forth this action against defendants under 42U.S.C.A § 1983 for excessive force, inadequate recruitment, inadequate training and supervision in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of Puerto Rico. As will be discussed plaintiff has failed to state a claim for which relief can be granted and this complaint should be **DISMISSED WITH PREJUDICE.**

## II. DISCUSSION
### A.    Legal Standard for Motion to Dismiss

A defendant can assert the defense of failure to state a claim upon which relief can be granted as allowed by Federal Rule of Civil Procedure 12(b)(6). Pursuant to Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *See* Brown v. Hot, Sexy and Safer Products, Inc., 68 F.3d 252, 530 (1st Cir. 1995). In this analysis, the Court accepts all well pleaded-factual allegations as true, and indulges all reasonable inferences in Plaintiff's favor. *See* Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). Nonetheless, the Court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *See* Aulson v. Blanchard, 83 F3d 1, 3 (1st Cir. 1996). Additionally, when opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *See* McCoy v. Massachusetts Institute of Technology, 950 F2d 13, 22 (1st Cir. 1991). In this regard, plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. Id., at 23. Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under actionable theory." *See* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir 1988). Thus, a complaint is properly dismissed for failure to state a claim "only if the facts

lend themselves to no viable theories of recovery." *See* Luc v. Wyndham Management Corp., 496 F3d 85, 88 (1st Cir. 2007).

Recent Supreme Court opinions have clarified the law with respect to a plaintiff's pleading requirement in order to survive a Rule 12(b)(6) motion. To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *See* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id., at 1964-65. In Bell Atlantic the Supreme Court further explained that the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true". Id. at 1965. Subsequently, the Supreme Court reiterated that "[s]pecific facts are not necessary; the statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*quoting* Twombly, 127 S.Ct. at 1964). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).

Under Bell Atlantic, the factual allegations which are assumed to be true must do more than create speculation or suspicion of a legally cognizable cause of action; they must demonstrate the plausibility of entitlement to relief. Bell Atlantic, 550 U.S. at 555, 557. *Accord*, Sanchéz v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009); and MVM Inc. v. Rodríguez, 568 F. Supp. 2d 158, 167 (D.P.R. 2008). Additionally, Federal Rule of Civil Procedure 8(a)(2) does

Case 3:11-cv-02268-JAG   Document 32   Filed 05/25/12   Page 5 of 21

MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)          5
CARMEN LIDIA JORGE v. POLICE DEPARTMENT COMMONWEALTH OF PR
CIVIL NO. 11-2268 (JAG)

require a "showing" that a plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." Bell Atlantic, 550 U.S. at 556, n. 3.

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atlantic, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Ashcroft, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

As a result, when analyzing a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) this Honorable Court must conduct its analysis by first identifying the allegations of the complaint that are no more than legal conclusions and then zero in on the well-pleaded non conclusory factual allegations to determine whether they, by themselves, plausibly give rise to an entitlement to relief. Penalbert-Rosa v. Fortuño-Burset, 692 F.Supp.2d 206, 209 (D.P.R. 2010). This means that the Court must analyze if plaintiffs' federal claims move "across the line from conceivable to plausible." *Id.*; citing Bell Atlantic, 550 US at 555.

## II. DISCUSSION

### A. Plaintiff has failed to state a claim upon which relief can be granted under 42 USC § 1983

Plaintiffs claim against the appearing Defendants should be dismissed for failing to state a claim under which relief can be granted. In order to have a valid claim under 42 U.S.C. § 1983, three elements must be alleged before it becomes cognizable. A § 1983 plaintiff must allege and prove the following elements: 1) that the conduct complained of was committed by a person

acting "under color of state law." *See* Gomez v. Toledo, 446 US 635, 640 (1980); 2) that this conduct "deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States"; See Parrat v. Taylor, 451 US 527, 535 (1981); overruled in part on other grounds; Daniels v. Williams, 474 US 327, 330-331 (1981); Votour v. Vitale, 761 F. 2d 812, 819 (1st Cir. 1985); and 3) that defendant was personally and directly involved in causing the violation of plaintiff's federally protected rights. [Emphasis added]. This third element requires a showing of a causal connection between the specific defendants and plaintiff's federal rights deprivation. [Emphasis added]. See Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir. 1986); Coon v. Ledbetter, 780 F.2d 1158, 1161 (5th Cir 1986). This may consist of direct acts by the defendant, certain act performed at defendants' direction or knowledge and consent. Each defendant individually responds for his own acts and omission in the light of his own duties. *See* Rizzo v. Goode, 423 US 362, 370 (1976); *see e.g.* Monell v. New York Dept. of Social Services, 436 US 658, 694 (1978).

As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d at 91-92 (finding that there is no liability on the basis of *respondeat* superior, and thus, "[a] supervisor may be found liable only on the basis of his own acts or omissions"); Wilson, 801 F.2d at 322 (finding, in a § 1983 action against police officers, that "liability may be found only if there is personal involvement of the officer being sued").

The second prong of § 1983 itself has two elements. The first element requires that there was, indeed, a deprivation of rights, privileges or immunities secured by the United States Constitution or laws. Votour v. Vitale, 761 F. 2d at 819. The second element requires plaintiffs to show that the alleged deprivation was caused by the defendants' conduct. Id. at 819.

The second element of the second prong, the causation element, has three components. Plaintiffs must show, first that each defendants' acts or omissions caused the deprivation of the rights at issue. Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Plaintiffs must show, second, that the defendants' conduct or inaction was intentional, grossly negligent, or must have amounted to a reckless or callous indifference to the constitutional rights of others. Velázquez-Martínez v. Colón, 961 F.Supp. 362, 365 (D.P.R. 1997) (internal citations and quotations omitted). Finally, and thirdly, plaintiffs must demonstrate an "affirmative link between the street-level misconduct and the action, or inaction, of supervisory officials." Id. (citing Gutierrez-Rodríguez, 882 F.2d at 562) (internal citations and quotations omitted).

In the case before this Honorable Court Plaintiff has failed to state a claim against co-defendants the Mayor and the Commissioner. The only mention of them is a wholly conclusory allegation claiming that "in authorizing the use of excessive force by Municipal Officers, the Mayor engaged in inadequate recruitment, training and supervision of the municipal police force". Dkt. 1, ¶ 57. Additionally, they claim that both the commissioner and the mayor had knowledge of the findings of the Investigative Report of the US Department of Justice of September 5, 2011 and they ignored it when working with the PRPD. Dkt. 1, ¶58. Both allegations against appearing defendants are not supported by the factual contentions that have been alleged in the complaint. They are therefore completely speculative, conclusory in nature and in no way or form factually developed in the complaint. Consequently, they fail to pass the motion to dismiss standard and should be **DISMISSED** accordingly.

### B.  Failure to Supervise and Failure to Train Claims

Plaintiff brings forth claims against the Mayor for failure to supervise or failure to train. Dkt.1, ¶57. Under § 1983, courts have treated claims for both failure to supervise and failure to train under the general category of supervisory liability. "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir.2005) (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir.1999)).

Like municipal liability, supervisory liability cannot be predicated on a respondeat superior theory. *Barreto-Rivera v. Medina-Vargas,* 168 F.3d 42, 48 (1st Cir.1999). Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions. *Id.* Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *See Camilo-Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir.1999). Absent direct participation, a supervisor may only be held liable where "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was '*affirmatively link [ed]* ' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.' " *Hegarty v. Somerset County,* 53 F.3d 1367, 1379-80 (1st Cir.1995) (quoting *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 902-03 (1st Cir.1988)). Whitfield at 14 (1st Cir. 2005).

Nowhere in the complaint do plaintiffs allege that either the Mayor or the Commissioner were  present when these events occurred or that either of them witnessed their occurrence. In this regard the allegation that the Mayor "authorized the use of excessive force by Municipal Officers" and that both him and the Commissioner were aware of the findings of the

Investigative Report of the US Department of Justice of September 5, 2011 and ignored the same when it came to working in collaboration with the PRPD is nothing more than a conclusory allegation that is not based on the factual contentions that have been brought forth in the complaint. This alone demonstrates that there is no affirmative link between the subordinate's alleged violation and the action or inaction of appearing defendants.

In determining whether the facts alleged in the complaint are sufficient to survive the Rule 12(b) motion, the courts employ a two-pronged approach. The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory. *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011). "[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Peñalbert–Rosa v. Fortuño–Burset,* 631 F.3d 592, 595 (1st Cir.2011) (quoting *Twombly,* 550 U.S. at 557 n. 5, 127 S.Ct. 1955).The second prong is to ask whether the facts alleged would "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949) (internal quotation marks omitted).When a complaint pleads facts that are " 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). This is what plaintiffs have done in the case at bar. The lack of factual contentions against appearing

defendants means that plaintiffs have failed to affirmatively link any action, inaction, policy or custom that in any way involves the Mayor or the Commissioner. They have only brought forth a naked accusation of liability without any factual allegation that could make the accusation plausible. This can not and does not pass the Iqbal standard as recently confirmed by the First Circuit in Soto Torres v. Fraticelli, 654 F. 3d 153 (1st Cir. 2011).

On the other hand, a general accusation that both the Commissioner and the Mayor were aware of the Report regarding the Puerto Rico Police Department by the US Department of Justice ("PRPD Report") is nothing more than an unfounded claim with no consequence as to the specific allegations in the complaint before this court. Plaintiffs don't even bother to explain how the speculative awareness of the PRPD Report by appearing defendants relates to the specific facts of the complaint and more so, how it specifically relates to the persons of the Commissioner and the Mayor.

First, the Report on the PRPD was intended for the PRPD and not the Municipalities of Puerto Rico. In this sense plaintiffs can not pretend to vicariously attribute the opinions of the Report on the officers of the municipalities and much less on the Mayor or the Commissioner. Additionally, it would be outrageous to assume that a conclusory opinion regarding different defendants in different cases would unequivocally bind the liability of appearing defendants.

Second, the Report is inadmissible given that it is irrelevant to the ultimate decision as to whether the individual defendants should be held liable under section 1983. The Report in question was rendered pursuant to a theory of "pattern or practice" case brought under sec. 14141. The standards for the imposition of liability under sec. 1983 and sec. 14141 are different. Case law interpreting one statute is not binding on the other because of the onerous standard of proof applicable to supervisory liability "policy or custom" actions brought under section 1983.

Moreover, in order to obtain supervisory liability under sec. 1983, plaintiffs must prove the existence either of an institutional "policy" authorizing misconduct or a police "custom" of misconduct, defined as a "continuing, widespread, persistent pattern of unconstitutional misconduct by the subordinates that the policymakers ignored. See Thelma D. v. Board of Education, 934 F.2d 929, 932-33 (8th Cir. 1991). Thus it seems that sec. 1983 case law will not bind courts interpreting sec. 14141. To the contrary, an examination of sec. 14141 will reveal that Congress decided to use the "pattern or practice" standard instead of adopting the more stringent "custom" standard of sec. 1983 which contains limiting adjectives such as "continuing," "widespread" and "persistent." This fact alone renders the Report, brought against the PRPD for supervisory liability under section 1983, inadmissible due to its lack of relevance to the action. In the case of appearing defendants it is beyond inadmissible given the fact that the report was not even intended at them.

Furthermore, a Report concluding that there is a "pattern or practice" under sec. 14141 and rendered for such litigation does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action [of individual liability under sec. 1983] more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The Federal Rules of Evidence are clear, relevant evidence in this case would have to make the existence of any fact regarding the persons of the Mayor or the Commissioner more probable or less probable than it would be without the evidence. The report does not serve this purpose.

For the complaint to have asserted a cognizable claim against appearing defendants, it was required to allege additional facts sufficient to make out a violation of a constitutional right. Those additional facts would then be measured against the standards for individual liability. The complaint would have had to plead facts supporting a plausible inference that the Mayor and the

Commissioner personally directed the officers to take those steps against plaintiff which themselves violated the Constitution in some way. The complaint fails to do so. See, Soto Torres v. Fraticelli, 654 F. 3d 153,159 (1st Cir. 2011). Consequently, given that the pleadings against appearing defendants in the case at bar do not state a claim for which relief can be granted this complaint should be **DISMISSED WITH PREJUDICE.**

## C.  The Complaint fails to state a 14th Amendment lack of due process claim

The Fourteenth Amendment of the United States Constitution provides in part that no State "shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1. An individual cannot be deprived of a significant right or interest in liberty or property "without first warning the individual and providing "an opportunity to be heard 'at a meaningful time in a meaningful manner.'"" Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (citing Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

The Due Process Clause of the Fourteenth Amendment has two components: procedural due process and substantive due process.  García v. City of Albuquerque, 232 F.3d 760, 769-73 (10th Cir. 2000)(court rejected plaintiff's procedural and substantive due process claims).  While procedural due process ensures that citizens have procedural safeguards prior to deprivation of rights, substantive due process limits the impingement of certain fundamental rights regardless of process.  Thomas v. Cohen, 304 F.3d 563, 578 (6th Cir. 2002).  Procedural due process ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision, while substantive due process guarantees that a state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures used in making the decision.  Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).

The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions. Daniels v. Williams, 474 U.S. 327, 331 (1986). The substantive due process guarantee does not, however, serve as a means of constitutionalizing tort law so as to "impos[e] liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

When a plaintiff presents a substantive due process claim that challenges the specific acts of a state officer, the plaintiff must show both that the acts were so atrocious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property. *See* Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005)(stating that "[i]t is not enough to claim the governmental action shocked the conscience" but that a plaintiff must also show a deprivation of a protected interest). Consequently, "conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action. DePoutot v. Raffaelly, 424 F.3d 112, 118 n.4 (1st Cir. 2005).

In the case at bar, plaintiff's claims are premised on the use of excessive force. Thus, plaintiffs have failed to demonstrate a substantive due process claim under the Fourteenth Amendment. In Graham v. Connor, 490 U.S. 386, 395 (1989), the United States Supreme Court held that:

> **all claims that law enforcement officers have used <u>excessive force</u> –deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed <u>under the Fourth Amendment</u> and its "reasonableness" standard, rather that under a "substantive due process" approach. <u>Graham</u>, 490 U.S. at 395.**

Given that the instant case is an excessive force complaint; such claims should be analyzed under the Fourth Amendment and not under the Fourteenth Amendment. The Fourth

Amendment contains specific provision in order to analyze the events alleged in the Complaint. Because the Fourth Amendment provides an explicit textual source of constitutional protection against illegal seizures, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing claims of illegal seizure. Ramirez–Lluveras v. Pagán–Cruz__ F. Supp. 2d__ 2011 WL 4552536 (D. Puerto Rico). Thus, since there is a specific constitutional provision to analyze the instant case, any substantive and procedural due process claim under the Fourteenth Amendment cannot prevail.

Therefore, the appearing defendants respectfully request to this Honorable Court to **DISMISS** any claim under the Fourteenth Amendment **WITH PREJUDICE.**

**D.    Failure to state a claim under the Fifth Amendment pursuant to 42 U.S.C.**
      **§1983**

The Fifth Amendment Due Process clause applies "only to actions of the federal government-not to those of state or local governments." Martinez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007)(citing Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); *see also* Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996)("[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case."); *cf.* Dusenbery v. United States, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States from depriving any person of property without 'due process of law.'")).

It has long been established that the Fifth Amendment applies to actions of the federal government, not those of private individuals, nor of state governments. Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447, 449 (1983).

There are no federal actors present as parties in this case, nor has any federal action or lack thereof been alleged. Therefore, because the Fifth Amendment is not applicable in the instant case, plaintiff's Fifth Amendment claims should be dismissed. *See also* <u>Medina Díaz v. González Rivera</u>, 371 F.Supp.2d 77, 83 (DPR 2005). Consequently, it is respectfully requested that this Honorable Court **DISMISSES WITH PREJUDICE** the cause of action under the Fifth Amendment as to all appearing defendants.

### E.      Qualified Immunity

Even though none of the defendants hold any direct responsibility based on the § 1983 standard, in the alternative, they are entitled to qualified immunity as to their personal capacity since they acted according to the law and in the performance of their discretionary duties.

Qualified immunity is an affirmative defense against liability, which may be raised by state officials sued in their personal capacity. *See* <u>Gómez v. Toledo</u>, 446 U.S. 635, 640 (1980). The qualified immunity doctrine shields government officials sued in their personal capacity from civil liability for monetary damages when they perform discretionary duties and their conduct does not violate "clearly established" rights that a "reasonable person would have known." <u>Harlow v. Firtzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). *See also* <u>Rivera-Ramos v. Román</u>, 156 F.3d 276 (1st Cir. 1998); <u>Nereida-González v. Tirado</u>, 990 F.2d 701, 704 (1st Cir. 1993). This rule concentrates on the objective reasonableness that may be attributed to the official's conduct. <u>Id.</u>, at 819. The Supreme Court has expressed that qualified immunity "provides protection to all but the plainly incompetent." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U. S. 551, 567 (2004) (*citing* Butz v. Economou, 438 U. S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

In Davis v. Scherer, 104 S.Ct. 3012, 3019 (1984), the Supreme Court stated that "[t]he qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." This Honorable Court has expressed that "[a] state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that this conduct satisfies the rest of objective legal reasonableness." Camilo-Robles v. Hoyos, 151 F.3d at 5-6 (1st Cir. 1998). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In the case of Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court of the United States mandated a two step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has or shown make out a violation of a constitutional right. 533 U. S., at 201. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. The Court of Appeals for the First Circuit added an

additional step to the qualified immunity inquiry, that is, 3) if both these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *See* Vázquez-Valentín v. Santiago-Díaz, 459 F.3d 144, 154, n.6 (1st Cir. 2006) (*citing* Wilson v. City of Boston, 421 F.3d 45, 52-53 (1st Cir. 2005)).

However, the Supreme Court recently stated that the two step sequence should not be regarded as mandatory. "On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand". Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

This flexibility properly reflects our respect for the lower federal courts that bear the brunt of adjudicating these cases. Because the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decision making will best facilitate the fair and efficient disposition of each case. Pearson, 129 S.Ct. at 821.

For supervisors seeking qualified immunity, the two step prong is satisfied when "1) the subordinate's actions violated a clearly established constitutional right, and 2) it was clearly established that a supervisor would be liable for constitutional violations perpetuated by his subordinates in that context". Camilo-Robles v. Hoyos, 151 F.3d at 6. *Brosseau v. Haugen,* 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); *see also Mlodzinski v. Lewis,* 648 F.3d 24, 32–33 (1st Cir.2011); Soto-Torres v. Fraticelli, 654 F.3d 153 (1st Cir. 2011)

"In deference to the sensitive discretionary judgments that government officials are obliged to make, qualified immunity safeguards even unconstitutional conduct if a reasonable officer at the time and under the circumstances surrounding the action could have viewed it as lawful." *See* Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed. 2d 271 (1986). Therefore, the question would not even focus on the constitutionality of the above mentioned supervisor's actions, but on whether a reasonable supervisory officer at the time and under the circumstances surrounding the action could have viewed it as lawful.

As explained above, in the case at hand, is clearly evident that appearing defendants have not violated any constitutional right of plaintiffs. Additionally, plaintiffs have failed to adequately articulate any facts that would point to the commission of unconstitutional acts by appearing defendants.

Therefore, the appearing defendants very respectfully request from this Honorable Court to **DISMISS WITH PREJUDICE** the instant Complaint since they are entitled to the qualified immunity defense.

**F. Failure to establish a claim under Article 1802 and 1803 of the Puerto Rico Civil Code**

Plaintiff's second cause of action arises under the Puerto Rico general tort statues. Dkt. 12 ¶ 6.1-6.7. Art. 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990), which governs tort liability in Puerto Rico, reads:

> A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

Thus, pursuant to the aforementioned provision, a person is liable for damages resulting from his/her negligent acts or omissions provided plaintiff establishes: (1) a negligent act or

omission, (2) damages, and (3) a causal relationship between them. Irvine v. Murad Skin Research Laboratories, Inc., 194 F.3d 313, 321-22 (1st Cir. 1999); Adorno v. Browning Ferris Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998); Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987); Pons Anca v. Engebretson, 160 D.P.R. 347, 354 (2003); Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998); Toro-Aponte v. E.L.A., 142 D.P.R. 464, 473 (1997).

On the other hand, Art. 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990), which governs vicarious tort liability in Puerto Rico, reads:

> § 5142 Liability for damages caused by minor, incapacitated person, employee, agent, pupil, or apprentice; liability of Commonwealth
>
> The obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.
>
> The father, and, in the event of his death or incapacitation, the mother, is liable for the damage caused by the minor children living with them.
>
> Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.
>
> Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.
>
> The Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable.
>
> Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

Negligence arises from the failure to anticipate damages a reasonable and prudent person would rationally foresee would result from its own actions and omissions inasmuch as damages by themselves do not give rise to a claim. Negligence ensues if the injuries could be foreseen or reasonably anticipated by a reasonable and prudent person. Rivera-Santiago v. U.S., Slip Copy,

2009 WL 702235, p. *3 (D.P.R. 2009) <u>Colon Gonzalez v. Tienda K-Mart, 154 D.P.R. 510, 518 (2001)</u>.

"Once a plaintiff has demonstrated that the defendant was negligent (meaning that the defendant breached its duty of care), she must then demonstrate that the defendant's negligence was the proximate cause of her injuries." <u>Vazquez-Filippetti</u>, 504 F.3d at 49. Injuries or damages are proximately caused by an act or omission whenever it appears from the evidence that the act or omission played a substantial role in bringing about or actually causing those injuries or damages. <u>Soto Cabral v. E.L.A</u>., 138 D .P.R. 298, 316 (1995).

"A defendant's actions may only be the proximate cause of a plaintiff's injuries if they in fact caused the injuries and the defendant could have reasonably foreseen that the injuries (or related harms) would result from his actions. Foreseeability, therefore, is relevant to both of these elements of a tort claim. A plaintiff might rely on similar, or even identical, factual evidence to carry her burden on both elements, but they remain distinct legal concepts." <u>Vazquez-Filippetti</u>, 504 F.3d at 49 (internal citation omitted.). In the case before this court there can be no damages claim against appearing co-defendants given the fact that there was no personal involvement on their part and the pleadings do not comply with the minimum standard required by <u>Iqbal</u>. Additionally, the obligation imposed by Art. 1803 of the Puerto Rico Civil Code is demandable, only for the persons listed in Article 1803. Appearing defendants, in their personal capacities, are not included in Article 1803 so as to impose this type of responsibility upon them. As such, this honorable court should **DISMISS WITH PREJUDICE** the Art. 1802 and 1803 tort action claims.

**WHEREFORE,** co-defendant respectfully requests that this Honorable Court **GRANT** the instant motion and **DISMISS WITH PREJUDICE** the allegations against appearing

defendants.

    **I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all attorneys of record.

    **RESPECTFULLY SUBMITTED**.

    In San Juan, Puerto Rico, this 25th day of May, 2012.

                    **GUILLERMO A. SOMOZA-COLOMBANI**
                    Secretary of Justice of the Commonwealth of Puerto Rico

                    **GRISEL SANTIAGO-CALDERÓN**
                    Deputy Secretary of Justice
                    In Charge of the Office of General Litigation

                    **WANDYMAR BURGOS-VARGAS**
                    U.S.D.C.-P.R. Bar No. 223502
                    Acting Director of Legal Affairs
                    Office of General Litigation
                    Federal Litigation Division
                    wburgos@justicia.pr.gov

                    S/ Maraliz Vázquez Marrero
                    **MARALIZ VÁZQUEZ-MARRERO**
                    U.S.D.C. NO. 225504
                    Department of Justice
                    Federal Litigation Division
                    P.O. Box 9020192
                    San Juan, P.R., 00902-0192
                    Tel. (787) 721-2900
                    Fax (787) 723-9188
                    marvazquez@justicia.pr.gov
                    maralizvaz@gmail.com