**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN LIDIA JORGE, ET AL.,<br>          **Plaintiffs**<br><br>     **v.**<br><br>**POLICE DEPARTMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, ET AL.,**<br>          **Defendants** | **Civil No. 11-2268 (JAG)** |

**MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

**COME NOW** co-defendants, Puerto Rico Police Department ("PRPD"), Emilio Díaz-Colón ("Díaz-Colón"), José Figueroa-Sancha ("Figueroa-Sancha"), and Leovigildo Vázquez ("Vázquez"), and specially appear without submitting to the jurisdiction of the Court, and very respectfully **STATE and PRAY** as follows:

**I.     PRELIMINARY STATEMENT.**

None of the individual appearing defendants is alleged in the Complaint to have participated in the intervention that allegedly resulted in deprivation of EFJ's constitutional rights (Cpt. at ¶¶ 4-6, 22-47). Plaintiffs brought suit against the individual appearing defendants (hereinafter referred to as "Supervisory Defendants") under a theory of supervisory liability. The allegations in the Complaint are insufficient to find liability against the Supervisory Defendants for having legally caused damages to plaintiffs.

The Supervisory Defendants cannot be held liable for the acts of the subordinate line officer defendants that participated in the December 31, 2010 incident under the supervisory liability standard enunciated by the U.S. Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). No liability can attach to any of the Supervisory Defendants because, as per the allegations of the Complaint, they did not personally violate any constitutional rights of the plaintiffs. López-Jiménez v. Pereira, 2010 U.S. Dist. LEXIS 9178 at pp. *12-*13 (D.P.R. Feb. 3, 2010) (holding that Ashcroft rejected supervisory liability claims "akin to the 'knowledge and acquiescence'" standard and that it is not enough to just allege that a supervisor at least had some knowledge of and was deliberately indifferent to the constitutional violation.")

Even if the Court were to analyze the pleadings under the abrogated "deliberate indifference" standard, pursuant to which the plaintiffs brought suit in federal court (Cpt. at ¶54), the Complaint does not provide factual matter establishing that each one of the "[Supervisory Defendants'] conduct led inexorably to the constitutional violation." González-Pérez v. Toledo-Dávila, 709 F. Supp. 2d 125, 129 (D.P.R. 2010). The allegations which refer to the Supervisory Defendants by name are the sort of purely conclusive assertions which courts have dismissed and rejected as poor and insufficient to establish all elements of a supervisory liability claim even under the abrogated substantive standard for such claims. See Medero-Garcia v. Commonwealth, 2009 U.S. Dist. LEXIS 50863, *14-*15 (D.P.R. 2009).

The Complaint "fails the plausibility test spectacularly". Redondo Waste Systems v. Lopez-Freytes, 659 F.3d 136, 140 (1st Cir. 2011). The allegations lack the factual specificity required under binding precedent. Cf. Ashcroft, 129 S.Ct. at 1951-52 ("allegations do not satisfy the obligation of nudging plaintiff's discrimination [] claim[], across the line from conceivable to plausible" (quotations omitted)). The Complaint does not link any of the Supervisory Defendants with actionable conduct. Personal involvement is not adequately asserted in the Complaint. The mechanical and conclusory statements in the Complaint are insufficient to shut down the Fed.R.Civ.P. 12(b)(6) machinery.

In any event, pursuant to Ashcroft, the Supervisory Defendants are entitled to qualified immunity under either of the two prongs of such defense. Maldonado v. Fontanes, 568 F.3d 263, 268-269 (1st Cir. 2009) The facts in support of plaintiffs' claims fail to state a violation of any constitutional right and furthermore, the law under which plaintiffs seek to hold the Supervisory Defendants liable for constitutional violations is not clearly established since the Supreme Court found a need to clarify the substantive law of supervisory liability under § 1983 in Ashcroft and in the First Circuit the standard for imposition of supervisory liability remains an open question post-Ashcroft, as recognized in Maldonado, 568 F.3d at 274 n.7 and Soto-Torres v. Fraticelli, 654 F.3d 153, 158, n. 7 (1st Cir. 2011). Even if the Circuit were to clarify the law now, such law could not be considered clearly established under prong 2 of the qualified immunity analysis.

II.    MOTION TO DISMISS STANDARD.

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S. Ct. at 1950.

While the court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor, Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008), the Supreme Court has held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Additionally, "'[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.'" Soto-Torres, 654 F.3d at 159 (quoting: Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir.2011) (additional citations omitted)).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not show[n]'— 'that the pleader is entitled to relief.'" Ashcroft, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P.8(a)(2)). And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id at 1949 (quoting Twombly, 550 U.S. at 557).

In the particular context of public officials, the Supreme Court found that "[b]ecause vicarious liability is inapplicable to [...] § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 129 S.Ct. at 1948. Thus, "[a]bsent

vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949. See also, Soto-Torres, 654 F.3d at 158.

To be sure, in Ashcroft, the Supreme Court established two guiding principles for courts evaluating motions to dismiss: (1) legal conclusions masquerading as factual allegations are not entitled to a presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first identify conclusory pleadings that are not entitled to an assumption of truth in order to exclude them from consideration. Id. Secondly, courts must then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Id.

### III. ARGUMENT.

The instant Motion presents a legal question regarding the proper analysis to be applied in determining whether a supervisor should be held liable under a theory of supervisory liability when he/she did not participate by his own actions in the alleged constitutional violation. This is precisely the kind of claim which the U.S. Supreme Court found in Ashcroft could not survive as a matter of law. This Motion also presents a legal question as to the Supervisory Defendants' entitlement to qualified immunity pursuant to the legal standard unveiled in Ashcroft.

In determining whether Supervisory Defendants are entitled to judgment as a matter of law, under the law of supervisory liability and the qualified immunity doctrine, the Court cannot consider the acts of all defendants collectively. To do so, the court would be explicitly applying the doctrine of respondeat superior to plaintiffs' claims under § 1983, which option is foreclosed under controlling precedent. An analysis of the facts under the applicable legal standard follows.

### A. THE SUPERVISORY LIABILITY STANDARD.

### (i) Supervisory Liability after Ashcroft, supra.

In Ashcroft, supra, the U.S. Supreme Court conditioned supervisory liability in § 1983 and Bivens actions on constitutional violations by the supervisors themselves through their own acts and not on the

basis of omissions or failures to act. Ashcroft was a change in the substantive law of supervisory liability, pursuant to which the Supreme Court clarified and departed from the deliberate indifference or knowledge and acquiescence approaches to imposition of supervisory liability, and significantly narrowed the criteria for when supervisory liability may permissibly be imposed in §1983 litigation.

A review of the allegations of the Complaint shows that, though conclusory, plaintiffs seek to hold the Supervisory Defendants liable under the deliberate indifference or knowledge and acquiescence approach to imposition of supervisory liability which was abrogated in Ashcroft, supra. See Complaint, e.g., ¶ 54, among other paragraphs. The Complaint also clearly seeks to hold the Supervisory Defendants liable not just for their own personal actions, but for the conduct of third parties, the subordinate line-officer defendants that allegedly participated in the December 31, 2010 intervention with plaintiff EFJ. Assuming arguendo that the facts pled in the Complaint could state viable claims under a theory of either supervisory liability for deliberate indifference or for omissions or based on a supervisor's knowledge and acquiescence in them theory, this presents a pure question of law under the first prong of the qualified immunity analysis.

Pursuant to Ashcroft, supra, deliberate indifference together with actual knowledge is no longer grounds for the imposition of liability on supervisors. A plaintiff claiming supervisory liability is required to prove more, that a defendant through his own purposeful acts personally violated the plaintiffs' constitutional rights.

Specifically, in Ashcroft, the Supreme Court recognized that because vicarious liability is inapplicable to Bivens and to §1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 129 S.Ct. at 1948-1949. Accord, Maldonado v. Fontanes, 568 F.3d at 274, n.7; Nails v. Bureau of Prisons, 2009 U.S. App. LEXIS 28612 at p.*5 (11th Cir. Dec. 29, 2009)(per curiam); Rose v. Scott, 2009 U.S. App. LEXIS 25608 at pp. *4-*5 (9th Cir. Nov. 23, 2009); Nelson v. Corr. Med. Serv., 583 F.3d 522, 534-535 (8th Cir. 2009); Gonzalez v. City of Elgin, 578 F.3d 526, 536 (7th Cir. 2009); Bayer v. Monroe County Child. & Youth Serv., 577 F.3d 186, 191 (3rd Cir. 2009); Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009);

London v. Maier, 2010 U.S. Dist. LEXIS 34436 at pp.*4-*6 (D.S.C. April 7, 2010);[1] Pender v. Cty. of Cumberland, 2010 U.S. Dist. LEXIS 32250 at pp. *9-*11  (D.N.J. April 1, 2010);[2] Hall v. Buss, 2010 U.S. Dist. LEXIS 32983 at pp.*2-*3 (S.D.Ind. March 31, 2010); Johnson v. Williams, 2010 U.S. Dist. LEXIS 30647 at pp. *27-*28 (D.D.C. March 30, 2010); López-Jiménez, 2010 U.S. Dist. LEXIS 9178 at pp. *10-*11; and Bellamy v. Mount Vernon Hospital, 2009 U.S. Dist. LEXIS 54141 at pp. *20-*21, *27-*29  (S.D.N.Y. June 26, 2009), affirmed, 2010 U.S. App. LEXIS 14981 (2nd Cir. 2010).[3]

The Supreme Court expressly noted that,

> where the claim is invidious discrimination in contravention of the … *Fifth Amendmen[t]*, our decisions make clear that the **plaintiff must plead and prove that the defendant acted with discriminatory purpose**. … Under extant precedent purposeful discrimination requires more than "intent as volition or intent as awareness of consequences." … It instead involves a decisionmaker's  undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects … "

Ashcroft, 129 S.Ct. at 1948 (internal citations omitted and emphasis added). Accord, Atherton, 567 F.3d at 681; Riley v. Taylor, 2010 U.S. Dist. LEXIS 31580 at pp.*29-*30 (D.Del. March 31, 2010)("Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities."); Pender, 2010 U.S. Dist. LEXIS 32250 at pp. *9-*11; U.S. v. City of New York, 2010 U.S. Dist. LEXIS 2506 at pp. *106-*107, *116-*119 (E.D.N.Y. Jan. 13, 2010); Ekwem v. Fenty, 2009 U.S. Dist. LEXIS 100670 at p.*15 (D.D.C. Oct. 29, 2009); Sanders v. Dir, U.S. Select. Serv., 2009 U.S. Dist. LEXIS 96106 at p.*5 (W.D. Wisc. Oct. 15, 2009); and Ibrahim v. Dept of Homeland Security, 2009 U.S. Dist. LEXIS 64619 at pp. *32-*33 (N.D. Cal. Jul 27, 2009).

---

1 London, 2010 U.S. Dist. LEXIS 34436 at pp.*4-*6 ("Defendant cannot be held liable in this suit based on his supervisory capacity within the hospital. Therefore, because Plaintiff has failed to plead that Defendant was personally involved in Plaintiff's care or that Defendant's individual actions caused Plaintiff's injuries, the Complaint in this case should be dismissed for failure to state a claim  upon which relief may be granted.").

2 Pender, 2010 U.S. Dist. LEXIS 32250 at pp. *9-*11 (in police misconduct case, allegations that a supervisory official was present during or otherwise aware of the use of excessive force by arresting officers but did not interfere with or prevent their use of excessive force is insufficient to state a claim against  the supervisory official where plaintiff asserts no purposeful personal involvement by supervisory official.).

3 See also Juarbe-Velez v. Soto-Santiago, 558 F.Supp.2d 187, 204 (D.P.R. 2008)("Section 1983 does not provide for pure supervisory liability. … '[O]nly persons who were directly involved in the wrongdoing may be held liable.'")(internal citations omitted).

The Supreme Court specifically rejected the argument made in Ashcroft that a "supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.", noting that "Respondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a ß 1983 suit … -- where masters do not answer for the torts of their servants -- the term 'supervisory liability' is a misnomer. Absent vicarious liability, **each Government official**, his or her title notwithstanding, **is only liable for his or her own misconduct."** Ashcroft, 129 S.Ct. at 1949 (emphasis added).  Accord, Redondo Waste System v. Rua, 2010  U.S. Dist. LEXIS 35526 at pp.*14-*15 (D.P.R. March 31, 2010); Petrovic v. Chicago, 2010 U.S. Dist. LEXIS 30778 at pp. *5-*6 (N.D.Ill. March 30, 2010);[4] and Rahman v. Fischer, 2010 U.S. Dist. LEXIS 27155 at pp. *11-*12 (S.D.N.Y. March 22, 2010).

In the case of Maldonado, supra, the First Circuit raised, without deciding the issue, whether its prior jurisprudence on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability" survived Ashcroft and stated:

> Some recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable for damages under ß 1983 on a theory of supervisory liability. See Iqbal, … ("Because vicarious liability is inapplicable to Bivens and ß 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). We need not resolve this issue, however, because  we find that the plaintiffs have not pled facts sufficient to make out a plausible entitlement to relief under our previous formulation of the standards for supervisory liability.
> Maldonado, 568 F.3d at 275, n.7, citing, Ashcroft, 2009 WL 1361536, at *11.

Thus, in the First Circuit the standard for imposition of supervisory liability remains an open question post-Ashcroft, as was originally recognized in Maldonado, supra, and was most recently reiterated in Soto-Torres, 654 F.3d at 158, n. 7:

> In Maldonado we observed that "recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable under § 1983 [and Bivens ] on a theory of supervisory liability." Maldonado, 568 F.3d 263, 274 n.

---

4 Petrovic, 2010 U.S. Dist. LEXIS 30778 at pp. *11-*12 (district court found in excessive force case that allegations in complaint that the supervisors knew of, condoned and willfully and maliciously agreed to subject plaintiffs to beatings were mere "conclusory, formulaic allegations" rejected as insufficient by Ashcroft.)

7 (1st Cir.2009) (citing *Iqbal,* 129 S.Ct. at 1948). However, as in *Maldonado,* "[w]e need not resolve this issue ... because we find that [Soto–Torres has] not pled facts sufficient to make out a plausible entitlement to relief under our previous formulation of the standards for supervisory liability." *Id.*

Other circuit courts have expressed the same concern on the supervisory liability standard post-Ashcroft.[5] Furthermore, the First Circuit has stressed that "**the constitutional source of a plaintiff's claims are irrelevant to this court's analysis of whether a plaintiff has satisfactorily articulated a supervisory liability theory**. **Neither** *Maldonado* **nor** *Iqbal* **suggest that supervisory liability theories should be treated differently based on whether they are made to support a claim under the Fourth Amendment or the Fourteenth Amendment.**" Soto-Torres, supra at 160, n. 8 (emphasis added).

After Ashcroft, prior First Circuit jurisprudence in decisions like Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581-582 (1st Cir. 1994) which had imposed liability for constitutional violations on supervisory government officials based not on "the official's own individual actions,…" Ashcroft, 129 S.Ct. at 1948-1949, as is now required by Ashcroft, but on the basis of such individual's omissions, inaction and/or failure to act, should be considered overruled and abrogated by Ashcroft as of the time of such opinion's issuance.

Other courts have found that Ashcroft changed the substantive law governing imposition of supervisory liability under §1983. T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010)(circuit court noted that "While it appears that our precedent would have previously allowed a plaintiff to recover from a supervisor based on that supervisor's 'deliberate indifference' towards a subordinate's purposeful discrimination, … after *Iqbal* a plaintiff must also show that the supervisor possessed the requisite discriminatory intent."); Lopez-Jiménez, 2010 U.S. Dist. LEXIS 9178 at pp. *12-*13 (recognizing that the complaint's allegations

---

5 Arocho v. Nafziger, 2010 U.S. App. LEXIS 4200 n.4 (10th Cir. March 1, 2010)("After *Iqbal,* circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability.")(unpublished opinion), citing Bayer 577 F.3d at 191, n.5 ("In light of the Supreme Court's recent decision in Ashcroft ... it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding [defendant] liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983."); and Maldonado, 568 F.3d at 274, n.7; and Laffey v. Plousis, 2010 U.S.App. LEXIS 2902 at pp. *9-*10 (3rd Cir. Feb. 12, 2010)(circuit court refused to adopt standard recognizing liability for a constitutional violation for setting in motion events that a defendant should know would result in a constitutional violation in light of Ashcroft's requirement that a plaintiff must plead that each government defendant through his own individual actions violated the Constitution).

that defendants were aware of serious lapses in security and of the unreasonable risk of death existing at facility through regular channels of communication were "akin to the 'knowledge and acquiescence' supervisory theory of liability rejected in [Ashcroft], where the Court held that it is not enough to just allege that a supervisor at least had some knowledge of and was deliberately indifferent to the constitutional violation."); Bellamy, 2009 U.S. Dist. LEXIS 54141 at pp. *20-*21, *27-*29 (finding that Ashcroft's "'active conduct' standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation, that only two of the five grounds for imposing supervisory liability previously recognized in the Second Circuit survived Ashcroft and that supervisory liability in situations where a supervisor knew of and acquiesced to a constitutional violation committed by a subordinate was no longer valid post-Ashcroft); Joseph v. Fischer, 2009 U.S. Dist. LEXIS 96952 at pp. *39-*41, n.6  (S.D.N.Y. Oct. 8, 2009)("Thus, under [Ashcroft], a defendant can be liable under section 1983 only if that defendant took an action that deprived the plaintiff of his or her constitutional rights. **A defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right.**")(emphasis added); and Morpurgo v. Inc. Village of Sag Harbor, 2010 U.S. Dist. LEXIS 21109 at pp. *38-*41 (E.D.N.Y. Feb. 17, 2010), affirmed, 2011 U.S. App. LEXIS 6928 (2nd Cir. 2011).

Because the Complaint does not plead *with factual matter* that the Supervisory Defendants themselves took actions to *purposely* violate plaintiffs' constitutional rights, dismissal as a matter of law is warranted. As per the allegations of the Complaint, none of the Supervisory Defendants had a hand in the alleged constitutional violations by the line officers and thus, cannot be held liable under the substantive standard for the imposition of supervisory liability adopted in Ashcroft, supra.

      (ii)        **The pre-Ashcroft standard for the imposition of supervisory liability.**

As previously stated, plaintiffs' claims are brought under the "deliberate indifference" standard which the Supervisory Defendants submit was abrogated by Ashcroft, supra, as recognized by a court in this district in López-Jiménez, supra.

Although the Court need go no further in light of the above analysis under Ashcroft, *for purposes of*

*argument exclusively*, in this part of the brief the Supervisory Defendants will assume that the "deliberate indifference" standard is still a tenable standard in the wake of Ashcroft and will analyze the pleadings under said standard. Even applying this pre-Ashcroft standard, plaintiffs cannot "shut down the machinery" of Fed.R.Civ.P. 12(b)(6).

As recognized by the First Circuit, prior to Ashcroft, supra, supervisory liability "attaches only if a plaintiff can demonstrate by material of evidentiary quality an affirmative link between the supervisor's conduct and the underlying Section 1983 violation." Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995)(citing Maldonado-Denis, 23 F.3d at 582. There is no *respondeat superior* theory under § 1983. Liability only attaches for the supervisor's own acts or omissions. Aponte-Matos v. Toledo-Dávila, 135 F.3d 182, 192 (1st Cir. 1998) (citing Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997)).

Pursuant to the pre-Ashcroft supervisory liability standard, "under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that 'it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" González-Pérez v. Toledo-Dávila, 709 F. Supp. 2d 125, 128 (D.P.R. 2010) (quoting Colón-Andino v. Toledo-Dávila, 634 F. Supp. 2d 220, 232 (D.P.R. 2009) (quoting Piñeda v. Toomey, 553 F.3d 48, 54 (1st Cir. 2008)).

The pleadings do not sufficiently assert the existence of an affirmative link between any Supervisory Defendant's own actions and inactions and the constitutional violation caused by the subordinate line police officers. There are no allegations of or conduct establishing "supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference." Aponte-Matos, 135 F.3d at 192 (quoting Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).

The pleadings do not establish with factual matter, as to any of the Supervisory Defendants, that the (1) line officer-defendants represented a grave risk of harm; (2) that the Supervisory Defendants

possessed actual or constructive knowledge of that risk; and (3) that they failed to take easily available measures to address the risk. <u>Camilo Robles v. Hoyos</u>, 151 F.3d 1, 7 (1st Cir. 1998). Specific allegations failing to attach liability as to the Supervisory Defendants are discussed further below.

As explained by the First Circuit in <u>Maldonado</u>, supra, at 275,

> [S]upervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation. Further, supervisory liability under a theory of deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.

"A key factor in determining supervisor liability is what knowledge the supervisor had regarding the subordinate's behavior." <u>Hernández-Payero v. Puerto Rico,</u> 493 F. Supp. 2d 215, 226 (D.P.R. 2007) (citing <u>Febus-Rodríguez v. Betancourt-Lebrón,</u> 14 F. 3d 87, 93 (1st Cir. 1994)). "Of course, a supervisor without actual knowledge will not escape liability if it is shown that he would have known of the injurious conduct but for his exercise of "willful blindness" or deliberate indifference." <u>Hernández-Payero v. Puerto Rico</u>, 493 F. Supp. 2d at 226 (citing <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 582 (1st Cir. 1994)); see <u>González-Pérez v. Toledo-Dávila,</u> 709 F. Supp. 2d at 129.

The case of <u>González-Pérez</u>, supra, provides guidance to this Honorable Court if it were to analyze the facts under the pre-<u>Ashcroft</u> standard. In <u>González-Pérez</u>, supra, the Court (Hon. Justo Arenas, U.S. Magistrate Judge) granted a Rule 50 motion and dismissed the case against Toledo-Dávila because there was no affirmative link between any action or omission on the part of Toledo-Dávila and the violation of the plaintiff's rights. There, the plaintiff alleged that "there exists a known history of widespread abuse and that the records reflect five violations, in 1996 (verbal abuse), 1998 (verbal abuse), 1999 (domestic abuse), 2000 (verbal abuse to fellow officer) and 2001 (insubordination)." Plaintiff claimed that these complaints against the lower-level police officer reflected deliberate indifference on the part of Toledo-Dávila.  The court dismissed the case holding that that in spite of the complaints against the line officer, it was not foreseeable for Toledo-Dávila that an officer would use excessive force during an arrest of a suspect who had been drinking because there was no notice of possible civil rights violations present there. <u>González-</u>

11

Pérez, supra, at 132. The court accordingly ordered dismissal of all claims against Toledo-Dávila. In the case at bar, the allegations of the Complaint are clearly insufficient, as a matter of law, to demonstrate that any action or inaction of the Supervisory Defendants was affirmatively linked to the injuries allegedly suffered by the plaintiffs such that Supervisory Defendants could be said to be a cause in fact or proximate cause of the injuries to plaintiffs. Colon-Andino, 634 F.Supp.2d at 231-234, citing, Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989); and Collins v. City of Harker Heights, 503 U.S. 115 (1992).

Though conclusorily, as evidenced by ¶¶s 52, 55, 56, and 60 of the Complaint, plaintiffs try to state a basis for imposition of supervisory liability on the Supervisory Defendants based on conclusive assertions of inadequate recruitment, training and supervision, maintaining the existence of policies and regulations that they "know or should have known" are "unconstitutional" with respect to recruitment, training, supervision, use of force, duty to intervene, seizures, detentions, and the protection of constitutional rights. However, the Complaint is devoid of factual matter establishing that the Supervisory Defendants had knowledge, prior to December 31, 2010, of incidents where the subordinate line officer defendants that allegedly intervened with EFJ, had engaged in excessive force against any citizens or violations of constitutional rights, such as those alleged by the plaintiffs in the Complaint, while in the line of duty. See, i.e., Soto-Torres, supra at 160 ("The complaint does not provide facts regarding what Fraticelli is alleged to have known when, nor does it specify how he is alleged to have known it, or how he somehow personally caused the detention.")

Plaintiffs' allegations of failure to give adequate training, id., to line officer agents are equally conclusory and thus, not entitled to an assumption of truth under Ashcroft. In addition, the Complaint includes averments allegedly purporting to establish liability on the part of unidentified "generic defendants" **by invoking matters that allegedly occurred after the alleged violation of plaintiffs' constitutional rights,** like the alleged failure to investigate. See, i.e., ¶ 53, which is also conclusory. But, courts have repeatedly held that such allegations do not establish causation. See Blanchard v. Swaine, 2010 U.S. Dist. LEXIS 125397, *52 (D.Mass. Nov. 29, 2010) ("The causation requirement can only be met by evidence that

Bruwer acted to manifest deliberate indifference to potential rights violations on the part of his subordinates *before* the alleged rights violation occurred. His actions after the fact cannot do so."); Price v. Kozak, 569 F.Supp. 2d 398, 408 n. 6 (D. Del. 2008) ("The court will not address State defendants R. Taylor, Carroll, and Burris' motion for summary judgment on the issue of personal involvement inasmuch as R. Taylor is not a defendant in this action and the court will grant Carroll and Burris summary judgment as there is no supervisory liability under sec. 1983. Moreover, participation in the after-the-fact review of a grievance is not enough to establish personal involvement."); Brudwick v. Minor, 2006 U.S. Dist. LEXIS 51608,*54 (D.Col. July 13, 2006)(ratification of conduct of officers is insufficient to make out a supervisory liability claim).[6]

Plaintiffs have not alleged with factual matter that the Supervisory Defendants had actual or constructive knowledge of a risk. See Camilo Robles, 151 F.3d at 7. Also, plaintiffs cannot establish

---

[6] See also, Peterson v. Cooper, 2009 WL 2448141, at *3 (W.D. Mich. Aug. 10, 2009) ("Plaintiff argues that Defendants Embry, Huss and Klinesmith failed to investigate Plaintiff's claims regarding the August 22, 2006 incident after viewing the surveillance video and implicitly authorized, approved and acquiesced in the unconstitutional conduct of Defendants Cooper and Patterson and the two John Doe Defendants. Plaintiff also asserts that Defendants Smith and Caruso are liable for their policies of inaction when they should have known of the widespread pattern of assaults by staff on prisoners. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009)... The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act... Moreover, §§ 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance... Plaintiff has failed to allege that Defendants... engaged in any active unconstitutional behavior. Therefore, Plaintiff fails to state a claim."); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Gallagher's only allegation involving these defendants relates to their denials of his grievances, namely that they 'rubber-stamped' his various grievances... We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under §§ 1983... Because Gallagher's only allegations involving these defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation. Accordingly, the claims against Werholtz, Shelton, and Purdue were properly dismissed."); Torres-Santiago v. Diaz-Casiano, 2009 WL 4015648, at *8, *9 (D.P.R. Nov. 16, 2009) ("Here, the plaintiffs' amended complaint makes only conclusory allegations that Toledo knew or should have known of the defendant officers' violent propensities; knowingly failed to properly train, supervise, or discipline the defendant officers; knowingly failed to implement reasonable or adequate policies and procedures to avoid abuse of plaintiffs' civil rights; and personally reviewed and/or adjudicated plaintiffs' administrated complaint and failed to act on it--all of which, the complaint alleges, constituted gross negligence amounting to deliberate or reckless indifference to the plaintiffs' constitutional rights... These 'bald assertions' and 'unsupportable conclusions' are plainly deficient to survive a motion for judgment on the pleadings. The fact that their administrative complaint (whether or not personally reviewed by Toledo, as conclusorily alleged) did not result in disciplinary action against the defendant officers does not reflect Toledo's knowing failure to adequately train, supervise, and discipline them, amounting to callous or reckless indifference... Aside from the absence of disciplinary action on the administrative complaint, the plaintiffs have not offered any other evidence in support of their assertions against Toledo, and further, they have established no affirmative link between Toledo's acts or omissions and his subordinates' alleged violation of the plaintiffs' constitutional rights. Rather, the plaintiffs only set forth generally that Toledo failed to train, supervise, and discipline officers under his control. Therefore, the plaintiffs have failed to allege a plausible entitlement to relief under Section 1983. Accordingly, the court **DISMISSES** with prejudice plaintiffs' Section 1983 claim against defendant Toledo in his personal capacity for violation of the plaintiffs' Fourth and Fourteenth Amendment rights.").

causation. As further established in the specific analysis of the pleadings provided below as to each one of the Supervisory Defendants, *brevis* disposition of all claims against the Supervisory Defendants is warranted.

    (i)    **Plaintiffs' failure to properly plead personal involvement under §1983.[7]**

    In <u>Ashcroft</u>, supra, the Supreme Court further stressed that "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>See also</u>, <u>Soto-Torres</u>, 654 F.3d at 158.[8]

    Repeatedly throughout the Complaint, however, plaintiffs collectively refer to "defendants" in plural, without factual allegations describing the acts of each once of the defendants. Such pleadings should not only be rejected under the principles laid out by the Court in <u>Ashcroft</u>—inasmuch as they fail to specify how each individual defendant has violated the Constitution—but other federal courts have emphatically rejected mechanical allegations that vaguely reference "defendants," but do not specify as well which *individual* defendant. <u>See</u> <u>Colon-Andino</u>, 634 F.Supp. at 229-233. <u>Accord</u>, <u>C.N. v. Wilmar Public Schools</u>, 591 F.3d 624, 634-635 (8th Cir. 2010)(circuit court noted that with vague allegations in a complaint that fail to mention particular persons involved in the specified events or the time and place where events occurred, a defendant seeking to respond to such conclusory allegations would have little idea where to begin); <u>Redondo Waste System</u>, 2010  U.S. Dist. LEXIS 35526 at pp. *15-*17 (where the complaint's narration of facts rely on "the generic 'defendants'", the allegations "provide no foundation of concrete facts that would link each defendant personally to any alleged violations.", as is required by <u>Ashcroft</u>); <u>Kelly v. Arizona</u>, 2009 U.S. Dist. LEXIS 103435 at pp. *10-*13  (D.Ariz. Nov. 6, 2009); and <u>Young</u>, 2009 U.S. Dist. LEXIS 87249 at

---

7 This discussion assumes, for purposes of argument exclusively, that plaintiffs alleged a prima facie claim which they evidently did not do.

8 To be sure, no matter the government's official's title, a plaintiff is bound to provide sufficient factual information on the official's specific involvement or participation. <u>Ashcroft</u>, 129 S.Ct. at 1949 ("[E]ach government official, *his or her title notwithstanding*, is only liable for his or her own misconduct." (Emphasis added)). Put differently, notwithstanding that a defendant holds the title of "highest ranking officer," "nominating authority," "governor," "attorney general," "chief of staff," "supervisor," or "administrator;" a plaintiff must bring forth sufficient factual information of their individual actions. <u>Id.</u> at 1948. A mere title does not necessary entail direct participation of the sort required for constitutional claims. <u>See</u> <u>Ashcroft</u>, 129 S.Ct. at 1949 ("Purpose rather than knowledge is required to establish Bivens [and § 1983] liability[.]").

pp. *23-*25.

Thus, the following conclusory paragraphs of the Complaint should be disregarded as insufficient: Jurisdictional Statement ("they [defendants] intentionally engaged in excessive use of force…", etc.) ¶35 (although it names two other categories of unnamed defendants – not Appearing Defendants – it suggests the participation of other unnamed defendants); ¶39 ("Other defendants…"); ¶40 ("defendants kno[w]…"); ¶43 ("Defendants on site,…"); ¶50 ("defendants on scene…"); ¶51 ("defendants could have…"); ¶54 and ¶59 ("defendants"); ¶60 ("defendants failed to intervene…"); ¶62 ("acts or omissions of the defendants…"); and Prayer for Relief (reference to "defendants"), among other paragraphs of the Complaint.

The Complaint, moreover, does not identify the individual acts (or degree of participation) of each individual Supervisory Defendant. The Complaint contains statements that are mechanically-made, and devoid of any elaboration of what the "participation" of each individual defendant was. Allegations which, as discussed below, qualify as the sort of overly-broad, undeveloped conclusory pleading expressly repudiated by the U.S. Supreme Court in Ashcroft. Id. at 1951 (Rejecting plaintiff's pleading that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]'" to unconstitutional conduct, and that a defendant was the "principal architect", on the grounds that they were of a conclusory nature.) The Complaint is, therefore, devoid of the factual specificity required under the Federal Rules of Civil Procedure as to all government-official defendants. See e.g., Id.; Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (Treating allegation that Mayor "participated" in and executed raids in which household pets were confiscated and killed as conclusory and not credited); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir.1992) ("'Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.' ") (Citing: Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.1982)).[9]

---

[9] Also, in Peñalbert, the First Circuit affirmed dismissal of a complaint based on insufficiency of the pleadings and reiterated the Ashcroft pleading standard, under which the allegations of the Complaint in the instant case are clearly deficient. 631 F.3d at 594-595. The First Circuit held that the fact that a plaintiff had alleged that the Governor-defendant "approves or disapproves of all personnel decisions [at the governor's mansion], including the personnel decisions concerning the [plaintiff's] termination"; that two named subordinate officials "participated" in these decisions; that the defendants "knew or assumed" that plaintiff belonged to the opposing political party "and/or" was not a member of the Governor's party; and that all three conspired to

In the discussion below, the Supervisory Defendants will demonstrate that the averments which do refer to each individual defendant's alleged participation are not factual, but mechanical, conclusory, and undeveloped allegations that merely recite a causation element that deserve no consideration by the Court in the Fed.R.Civ.P. 12(b)(6) calculus.

The only ¶¶'s of the Complaint that refer to the appearing defendants by name are ¶¶'s 4 (Figueroa-Sancha); 5 (Díaz-Colón); 6 (Vázquez); 52 (Vázquez); and 55 (Figueroa Sancha).

¶¶'s 4 and 5 simply describe defendants Figueroa-Sancha and Díaz-Colón, respectively, as Superintendents of the PRPD and allege that, "pursuant to law", they were responsible, during their respective tenures, for ensuring the constitutionality of the PRPD's policies, practices and regulations with respect to recruitment, training, supervision, use of force, duty to intervene, seizures, detentions, and protection of constitutional rights. As to defendant Vázquez, ¶6 describes him as a party to the Complaint and as the person in charge of every activity in the PRPD related to the protection of life and property, maintenance of law and order, the protection of civil rights and crime prevention.

While ¶52 avers, *in a conclusive fashion*, that Vázquez "in authorizing the use of excessive force by certain [unidentified] police officers", engaged in inadequate recruitment, training and supervision of the police force. And ¶ 55 avers that defendants Figueroa Sancha had in place policies, practices and regulations that he knew or should have known that were "unconstitutional" with respect to recruitment, training, supervision, use of force, duty to intervene, seizures, detentions and protections of constitutional rights that "were violated in this particular case". This conclusory kitchen sink approach to pleading does not survive Ashcroft.

All of the above are the sort of allegations that fail to comply both with the Ashcroft pleading standards, as well as Ashcroft's teaching on what is required to impose supervisory liability. Plaintiffs had to

---

dismiss the plaintiff were insufficient to state a claim. Specifically, the First Circuit held that even allegations there which at face-value couched in factual terms, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross "the line between the conclusory and the factual"". Id. quoting Twombly, at 557, n. 5.

plead that each of the defendants, through his "own individual actions, has violated the Constitution."[10] As previously stated, the title of each Supervisory Defendant is irrelevant in the sufficiency of the pleadings calculus. Simply being the Superintendent of a police force or directing a certain Division, does not necessarily entail direct participation of the sort required for constitutional claims. Ashcroft, 129 S.Ct. at 1949 ("purpose rather than knowledge is required to establish Bivens [and sec. 1983] liability[.]") The same argument applies to the rest of the ¶'s describing each of the Supervisory Defendants.

All of these paragraphs are a mere formulaic recitation of elements of causes of action, wholly devoid of facts and thus, insufficient to satisfy the Ashcroft plausibility standard. None of the paragraphs mentioning the individual defendants by name, establish causation as to any of the Supervisory Defendants. Moreover, these allegations amount to no more than a respondeat superior claim and thus, fail to state a claim against the Supervisory Defendants. See Pender, 2010 U.S. Dist. LEXIS 32250 at pp. *9-*11 (holding that the allegation that a supervisory official was present during or otherwise aware of the use of force by arresting officers but did not interfere with or prevent their use of excessive force, fails to state a claim where plaintiff asserts no purposeful personal involvement by supervisory official.)

Plaintiffs' reliance in ¶¶'s 55 and 56 of the Complaint on an alleged report by the Civil Rights Division of the U.S. Department of Justice ("DOJ"), which is not before the Court and was allegedly rendered after the intervention with EFJ, does not render the Complaint plausible. The DOJ Report is inadmissible given that it is irrelevant to the ultimate decision as to whether the defendants should be held liable under § 1983. The Report in question was rendered pursuant to a theory of "pattern or practice" under 42 U.S.C. § 14141. The standards for the imposition of liability under § 1983 and § 14141 are different. Case law interpreting one statute is not binding on the other because of the onerous standard of proof applicable to actions brought under § 1983. Miller, Marshall. *Police Brutality*, 17 Yale L. & Pol'y Rev.

---

10 129 S.Ct. at 1948-1949. Accord, Maldonado, 568 F.3d at 274, n.7; Nails, 2009 U.S. App. LEXIS 28612 at p.*5; Rose, 2009 U.S. App. LEXIS 25608 at pp. *4-*5; Nelson, 583 F.3d at 534-535; Gonzalez, 578 F.3d at 536; Bayer, 577 F.3d at 191; Atherton, 567 F.3d at 681; London, 2010 U.S. Dist. LEXIS 34436 at pp.*4-*6; Pender, 2010 U.S. Dist. LEXIS 32250 at pp. *9-*11; Hall, 2010 U.S. Dist. LEXIS 32983 at pp.*2-*3; Johnson, 2010 U.S. Dist. LEXIS 30647 at pp. *27-*28; and López-Jiménez, 2010 U.S. Dist. LEXIS 9178 at pp. *10-*11.

149, *166 (1998).

A Report concluding that there is a "pattern or practice" under § 14141 and rendered for such litigation does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action [under § 1983] more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. There are additional legal grounds to disallow the Report and any allegations grounded on it, like the fact that such Report was issued not by some neutral party but was instead drafted with future litigation in mind by a likely future litigant since it was undertaken in anticipation and in furtherance of the commencement of an action by the DOJ under § 14141, among other legal grounds. However, as previously stated, the Report is not before the Court, although plaintiffs assert that they incorporate such report by reference to the Complaint.[11]

Such general allegations, which are nothing more than mere legal conclusions masquerading as facts, Febus Cruz, 652 F.Supp.2d at 147, are not presumed true post-Ashcroft. Maldonado, 568 F.3d at 266; and Wathen v. Schriro, 2009 U.S. Dist. LEXIS 78771 at pp. *3-*4 (D.Ariz. Aug. 25, 2009)(district court rejected as insufficient to find supervisory liability general allegations in complaint that defendants allowed policies, customs and conditions that led to decedent's death, without identifying any specific unconstitutional policies).  There are really no pleading of any sufficient facts in these paragraphs sufficient to show that any of the Supervisory Defendants through their "own individual actions" can be found to have violated plaintiffs' constitutional rights. Even under the pre-Ashcroft supervisory liability standard, none of the non-conclusory factual allegations pled in the Complaint are sufficient to demonstrate that any action or inaction of the Supervisory Defendants was affirmatively linked to the injuries suffered by plaintiffs such that Supervisory Defendants' actions could be said to be a cause in fact or proximate cause of the injuries. Colon-Andino, 634 F.Supp.2d at  231-234, citing, Gutierrez-Rodriguez, 882 F.2d at 558; and Collins v. City of Harker Heights, 503 U.S. 115 (1992). Faced with the serious deficiencies in the pleadings contained in

---

11 Putting aside any other additional evidentiary challenges that may be raised against the mentioned report as an evidentiary material at other stages of the proceedings, the Appearing Defendants respectfully posit that if such report exists, the allegations should not be credited to establish the alleged contents of the report as facts, given that no information is provided as to the sources of the report, the underlying facts, dates, among other underlying information in order to show its reliability. Plaintiffs' allegations  are wholly conclusory and are to be disregarded under Ashcroft.

the Complaint here, similar to those found deficient there, the result here should be the same as in Colon-Andino, where the Court dismissed all claims for supervisory liability after noting that,

> the allegations of the complaint do not allege a link between Toledo-Davila and the alleged constitutional violations sufficient to survive the motion to dismiss. … In this case, the plaintiffs have simply stated the elements of supervisory liability but have offered no details regarding what policy Toledo-Davila enacted or ignored that would have prevented the constitutional violations; no details regarding how or why Toledo-Davila should have or did know about the alleged violations; nor details regarding how training or retraining or supervision or any of his responsibilities as a supervisor would have or could have stopped the alleged violations from occurring. Without such details, the assertions here "amount to nothing more than a 'formulaic recitation of the elements'" of a supervisory liability claim. … The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.
> Colon-Andino, 634 F.Supp.2d at 233 (internal citations omitted).

The allegations as to the Supervisory Defendants are too tenuous and conclusory and the "causal connection too remote" to impose supervisory liability on them under §1983. Parish v. Ball, 594 F.3d 993, 998-1000, 1002-1003 (8th Cir. 2010).

Furthermore, as stated in the Preliminary Statement, the Causes of Action in the Complaint of caption against the Supervisory Defendants are close to identical to the claims which the Court dismissed in Medero-Garcia v. Commonwealth, supra. There, the Court held:

> Misael's complaint is completely devoid of allegations from which the Court could infer that Toledo was on notice of the officers' violent and illegal conduct, that this conduct created a grave risk of harm for citizens, and that, even then, Toledo failed to take measures to address the risk. **The only allegations made against Toledo are conclusive in nature, i.e., that he failed to create a policy for procedures and operations that was consistent with the constitutional rights of Plaintiffs, and/or that he failed to train the officers, and/or that he failed to supervise them to ensure compliance with the policy. This Court concludes, as we have in similar cases, that Misael's "factual allegations are poor and insufficient to establish all the elements of his claim against Toledo."** Rodriguez-Vazquez, 160 F. Supp. 2d at 212. The lack of specific allegations that link Toledo  [*15] to the officers' malfeasance impede us from concluding that his conduct showed deliberate indifference for Misael's constitutional rights, as it is required to hold Toledo liable under §1983. In light of the above, Misael's § 1983 claims against Toledo are hereby **DISMISSED with prejudice.**
> (emphasis ours)

As in Medero-Garcia, plaintiffs' "factual allegations are poor and insufficient to establish all the elements of [][their] claim[s] against [][defendants]." (citations omitted) Id. at *14-*15. Accordingly, the Complaint must suffer the same fate as the Amended Complaint in Medero-Garcia, supra. What was found

to be insufficient there is likewise insufficient here. Accordingly, dismissal of any and all claims against the Supervisory Defendants is warranted.

**B.  Any Fourth Amendment Claims cannot survive as a matter of law.**

The Fourth Amendment protects against unreasonable searches and seizures.[12] <u>United States v. López</u>, 989 F.2d 24, 26 (1st Cir. 1993); and <u>Colón-Andino</u>, 634 F.Supp. at 234.  The Fourth Amendment applies both to seizures of persons and to seizures of property. <u>Payton v. New York</u>, 445 U.S. 573, 585 (1980). The Supreme Court has recognized that "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry,…", <u>United States v. Mendenhall</u>, 446 U.S. 544, 553 (1980). The seizure of a person occurs when, by means of physical force or a show of authority, in some way an officer has restrained the liberty of a person and such person submits to the restriction feeling that he/she is not free to leave. <u>United States v. Holloway</u>, 499 F.3d 114, 117 (1st Cir. 2007). Whether a seizure is reasonable is a situational inquiry, requiring a "balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975).

To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that a defendant officer employed a level of force that was unreasonable under the circumstances, with the standard of reasonableness being judged from the perspective of a reasonable officer on the scene. <u>Colon-Andino</u>, 634 F.Supp. at 235, <u>citing</u>, <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989); and <u>Jennings v. Jones</u>, 499 F.3d 2, 11 (1st Cir. 2007).

The factual matter in the Complaint does not establish that any of the Supervisory Defendants used excessive force, searched or seized the plaintiffs. The conduct related to such claim for relief is attributed exclusively to the line officer defendants.

Thus, even if the Court were to assume for the sake of argument that the allegations in the

---

12 U.S. Const. Amend. IV ("[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized").

Complaint could state a constitutional claim against someone other than the Supervisory Defendants, those allegations "still fail to establish the required causal connection between movants and the deprivation of [plaintiffs'] constitutional right[s]." López-Jiménez, 2010 U.S. Dist. LEXIS 9178, at *10-*11.

C. **Fourteenth and Fifth Amendment Claims must be dismissed.**

In praying for the dismissal of the Fourteenth and Fifth Amendment claims, Supervisory Defendants incorporate by reference as if fully set forth herein the arguments in sections C and D of the Motion to Dismiss filed by defendants Hon. José Luis Cruz-Cruz and Radamés Benítez in their (Docket No. 32, pp. 12-15).

D. **Plaintiff Carmen Lidia Jorge lacks standing to assert 42 U.S.C. § 1983 Claims.**

Because the Complaint does not and cannot allege that the personal constitutional rights of the plaintiff Carmen Lidia Jorge were violated, this Honorable Court should dismiss with prejudice all claims brought by plaintiff Carmen Lidia Jorge on her own behalf for lack of standing. Carmen Pacheco v. Betancourt y Lebrón, 820 F. Supp. 45, 46 (D.P.R. 1993)("To maintain an action under section 1983, claimants must allege that their personal constitutional rights have been violated in some manner.") Since the aforementioned plaintiff does not have a federal cognizable claim she does not have access to the federal forum and all of her claims should be thrown out of federal court. See Arnold v. Troccoli, 344 F.2d 842, 843 n.1 (2nd Cir. 1965).

E. **Qualified Immunity.**

The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. §1983.  Roldán-Plumey v. Cerezo-Suárez, 115 F.3d, 58, 65 (1st Cir. 1997); and Torres-Rosado v. Rotger-Sabat, 204 F.Supp.2d 252, 269 (D.P.R. 2002).

The availability of qualified immunity turns on a "two-step analysis": (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation." Maldonado, 568 F.3d at 268-269.

Either of the two considerations may be considered first, and if either is applicable, the public officer is immune. Maldonado, 568 F.3d at 269-270.

The standard is a deferential one, since even "in a summary judgment context: 'If, upon viewing the evidence in the light most favorable to the nonmovant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.' The qualified immunity standard 'gives ample room for mistaken judgments.'"[13]  All of the Supervisory Defendants are entitled to the qualified immunity defense on the first prong of the analysis on all causes of action.  In the captioned case, it is impossible for the plaintiffs to establish the violation of a constitutional right, Ashcroft, *supra*, since there was no violation of the law by any of the appearing Supervisory Defendants.  The Complaint fails to properly plead that any of the appearing Supervisory Defendants violated a clearly established constitutional rights. Thus, under the first prong of the qualified immunity analysis, all of the appearing Supervisory Defendants  are entitled to qualified immunity as to all claims brought against them.

In any event, the Supervisory Defendants would be entitled to qualified immunity inasmuch as it cannot be said that the law was clearly established when, in Ashcroft, supra, the Supreme Court found a need to clarify when a supervisor can be held liable under the supervisory liability doctrine. The law regarding supervisory liability is clearly in flux and cannot be said to be clearly established. In the case of Maldonado, supra, and most recently, in Soto-Torres, supra,  the First Circuit admitted as much when it raised, but did not decide the issue, whether its prior jurisprudence on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability" survived Ashcroft. See Maldonado, 568 F.3d at 275, n.7; and Soto-Torres v. Fraticelli, supra, footnote 7, as cited above. As previously discussed, several other circuit courts and various district courts have expressed similar doubts as to this matter as well.

However until such issues are either clarified by the First Circuit or by the U.S. Supreme Court, the

---

13 See Ross, Sword and Shield Revisited: A Practical Approach to Section 1983, Chapter 11 by Robert F. Brown, at p. 538 nn. 113 and 114, quoting, Harper v. Harris County, 21 F.3d 597, 600 (5th Cir. 1994); and Malley v. Briggs, 475 U.S. 335, 343 (1986). See also Hunter v. Bryant, 502 U.S. 224, 229 (1991)("This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued."), quoting Davis v. Scherer, 468 U.S. 183, 196 (1984).

law of supervisory liability cannot be considered clearly established. Supervisory Defendants are entitled to the benefits of qualified immunity as a result of not knowing whether they would be held liable only for their own individual actions as Ashcroft states, or whether they could be held liable as well for their acts and omissions as earlier First Circuit jurisprudence had seemed to hold. The law is also not clearly established post-Ashcroft as to whether a Supervisory Defendant may be found liable just on the basis of deliberate indifference rather than for his intentional actions. Finally, the law is not clearly established whether any supervisory liability for knowledge and acquiescence claims survive Ashcroft.

### F.  Eleventh Amendment Immunity.[14]

Suits filed against government officials in their official capacity, such as the case at bar, are deemed actions against the State since the real party in interest is the government and not the official. Pennhurst State Sch. & Hospital v. Halderman, 465 U.S. 89, 101-102 (1984). Accordingly, absent a waiver or consent, Puerto Rico, or any of its governmental arms, may not be subject to suit in the Federal Courts. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993); Rivera Fernández v. Chardon, 681 F. 2d 42, 55 (1st Cir. 1982)("Puerto Rico not having waived its sovereign immunity, the award against its Department of Education cannot stand"). The Court need not dwell long on this matter, given that the PRPD is an arm or alter ego of Puerto Rico. Medero-García v. Commonwealth, supra, at *20.

---

14 Plaintiffs' failure to state a claim shows that they cannot prevail on the merits of their claims against the appearing Supervisory Defendants. Without waiving other grounds why plaintiffs would not be entitled to injunctive relief, this ground alone is sufficient to deny such request.  In considering whether a grant or denial of preliminary injunction will issue, a district court must consider: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiff; and (4) the effect, if any, on the public interest". See, González-Droz v. González Colón, 2009 WL 2184819 (1st Cir. 2009), citing Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008). Of the four criteria relevant to a granting or a denial of preliminary injunction, a showing of the likelihood of success on the merits has been held "to be critical". Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991). **A plaintiff who cannot prevail on this standard cannot prevail in its request for relief.** See, LeBeau v. Spirito, 703 F.2d 639 (1st Cir. 1983). In Coalition for Basic Human Needs v. King, 654 F.2d 838, 841 (1st Cir. 1981), the Court held that even in situations in which irreparable injury is "excruciating obvious", a plaintiff must show a likelihood of success on the merits on claims to obtain preliminary injunction.

Moreover as an independent ground for denying any claim for injunctive relief, the Complaint also does not make an analysis of why plaintiffs are entitled to injunctive relief. Thus, plaintiffs have waived any request for such relief. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("'It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.').". Plaintiffs did not and cannot satisfy the burden of coming forward and presenting the case in favor of a preliminary injunction. Granny Goose Foods, Inc. v. Brotherhood of Teamster & Auto Truck Drivers Local No. 70, 415 U.S. 423, 442 (1974). Based on, but not limited to, these grounds, plaintiffs' request for injunctive relief must be denied.

The declaratory judgment sought by plaintiff is equally barred. In that regard, it has been held that "[a] declaratory judgment is not available when the result would be a partial 'end run' around the rest of the Supreme Court's *Eleventh Amendment* jurisprudence, particularly its limitations on the *Ex parte Young* doctrine." Mills v. Maine, 118 F.3d 37, 55 (1st Cir. 1997)*(quoting* Green v. Mansour*, 474 U.S. 64, 73, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)(petitioners were not entitled to declaratory judgment that the petitioner violated federal law in the past because declaratory relief cannot be granted against a state where "the award of declaratory judgment ... would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution could be computed")). As reasoned by the First Circuit, "the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the *Eleventh Amendment*." Mills*, 118 F.3d at 54. Any and all claim for money damages in the Complaint against the Commonwealth, the PRPD and/or the Supervisory Defendants in their official capacity are barred by the Eleventh Amendment.

### G.  Plaintiffs failed to comply with P.R. Law No. 104.

Puerto Rico's Law No. 104 sets forth a notice requirement for a person who wishes to bring suit against the Commonwealth and/or one of its branches, with which plaintiff has not alleged compliance. The aforementioned statute requires every person who has a claim of any kind against the Commonwealth to present a written notice to the Secretary of Justice within the ninety (90) days following the date in which the claimant became aware of the damages claimed. Failure to comply with the timely presentation of the written notice bars the judicial action of any kind against the Commonwealth of Puerto Rico for damages caused by a culpable or negligent act of the Commonwealth. P.R. Laws Ann. tit. 32, §3077

There is no factual assertion in the Complaint establishing that the Secretary of Justice was served with the required notice in a timely fashion. There is no allegation in the Complaint that the plaintiffs notified any of the Supervisory Defendants with the written notice that is a prerequisite for a cause of action in torts

to be cognizable against them. Moreover, plaintiffs have not alleged any circumstances which would excuse their plain failure to provide the Supervisory Defendants with written notice within the time specified by law. Not having complied with the terms and conditions under which the veil of sovereign immunity would be lifted from the Supervisory Defendants as the Commonwealth Government and/or as an integral part of the Commonwealth government, the plaintiffs simply lack a cause of action in tort against the Supervisory Defendants. Accordingly, this Honorable Court must dismiss the causes of action on sovereign immunity grounds.

### H.  State law claims.

Pursuant to the preceding argument, the local law claims are barred. In addition, the appearing Supervisory Defendants request dismissal of the state law claims for the same reasons set forth by co-defendants Hon. José Luis Cruz-Cruz and Radamés Benítez in their Motion to Dismiss (Docket No. 32, pp. 18-20), which argument is incorporated by reference as if fully set forth herein. The Complaint fails to adequately plead that the Supervisory Defendants' behavior was causally related to plaintiffs' injuries as required by law.

WHEREFORE, the Appearing Defendants respectfully pray from this Honorable Court to order the dismissal of the Complaint in its entirety and for the imposition of costs and attorneys against the plaintiffs for filing a frivolous suit against them.

**RESPECTFULLY SUBMITTED,** in Guaynabo, Puerto Rico, this 11th day of June, 2012.

I HEREBY CERTIFY: that on this same date, I electronically filed the foregoing Notice with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants and attorneys of record.

**S/ MICHAEL CRAIG MCCALL**
Michael Craig McCall
USDCPR 210412
e-mail: michaelm@caribe.net

**S/ CARLOS E. CARDONA-FERNÁNDEZ**
Carlos E. Cardona-Fernández
USDCPR 217806
e-mail: carloscardonafe@hotmail.com
Tel. (787) 550-9280

**ALDARONDO & LÓPEZ BRAS**
ALB Plaza, Suite 400
#16 Carr. 199
Guaynabo, P.R. 00969
Tel. (787) 474-5447 ▪ Fax. (787) 474-5451
**Counsel for Appearing Supervisory Defendants**