IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN LIDIA JORGE, *et al.*,

**Plaintiffs**

v.

POLICE DEPARTMENT OF THE
COMMONWEALTH OF PUERTO RICO, *et al.*,

**Defendants**

CIVIL NO. 11-2268 (JAG)

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court are several motions to dismiss, advanced by co-defendants Puerto Rico Police Department ("PRPD"), former PRPD Superintendent Emilio Diaz-Colon ("Diaz"), Auxiliary Superintendent Leovigildo Vazquez ("Vazquez"), former PRPD Superintendent José Figueroa-Sancha ("Figueroa-Sancha"), the Municipality of Trujillo Alto ("the Municipality"), Mayor of the Municipality Jose Luis Cruz-Cruz ("Cruz"), Police Commissioner of the Municipality Radames Benitez ("Benitez"), PRPD officer Ivan Lebron-Lebron ("Lebron") and PRPD Officer Figueroa-Diaz Figueroa-Diaz ("Figueroa-Diaz"). (Docket Nos. 28, 32, 43, 49, and 56). For the reasons set forth, the Court **GRANTS** the PRPD, the Municipality, Cruz and Benitez's motions to dismiss.

Civil No. 11-2268                                              2

Furthermore, the Court **DENIES** Figueroa-Sancha, Vazquez, Diaz, Lebron and Figueroa-Diaz's motions to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts from Plaintiffs' Complaint and takes them as true for purposes of resolving the motions to dismiss.

On December 30, 2011, Plaintiffs Carmen Lidia Jorge ("Lidia") and the minor ESJ ("Plaintiff")(collectively "Plaintiffs") filed a civil suit against the above named co-defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs allege violations of the Fourth, Fifth, and Fourteenth Amendments. Plaintiffs also seek relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202. Finally, Plaintiffs allege supplemental claims under the Puerto Rico Civil Code.

On December 31, 2010, Plaintiff was in an automobile with two other individuals when it stopped at the recycling center in Trujillo Alto. The two individuals left the vehicle and later, rushed back. The car left the scene pursued by two police officers of the PRPD, Figueroa-Diaz and Rivera.[1] Marrero-Moya also gave chase to the automobile where Plaintiff was traveling. That vehicle then drove to a nearby housing development; after

---

[1] The complaint does not specify why the two police officers began to pursue Plaintiff and the other two individuals.

15 minutes and no more police cars in pursuit, Plaintiff and the other individuals exited the development in the same vehicle.

The vehicle was then pursued by a Municipal (Trujillo Alto) Police car, which was driven by More and Noe, and other officers from the PRPD, including Ortiz, Galarza, Roe and Doe. The officers detained one of the two unidentified individuals, but then began shooting their firearms at Plaintiff. Plaintiff was shot twice in the back and then dragged by the officers and put in the Municipal Pick-up truck. None of the officers administered any first aid assistance or called emergency medical services. While in the pick up truck, Plaintiff lost consciousness. Later, he was taken to Auxilio Mutuo Expreso Hospital to be treated for the gun wounds. As a result of the injuries, Plaintiff is paralyzed and unable to walk. Lidia also suffered emotional and mental anguish from seeing the suffering that Plaintiff endured.

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

Civil No. 11-2268                                                4

Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or "actual proof of those facts is improbable." Id. Finally, the Court assesses whether the facts taken as a whole "state a plausible, not a merely conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. See Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

Civil No. 11-2268                                                      5

**DISCUSSION**

Motion to Dismiss as to Figueroa-Sancha, Vazquez and Diaz-Colon

    I.   § 1983 Claims

    Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, but may be liable on the basis of their own acts and omissions. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citing Iqbal, 129 S. Ct. at 1948; Aponte Matos v. Toledo Dávila, 135 F.3d 182, 192 (1st Cir. 1998)). "In the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a primary violator or direct participant in the rights-violating incident, or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Id. (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)) (internal citations and quotation marks omitted). "In either case, the plaintiff in a Section 1983 action must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Id.

"To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) actual or constructive knowledge of that risk, and (3) failure to take easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998)). A supervisor may be liable by formulating a policy or engaging in a custom that leads to the challenged occurrence. "Thus, even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). In addition to deliberate indifference, the plaintiff must also affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. Id.

Figueroa-Sancha moves for dismissal claiming that Plaintiffs have not established a causal connection between himself and the deprivation of Plaintiff's constitutional rights. Plaintiffs claim that the affirmative link between the two does exist, because, as superintendent, Figueroa-Sancha failed to implement proper recruitment, training and supervision policies. In support of this allegation, Plaintiffs include by reference the Department of Justice's Report titled "Investigation of the Puerto Rico Department." *Inter alia*, the

Civil No. 11-2268                                            7

document reports that the PRPD failed in effective recruiting
and properly training officers, both of which are essential to
constitutional policing. During the time the PRPD was
investigated by the Deparment of Justice, Figueroa-Sancha was
superintendent of PRPD. We, thus, find the Complaint sufficient
in establishing a link between the former PRPD superintendent's
conduct and the constitutional violations suffered by Plaintiff
in 2011.

Defendant Vazquez, who at the time was Auxiliary
Superintendent for Field Operations of the Police Department,
moves for dismissal on the same grounds as Figueroa-Sancha.
Given the already-mentioned report which establishes a lack of
proper recruitment and training in the PRPD, the Court finds
that the Complaint establishes an affirmative link between
Vazquez and Plaintiff's constitutional violations; thus, the
claims against Vazquez survive a motion to dismiss.

Defendant Diaz was named superintendent in July 2011,[2] and
the facts of this case occurred on September 2011. Accordingly,
given the aforementioned DOJ report and the fact that Plaintiffs
allege that Diaz "continues in place with the same policies,
practices and regulations that he knows or should have known are
unconstitutional", the Court finds an affirmative link between

---

[2] Emilio Diaz-Colon was named Superintendent of the PRPD in July, 2011. On
March 28, 2012, 9 months after he was named, Diaz-Colon resigned as
Superintendent.

Diaz and the constitutional violations in this case. (Docket No. 1 at ¶ 56). Thus, the motion to dismiss the § 1983 claims against Diaz shall be denied.

In sum, Plaintiff's complaint properly pleads plausible supervisory liability claims agains the supervisors. Granted, at this stage of the proceedings, Plaintiffs have a long way to go in order to prove the claims against each of the aforementioned supervisors. Nonetheless, the Court must refrain from estimating the probability that Plaintiffs will succeed on their claim. Ocasio-Hernandez, 640 F.3d at 12. Finally, "[t]he role of these defendants can be made clearer in discovery and nothing precludes later efforts to end the case against them should discovery not substantiate these inferences." Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 502 (1st Cir. 2012).

## II. Qualified Immunity

Figueroa-Sancha, Vazquez and Diaz all claim that they are protected by qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 526 (1st Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity test takes the form of a two-part inquiry: (1) the

Civil No. 11-2268                                              9

Court must decide if the facts a plaintiff has shown, make out a violation of a constitutional right, and (2) if the plaintiff has satisfied the first step, the Court must decide whether or not the right at issue was clearly established at the time of defendant's alleged misconduct. See Id. The First Circuit recently explained the second prong of the qualified immunity analysis:

> [it] is itself composed of two parts, which require the court to decide (1) whether the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right, and (2) whether in the specific context of the case, a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.

Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (citing Maldonado, 568 F.3d at 269)) (internal citations and quotation marks omitted).[1] "The first part addresses the status of the law at the time of the event in question, focusing on the clarity of the standard with respect to the asserted constitutional right." Id. "The second part addresses the specific factual context of the case to determine whether a reasonable official in the defendant's place would have understood that his conduct violated the asserted constitutional right." Id.

---

[1] The First Circuit in Mosher noted that the recent Supreme Court decision in Pearson v. Callahan, 129 S. Ct. 808, 818-819 (2009), gave courts discretion in addressing the "clearly established" step without first determining whether a constitutional right had been violated.

Civil No. 11-2268                                                        10

Plaintiff argues that the violation of his constitutional rights was the result of Figueroa-Sancha and Vazquez's failure to effectively recruit and train the police officer. Defendants, on the other hand, argue that the law regarding supervisor liability was not clearly established. The Court is not persuaded by Defendants. A reasonable official in Figueroa-Sancha and Diaz's position would have understood that failure to train the officers in the PRPD could lead to a violation of Plaintiffs' constitutional rights, as asserted in the complaint. As a result, the Court finds that the co-defendants do not enjoy qualified immunity.


<u>Motion to Dismiss as to the Municipality of Trujillo Alto</u>

The Municipality argues that Plaintiffs have failed to allege sufficient facts to infer that the Municipality is liable for the constitutional violations in this case. Plaintiffs, however, claim that since no investigation was ever performed, the Municipality acquiesced to the officer's misconducts; that the Municipality failed to adequately train the officers; and that the Municipality disregarded findings regarding the misuse of force by state police and had no plans for situations in which the municipal officers had to work with state police officers. We are not persuaded. It is well-established that "a municipality cannot be held liable under 1983 on a *respondeat*

Civil No. 11-2268                                              11

*superior* theory." <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691 (1978).  Plaintiffs offer nothing in support of their allegation that the Municipality failed to train and supervise their officer. Further, alleging that the failure of the Municipality to conduct an investigation of the concerned municipal officers indicated their acquiescence to the police misconduct is insufficient to survive a motion to dismiss. Finally, the Court notes that, in contrast with the DOJ report on the PRPD, there is no such indication that the Municipality was inadequately training its officers. In sum, Plaintiffs have failed at establishing a link between the Municipality and the constitutional violation suffered by Plaintiff in order to establish a plausible supervisor liability case.


<u>Motion to Dismiss as to Cruz and Benitez</u>

Cruz, Mayor of the Municipality of Trujillo Alto, and Benitez, Police Commissioner of the Municipality, move for dismissal on the grounds that the complaint fails to establish an affirmative link between their actions and the constitutional violations suffered by Plaintiff. The Court agrees.

The allegation that Benitez and Cruz-Cruz authorized the use of excessive force by the municipal officers is factually threadbare. Further, the allegation that they were aware of the

Civil No. 11-2268                                                    12

DOJ report but did nothing to prevent cases such as this one is insufficient to impose liability under sec. 1983, and as such, cannot to survive a motion to dismiss. See Docket No. 1, p. 11 ¶57. Because Plaintiffs have failed to establish a causal link between these co-defendants and the Plaintiff's constitutional violations, the claims against them will be dismissed.


Motion to Dismiss as to Lebron and Figueroa-Diaz[3]

Lebron and Figueroa-Diaz argue that the complaint is devoid of any factual matter establishing that they personally violated Plaintiff's constitutional rights. See Docket No. 49, p. 2. While that is true, the Complaint alleges that Lebron and Figueroa-Diaz were both present at the time Plaintiff was shot at, and given no medical assistance, in violation of his constitutional rights. The facts surrounding each of the officers' actions at the time they intervened with Plaintiff are still unclear. However, one thing remains clear: Lebron and Figueroa-Diaz were present at the time that Plaintiff was chased and then shot at. The role of these two defendants in the officer's intervention of Plaintiff can eventually be clarified in discvery. Thus, because the facts alleged are sufficient at this juncture, the claims shall not be dismissed.

---

[3] Lebron and Figueroa-Diaz, officers of the PRPD, filed two separate motions to dismiss. Nonetheless, they move for dismissal on the same grounds. We thus examine them together.

Civil No. 11-2268                                              13

The Court has already discussed the doctrine of qualified immunity, and finds it inapplicable here. Lebron and Figueroa-Diaz are sued because they either used excessive force by shooting at Plaintiff or did nothing to protect Plaintiff's rights. Needless to say, a reasonable officer in Lebron's position would have known that shooting at the Plaintiff[4] and/or not assisting him after he had been shot constituted violations of Plaintiff's rights.

Figueroa-Diaz and Lebron also claim qualified immunity, presuming that the complaint fails to involve them in the injurious conduct against Plaintiff. Nonetheless, the court has already addressed the issue of lack of specificity as to each of the defendant's actions. Therefore, the Court will not address this issue at this time.

**Lidia's §1983 Claims**

Defendants allege that Lidia lacks standing to assert an §1983 claim on her own behalf, since she must first allege that her personal constitutional rights have been violated in some manner, which she does not do in this case. See Carmen Pacheco v. Betancourt y Lebron, 820 F.Supp. 45, 46 (D.P.R. 1993). Plaintiffs do not address this issue and thus, waive their objections. See Local Rule 7(b). Nonetheless, we agree with

---

[4] At least under the circumstances alleged in the complaint.

Civil No. 11-2268                                                    14

Defendants and, find dismissal of Lidia's 1983 claims (brought on her own behalf) proper.


**Eleventh Amendment Immunity**

The Eleventh Amendment bars suits against states for money damages unless the state has consented. See Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority, 991 F.2d 935, 938 (1st Cir. 1993); In re San Juan Dupont Plaza Hotel Fire Lit., 888 F.2d 940, 942 (1st Cir. 1989); Ramirez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983).[1] Eleventh Amendment Immunity extends to arms or "alter egos" of the State. Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp., 322 F.3d 56 (1st Cir. 2003); Bernier-Aponte v. Izquierdo-Encarnacion, 196 F.Supp.2d 93, 98-99 (D.P.R. 2002). Similarly, suits filed against state officials in their official capacity are deemed actions against the state, whether the state is or is not the named party to the suit, since the real party in interest is the State and not the official. Hafer v. Melo, 502 U.S. 21 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Even when state officials

---

[1] The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. Amend. XI.   Puerto Rico is considered a state for Eleventh Amendment purposes.   See Bernier-Aponte v. Izquierdo-Encarnacion, 196 F.Supp.2d 93, 98 (D.P.R. 2002)(citing Negron Gaztambide v. Hernandez Torres, 145 F.3d 410 (1st Cir. 1998)).

Civil No. 11-2268                                              15

act under color of state law pursuant to § 1983, the Eleventh
Amendment bars monetary claims against them in their official
capacity. Id. at 98-99; see also Kostka v. Hogg, 560 F.2d 37
(1st Cir. 1977). "Although state officials are literally
persons, a suit against a state official in his official
capacity is not a suit against the official, but rather a suit
against the official's office." Bernier-Aponte, 196 F.Supp.2d at
98.

　　　Since the Commonwealth of Puerto Rico has not consented to
suit in federal Court for actions under 42 U.S.C. § 1983, and
the PRPD is an arm of the Commonwealth, Plaintiff's claim for
money damages against the PRPD is barred by the Eleventh
Amendment. Fresenius, 322 F.3d at 56. Furthermore, inasmuch as
Figueroa-Sancha, Diaz, Vazquez, Figueroa-Diaz and Lebron are
being sued in their official capacity, Plaintiff's claims for
money damages against these co-defendants are also barred.
Hafer, 502 U.S. at 25. The same shall be dismissed *with
prejudice.*


**Plaintiff's Fourth Amendment and Fifth Amendment Claims**

　　　All Defendants move for a dismissal of Plaintiff's Fourth
and Fifth Amendment claims. (See Docket No. 32, pp. 12-15.) They
argue that since this complaint alleges excessive force by the
officers, the claims should be analyzed under the Fourth, and

Civil No. 11-2268                                                    16

not the Fourteenth, Amendment. Plaintiff vaguely opposes this claim. However, we agree with the Defendant's argument, as it has been the standard adopted by this Court in previous cases. See Graham v. Connor, 490 U.S. 386, 395 (1998)(stating that claims involving officers who have used excessive force should be analyzed under the Fourth Amendment, rather than under a substantive due process approach); see also Cruz-Acevedo v. Toledo-Davila, 660 F.Supp.2d 205, 215 (D.P.R.2009); Brenes-Laroche v. Toledo Davila, 682 F.Supp.2d 179, 190 (D.P.R.2010). Accordingly, Plaintiff's Fourteenth Amednment claims shall be dismissed.

Defendants also rely on Martinez-Rivera to prove that Plaintiff's Fifth Amendment claims must be dismissed because they only apply to actions of the federal government, and not state or local governments. Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007) Plaintiff does not address Defendant's position; accordingly, any objections are waived. See Local Rule 7(b). Plaintiff's Fifth Amendment claims shall also be dismissed.


State Law Claims

Defendants also move for a dismissal of Plaintiff's state law claims. However, they do so presupposing the dismissal of

Civil No. 11-2268                                                17

their federal claims. Thus, the Court denies dismissal of the
remaining state law claims.


## CONCLUSION

For the reasons stated above, the Court **GRANTS** the PRPD,
the Municipality, Cruz, Benitez's motions to dismiss.
Furthermore, the Court **DENIES** Figueroa-Sancha, Vazquez, Diaz,
Lebron, Figueroa-Diaz's motions to dismiss. Plaintiff's Fifth
and Fourteenth Amendments are dismissed *with prejudice*.


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of March, 2013.


                                    S/Jay A. Garcia-Gregory
                                    JAY A. GARCIA-GREGORY
                                    United States District Judge