IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARMEN LIDIA JORGE**, et al.,<br>Plaintiff,<br><br>v.<br><br>**POLICE DEPARTMENT OF THE COMMONWEALTH OF PUERTO RICO**, et al.,<br>Defendants. | **CIVIL NO. 11-2268 (JAG)** |

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

**TO THE HONORABLE COURT:**

**COME NOW defendants** Hon. Jose Luis Cruz-Cruz ("Mayor Cruz") and Former Municipal Police Commissioner Radamés Benitez ("Benitez"), in their personal capacities, through the undersigned attorney and very respectfully, **SET FORTH** and **PRAY**:

### I.   INTRODUCTION

It is alleged that on December 31, 2010 defendants, members of the Police Department of the Commonwealth of Puerto Rico and the Municipality of Trujillo Alto and its police officers intentionally engaged in the use of excessive force, through the discharging of firearms which resulted in the shooting of plaintiff (a minor EFJ).

The facts alleged in the complaint are set out in detail in the Court's March 1st, 2013 Opinion & Order (**Docket No. 66**) and defendants Rule 12(b)(6) motion (**Docket No. 32**)1. In a nutshell, plaintiffs alleged that in the aftermath of a hot pursuit between Plaintiff and Police Officers, Plaintiff EFJ was shot.

---

1 Appearing defendants hereby incorporate all of their arguments outlined in their Motion to Dismiss (Docket No. 32) which was granted in Docket No. 66 into this Motion for Summary Judgment.

Page 1

With the benefit of a more developed record, defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a Court may enter judgment against a party without the celebration of a trial when: 1) there are no genuine issues of fact to be resolved at trial; and 2) the uncontested facts entitle the moving party to judgment as a matter of law. The role of this procedural mechanism is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Simply put, by invoking Rule 56, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)

The principal inquiry faced by the Court when ruling on a motion for summary judgment is whether a genuine issue of material fact exists. The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries out its burden, the nonmoving party may only survive summary judgment by presenting evidence in support of the existence of genuine issues of fact that warrant the celebration of a trial. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

In the case of Matushita Elec. Industrial Co., Ltd v. Zenith Radio Co., 475 U.S. 574 (1986), the Supreme Court defined the respondent's burden in summary judgment as follows:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than show that there is some metaphysical doubt as to the material facts. In the language of the rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.

As Circuit Judge Selya (a former District Judge himself) stated in Mesnick v. General Electric Corp., 950 F.2d 816, 822 (1st Cir. 1991):

Over time, summary judgment has proven its usefulness as a means of avoiding full-dress trials in **unwinnable cases,** thereby freeing courts to utilize scarce resources in more beneficial ways. Hence, while courts should apply the controlling standards carefully in all cases –and specifically in cases that present difficult issues of proof - summary judgment can be appropriately entered **even where elusive concepts such as motive or intent are involved**. (Emphasis Added)

Under the aforementioned standard, the court is to ignore conclusory allegations, improbable inferences and unsupported speculation. Medina-Muñoz v. RJ Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The establishment of a material issue of fact requires admissible evidence, rather than spongy rhetoric. National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 743-44 (1st Cir. 1995) ("While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists."). Moreover counsel's statements in a legal brief, devoid of support in the record will not suffice to preclude summary judgment. Betances v. Sea-Land Serv., 248 F.3d 40, 43 (1st Cir. 2001).

In short, in order to survive summary judgment, the non-moving party must bring forth a disputed fact that may change the outcome of the suit under governing law. Martínez v. Colón, 54 F.3d 980, 983-84 (1st Cir. 1995). The mere existence of a scintilla of evidence in favor of plaintiff's position is insufficient to survive summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In sum, a properly supported motion for summary judgment "requires more than the frenzied brandishing of a cardboard sword" by the non-moving party. Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006).

Mindful of this standard, we hereby set forth the basis for our request for *de brevis* disposition.

### III.   DISCUSSION

A) PERSONAL INVOLVEMENT OF THE INDIVIDUAL-CAPACITY DEFENDANTS

As so cogently explained by Judge García Gregory, while citing relevant precedent:

**Under § 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional right**s. Kostka v. Hogg, 560 F.2d 37, 40 (1st Cir.1977). **Personal involvement requires a showing of a casual connection or affirmative link between the specific defendant and plaintiffs federal rights deprivation**. Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir.1988); Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir.1985). This may consist of direct acts by the defendant, or certain acts performed at defendant's direction or knowledge and consent. Rodríguez–Vázquez v. Cintrón–Rodríguez, 160 F.Supp.2d 204, 209 (D.P.R.2001). Each defendant individually responds for his own acts and omissions in light of his own duties. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In other words, as there is no respondent superior liability under § 1983, **liability can only be imposed upon officials who were personally involved in the deprivation of constitutional rights**. Lipsett, 864 F.2d at 901–902.

Nieves Cruz v. Commonwealth of Puerto Rico, 425 F.Supp.2d 188, 193 (D.P.R. 2006) (emphasis added)

The Supreme Court's most recent pronouncement on this legal standard was to the effect of reiterating that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, the plaintiff in a suit such as the present one must plead that each Government-official defendant, **through his own individual actions, has violated the Constitution**." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (emphasis added).

On December 31, 2010, EFJ got into an automobile with two individuals. The vehicle was Honda, champagne color, with four doors. **See SUMF ¶ 7**. EFJ was in the company of two other individuals; one, is Goty (his nickname) and the other is Rafo (his nickname). He does not know their names. **See SUMF ¶ 8**. Goty is Amaury Méndez Rosado. **See SUMF ¶ 9**. Rafo is the person that the authorities never caught. **See SUMF ¶ 10**. One of the individuals had a firearm. He had it in his waist. It was black. **See SUMF ¶ 11**. Rafo had the gun. **See SUMF ¶ 12**. EFJ saw the

officers that shot at him, but he cannot remember their faces. He could not at this point in time identify them. **See SUMF ¶ 13**. EFJ was criminally charged for the events. **See SUMF ¶ 14**. His case was before the Carolina Court. **See SUMF ¶ 15**. There were at least nine accusations against him. **See SUMF ¶ 16**. EFJ pled guilty to an agreement. **See SUMF ¶ 17**. EFJ is not able to identify who shot him. He remembers two cops because they went to Court. Those two officers were witnesses in the criminal complaint against him. They were supporting the one who shot at EFJ. **See SUMF ¶ 18**. Plaintiff EFJ identified the officers coming towards his as dressed with boots, blue pants with stripes, a vest with their blue shirt and their badge. **See SUMF ¶ 19**. After being discharged from the hospital, Plaintiff EFJ was summoned to Court. **See SUMF ¶ 20**. While in the Hospital, Plaintiff EFJ was watched over by a police officer. **See SUMF ¶ 21**. Plaintiff EFJ served a year of probation because of an attempted burglary he committed before this case. **See SUMF ¶ 22**. When the car crashed, one of the passengers, Amaury (A.K.A. Goty) was arrested, Plaintiff and the other passenger exited the vehicle and fled. **See SUMF ¶ 23**. When Plaintiff got into the car with Rafo and Amaury (the other two passengers), he noticed that Rafo had a gun. **See SUMF ¶ 24**. As a matter of fact, one of the two Municipal Officers, Officer Marin and Officer Rivera-Maysonet, involved in part of the incident was injured and was taken to the hospital, the other one stayed watching over the abandoned car, thus, no Municipal Officer was involved in the incident in which Plaintiff was injured; no Municipal Officer discharged his weapon at the time of the incident in which Plaintiff was injured. **See SUMF ¶ 44**. Neither of the two aforementioned Municipal Officers have received any administrative or disciplinary complaints involving excessive use of force or disciplinary actions in the performance of their duties as municipal officers. **See SUMF ¶ 43**. Only PRPD Police officers were present in the exchange of gunfire where EFJ was injured. **See SUMF ¶ 45**.

It is clear from the that neither Mayor Cruz, nor Former Commissioner Benitez were physically present when Plaintiff was shot, for which reason it is impossible for them to have either participated in said events or for them to have been in a position to prevent it. Plaintiffs' wholly conclusory theory with regards to these co-defendants is based on the claim that "in authorizing the use of excessive force by Municipal Officers, the Mayor engaged in inadequate recruitment, training and supervision of the municipal police force. (**Docket No. 1 ¶ 57**). Additionally, they claim that both the commissioner and the mayor had knowledge of the findings of the Investigative Report of the Department of Justice of September 5th, 2011 and they ignored it when working with the PRPD. (**Docket No. 1 ¶ 58**). Once we leave the realm of pleadings and face the reality of the evidence on the summary judgment record, it becomes clear that plaintiffs are completely unable to prove any of their allegations against the appearing Defendants.

For starters, none of the individual-capacity defendants investigated processed or adjudicated any citizen complaint, or any complaint for that matter, regarding excessive use of force by any of the Municipal Officers who were present at the scene the day of the incident. By the like token, none of the individual-capacity defendants ever witnessed any acts of excessive force any of the Municipal Officers because they were not present at the time Plaintiff EFJ was shot.

Contrary to what plaintiffs plead as a general boilerplate, the appearing defendants played no part whatsoever in this case. If they failed to discipline any of the officers under their command it was because **there was no need to do so**. Mayor Cruz did not have any reason to conduct an investigation, nor did he receive information that might have led him to conduct said investigation; likewise, he did not have any reason to meet with the Superintendent of Police regarding civil rights violations in the Municipality of Trujillo. **See SUMF ¶ 42.** Again, as a matter of fact, one of the two Municipal Officers involved in part of the incident was injured and was taken to the hospital,

the other one stayed watching over the abandoned car, thus, no Municipal Officer was involved in the incident in which Plaintiff was injured; no Municipal Officer discharged his weapon at the time of the incident in which Plaintiff was injured. **See SUMF ¶ 44**.

Article 15 of the Municipal Police Regulation sets forth the proceeding to investigate and adjudicate administrative complaints against municipal policemen. **See SUMF 4 ¶ 1**. Said proceeding begins with the filing of an administrative complaint. **See SUMF ¶ 2**. The Commissioner is only required to request an investigation (which is different from investigating himself) only in those situations set forth in Article 15, Section 3 of the Regulation. **See SUMF 3**. Other members of the force are required to request an investigation (which is different from investigating themselves) only in those situations set forth in Article 15, Section 3 of the Regulation, that is, when they have personal knowledge of the violation or when they were present during the time of the violation. **See SUMF ¶ 4**. The actual investigation of administrative complaints is assigned to an **independent** Internal Affairs Office that is directed by an Director (who must be an attorney) appointed by the Mayor, who in turn, appoints investigators to work the cases. **See SUMF ¶ 5**. Investigators render a report to the Director, who may accept or reject it and who then renders his own report & recommendation to the Mayor. **See SUMF ¶ 6**. In other words, the Mayor does not intervene in the proceeding until after the investigation has been performed and a preliminary adjudication has been made by at least two other municipal officers. As to the Commissioner, he is not at all involved in the investigation process or in the administrative hearing.

As per its Opinion & Order of March 1st, 2013, the Court agreed with defendants regarding the contours of the state action requirement that underlies any action under § 1983, in fact, the Court dismissed Plaintiffs' complaint against appearing Defendants. **See Docket No. 66**. The Court found that the allegations against Mayor Cruz and Former Commissioner Benitez where "factually

threadbare" and thus, should be dismissed. **See Docket No. 66, p. 11**.

There is no escaping the fact that any alleged supervisory liability in this case is utterly non-existent. The municipal officers' involvement on the day of the incident was limited to the pursuit of the vehicle involved in the robbery and the further apprehension of one of the passengers of the vehicle, where a municipal officer was injured in the process. Neither Officer Marin nor Officer Rivera-Maysonet have received any administrative or disciplinary complaints involving excessive use of force or disciplinary actions in the performance of their duties as municipal officers. **See SUMF ¶ 43**. Once more, as a matter of fact, one of the two Municipal Officers involved in part of the incident was injured and was taken to the hospital, the other one stayed watching over the abandoned car, thus, no Municipal Officer was involved in the incident in which Plaintiff was injured; no Municipal Officer discharged his weapon at the time of the incident in which Plaintiff was injured. **See SUMF ¶ 44**. Only PRPD Police officers were present in the exchange of gunfire where EFJ was injured. **See SUMF ¶ 45**.

Thus, Mayor Cruz and former Commissioner Benitez never failed in their duties as supervisors, given that the officers under their authority acted in accordance to standard practices and procedures, within the scope of their duties, and did not engage in any act contrary to the law or any act of excessive force. Therefore, the allegations brought against Mayor Cruz and former Commissioner Benitez must be summarily **DISMISSED**.

C) **QUALIFIED IMMUNITY**

Government officers sued under § 1983 may avoid liability under the defense of qualified immunity so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Saucier v. Katz, 533 U.S. 194 (2001). Thus, although it is beyond dispute the abstract right

of a citizen to be free from excessive force is clearly established, this is not enough to defeat qualified immunity.

Qualified immunity has three prongs in the First Circuit, which require to inquire: (1) if a plaintiff's facts can establish a constitutional violation; (2) if the constitutional right at issue was clearly established at the time of the violation; and (3) if a reasonable official, situated in a position similar to the defendants', would have understood his actions to be constitutional. The general rule is that the First Circuit will treat these questions sequentially, although there can be exceptions to this order of inquiry. See Saucier, 533 U.S. at 200-202; Limone v. Condon, 372 F. 3d 39, 44 (1st Cir. 2004).

In Dirrane v. Brookline Police Dept., 315 F.3d 65 (1st Cir. 2002), the Court clarified that a finding that the applicable law was clearly established, **did not necessarily preclude qualified immunity**. ("Immunity **exists** even where the abstract 'right' invoked by the plaintiff is **well-established**, so long as the official could **reasonably have believed** 'on the facts' that no violation existed."). Id. at 69. This approach was recently reaffirmed by the Supreme Court. See Pearson v. Callahan, 555 U.S. 223 (2009).

On this record, it cannot be said that, given the nature of Agosto's administrative record and the purely personal nature of said policeman's behavior towards the Llanos siblings, they departed from objective legal reasonableness or otherwise incurred in a violation of clearly established law, particularly given the fact that there was no precedent where liability had attached in an analogous scenario.

The individual-capacity defendants are thus **ENTITLED** to qualified immunity.

**WHEREFORE** it is respectfully requested from this Honorable Court that the instant action be hereby **DISMISSED** with regards to the appearing co-defendants.

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record to their respective registered e-mail addresses.  Any non-registered attorneys and/or parties will be served via regular mail.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico this 14th day of April, 2014.

| | |
|---|---|
| CESAR R. MIRANDA<br>Designated Secretary of Justice<br><br>MARTA ELISA GONZALEZ<br>Deputy Secretary of Justice in Charge of Litigation<br><br>JANITZA GARCIA MARRERO<br>Director Federal Litigation Division | s/Joseph G. Feldstein-Del Valle<br>JOSEPH G. FELDSTEIN-DEL VALLE<br>USDC No. 230808<br>DEPARTMENT OF JUSTICE<br>GENERAL LITIGATION OFFICE<br>FEDERAL LITIGATION DIVISION<br>P.O. BOX 9020192<br>SAN JUAN, PUERTO RICO 00902-0192<br>TEL. (787) 721-2900 ext. 2651<br>FAX (787) 723-9188<br>e-mail: jfeldstein@justicia.pr.gov |