**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CARMEN LIDIA JORGE**, *et al.*,<br>Plaintiff,<br><br>v.<br><br>**POLICE DEPARTMENT OF THE COMMONWEALTH OF PUERTO RICO**, *et al.*,<br>Defendants. | **CIVIL NO. 11-2268 (JAG)** |

**MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM OF LAW  IN SUPPORT THEREOF**

TO THE HONORABLE COURT:

COME NOW co-defendants Emilio Díaz-Colón ("Díaz"), José Figueroa-Sancha ("Figueroa-Sancha"), Mayra Figueroa-Díaz ("Mayra Figueroa"), Iván Lebrón-Lebrón ("Lebrón"), and Leovigildo Vázquez ("Vázquez"), in their individual capacity only, and through the undersigned attorney respectfully alleges and prays as follows:

**I. INTRODUCTION**

The instant case is a straightforward excessive force case in which Plaintiffs plead a violation of their Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against the appearing Defendants and against other Municipality co-defendants that do not appear in this Motion for Summary Judgment (**Docket No. 1**).  The facts as alleged in the complaint are set out in detail in the Court's March 1, 2013 Opinion & Order (**Docket No. 66**) on defendants Rule 12(b)(6) motions. In a nutshell, plaintiffs alleged On December 31, 2010, minor Plaintiff EFJ was in an automobile with two other individuals that stopped at the recycle center in Trujillo Alto. Two of the three individuals robbed the place then fled the scene. They were pursued by police offices from the PRPD. However, the automobile lost them in "Los Claveles" residential project. After

fifteen (15) minutes, the three individuals exited the pursuit continued by a Municipal Police car. Eventually, the car stopped and Minor Plaintiff EFJ fled into the nearby brush. Minor Plaintiff EFJ was wounded with a firearm while trying to escape. The officers at the scene did not make any attempts to administer medical services to EFJ. With the benefit of a more developed record, appearing defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.

The appearing Defendants assert that they did not violate Plaintiffs' civil rights and that they acted in accordance to the Constitution, laws and regulations of both the United States and Puerto Rico. For the reasons that will be explained herein, the appearing Defendants, respectfully, ask this Honorable Court to **DISMISS WITH PREJUDICE** the instant Complaint as matter of law.

## II. STATEMENT OF THE FACTS IN SUPPORT FOR THE MOTION FOR SUMMARY JUDGMENT AT DOCKET NO. 159.

For a complete statement of the facts relevant to the instant Memorandum, the Court is respectfully referred to Defendants" Statement of Uncontested Material Facts ("SUMF") submitted pursuant to L.Cv.R. 56(b), which is incorporated by reference as if set forth in full herein.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a Court may enter judgment against a party without the celebration of a trial when: 1) there are no genuine issues of fact to be resolved at trial; and 2) the uncontested facts entitle the moving party to judgment as a matter of law. The role of this procedural mechanism is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Simply put, by invoking Rule 56, "the moving party in effect

declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)

The principal inquiry faced by the Court when ruling on a motion for summary judgment is whether a genuine issue of material fact exists. The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries out its burden, the nonmoving party may only survive summary judgment by presenting evidence in support of the existence of genuine issues of fact that warrant the celebration of a trial. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

In the case of Matushita Elec. Industrial Co., Ltd v. Zenith Radio Co., 475 U.S. 574 (1986), the Supreme Court defined the respondent's burden in summary judgment as follows:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than show that there is some metaphysical doubt as to the material facts. In the language of the rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.

As Circuit Judge Selya (a former District Judge himself) stated in Mesnick v. General Electric Corp., 950 F.2d 816, 822 (1st Cir. 1991):

> Over time, summary judgment has proven its usefulness as a means of avoiding full-dress trials in **unwinnable cases,** thereby freeing courts to utilize scarce resources in more beneficial ways. Hence, while courts should apply the controlling standards carefully in all cases –and specifically in cases that present difficult issues of proof - summary judgment can be appropriately entered **even where elusive concepts such as motive or intent are involved**. (Emphasis Added)

Under the aforementioned standard, the court is to ignore conclusory allegations, improbable inferences and unsupported speculation. Medina-Muñoz v. RJ Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The establishment of a material issue of fact requires

admissible evidence, rather than spongy rhetoric. National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 743-44 (1st Cir. 1995) ("While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists."). Moreover counsel's statements in a legal brief, devoid of support in the record will not suffice to preclude summary judgment. Betances v. Sea-Land Serv., 248 F.3d 40, 43 (1st Cir. 2001).

In short, in order to survive summary judgment, the non-moving party must bring forth a disputed fact that may change the outcome of the suit under governing law. Martínez v. Colón, 54 F.3d 980, 983-84 (1st Cir. 1995). The mere existence of a scintilla of evidence in favor of plaintiff's position is insufficient to survive summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In sum, a properly supported motion for summary judgment "requires more than the frenzied brandishing of a cardboard sword" by the non-moving party. Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006).

Mindful of this standard, we hereby set forth the basis for our request for *de brevis* disposition.

### III. DISCUSSION

Section 1983 in itself does not create substantive rights, but merely provides a venue for vindicating federal rights elsewhere conferred. Graham *v.* M.S. Connor, 490 U.S. 386 (1989); Albright *v.* Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). It creates a private right of action for redressing abridgments or deprivations of federally assured rights. Cox *v.* Hainey, 391 F.3d 25, 29 (1st Cir.2004); McIntosh *v.* Antonino, 71 F.3d 29, 33 (1st Cir.1995); Evans *v.* Avery, 100 F.3d 1033, 1036 (1st Cir.1996).

To establish liability pursuant to section 1983, a plaintiff must first establish that "the conduct complained of was committed by a person acting under color of state law." Parrat v. Taylor, 451 US 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 US 327 (1986)); Gutiérrez Rodríguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989). Secondly, a plaintiff must allege facts sufficient to conclude that the alleged conduct worked a denial of rights secured by the Constitution or laws of the United States. See Cepero-Rivera v. Fagundo, 474 F3d 124 (1st Cir. 2005), Johnson v. Mahoney, 424 F. 3d 83, 89 (1st Cir. 2005) cited in Velez-Rivera v. Agosto-Alicea, supra. A section 1983 violation occurs when an official acting under color of state law acts to deprive an individual of a federally protected right. Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 25 (1st Cir.2008). Moreover, plaintiffs must show that defendant's actions were the cause in fact of the alleged constitutional deprivation. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir.2008) (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir.1997)).

A plaintiff is required to allege personal action or inaction by each defendant within the scope of their responsibility that would make each of them personally answerable in damages pursuant to section 1983. See Pinto v. Nettleship, 737 F. 2d 130, 133 (1st Cir. 1984). Plaintiff must show that the defendants were involved in the alleged deprivation of their rights, that is who did what to whom. To impose liability upon a defendant, it is necessary that "the conduct complained of must have been *causally connected* to the deprivation." Gutiérrez-Rodríguez v. Cartagena, supra at page 559 (1st Cir.1989). "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir.1999), quoted in Braga v. Hodgson, 605 F.3d 58, 61 (1st 2010).

This element of causal connection requires that the plaintiff establishes: 1) that the defendants were personally involved in the violation, see Monell *v.* Department of Social Services, 436 U.S. 658, 694 n. 58 (1978); Voutour *v.* Vitale, 761 F.2d 812, 819 (1st Cir. 1989); Medina Pérez *v.* Fajardo, 257 F.Supp. 2d 467 (D.P.R. 2003); and 2) that the defendants conduct was intentional, Simmons *v.* Dickhaut, 804 F. 2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. See Clark *v.* Taylor, 710 F.2d 4, 36 Fed.R.Serv.2d 1202 (1983).

"…Only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera *v.* Fagundo, 414 F.3d 124, 129 (1st Cir. 2005), citing Wilson *v.* City of N. Little Rock, 801 F.2d 316, 322 (8th Cir.1986) (finding, in a § 1983 action against police officers, that "[l]iability may be found only if there is personal involvement of the officer being sued").

A defendant is personally liable under federal law only for constitutional violations and not for mere negligence. *See* Daniels *v.* Williams, 474 U.S. 327, 330-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Estelle *v.* Gamble, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Acosta *v.* U.S. Marshals Service, 445 F.3d 509, 514 (1st Cir. 2006). "[T]he essential elements of actionable section 1983 claims derive first and foremost from the Constitution itself, not necessarily from the analogous common law tort." Calero-Colon *v.* Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir.1995); cited in Burke *v.* McDonald, 572 F.3d 51, 58 (1st Cir. 2009).

Causation is an essential element of a section 1983 cause of action. A plaintiff cannot succeed in a civil rights action if he or she fails to demonstrate a causal connection between the

6

state official's alleged wrongful action and the alleged deprivation. See Reimer *v.* Smith, 663 F. 2d1316, 1322, n. 4 (5th Cir. 1981).

To succeed in an action pursuant to section 1983, the plaintiff – who has the burden of proof – first must show official conduct, that is, an act or omission undertaken under color of state law. Roche *v.* John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir.1996). Secondly, the plaintiff must satisfy the "constitutional injury" requirement by making a showing of a deprivation of a federally-secured right. Baker *v.* McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Nieves *v.* McSweeney, 241 F.3d 46, 53 (1st Cir.2001) cited in Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

It is clear from the Defendants' SUMF that neither Mayra Figueroa (SUMF), Vázquez (SUMF) and Figueroa-Sancha (SUMF) were physically present when Agent Juan Ortiz ("Ortiz") shot at Plainitff EFJ, for which reason it is impossible for them to have either participated in said aggression or for them to have been in a position to prevent Ortiz from firing his weapon.

A) **NO PERSONAL INVOLVEMENT OF DEFENDANT MAYRA FIGUEROA**

In the case of Mayra Figueroa, she was nowhere near in order to shoot at Plaintiffs EFJ, nor prevent Ortiz from discharging his weapon. On December 31, 2010, at 10 a.m., Mayra Figueroa started service at the precinct and was detached to work at the Loíza Municipality in a "no-more-bulletsin-the-air" caravan. Fellow officer Luis Rivera ("Rivera") was going to go with her to that site. (**SUMF 24**) When they reached the traffic light of Road No. 846 and No. 199, Rivera noticed that the recycling center was being robbed. (**SUMF 25**) The individuals hopped in a vehicle, a champagne-colored Honda Accord (**SUMF 26**) Rivera told Mayra Figuero to "stay" and she did so. (**SUMF 27 and 28**) The next time Mayra Figueroa saw Rivera was at a bridge located at the intersection of Road No. 181 and No. 175, in order to continue on towards

Loíza. Rivera was waiting for her. (**SUMF 31**) Afterwards, Mayra Figueroa did not have any more participation with the incident, other than serving as a witness for the State Attorney's Office. (**SUMF 32, 33, and 34**)

Plaintiff EFJ cannot come forward with any evidence that can contradict the above **SUMFS**. All that Plaintffs have are conclusory allegation in their Complaint. EFJ is not able to identify who shot him. He remember two cops because they went to Court. Those two officers were witnesses in the criminal complaint against him. They were supporting the one who shot at EFJ. (**SUMF 14**). As such, the Plaintiffs' claims against Mayra Figueroa must be **DISMISSED WITH PREJUDICE** for lack of personal involvement.

B) NO PERSONAL INVOLVEMENT OF DEFENDANT LEBRÓN

In the case of Lebrón, and considering *in arguendo* that Ortiz violated the Fourth Amendment of the US Constitution, although he reached the scene in the company of Ortiz, it was impossible for him to have prevented Ortiz from firing his weapon at EFJ.
Upon arriving at Road 843 in Trujillo Alto, where the curves start on the highway, they encountered fellow officer Maysonet, who was in custody of the champagne-colored vehicle that had been abandoned at that place by Plaintiff EFJ and his companions. (**SUMF 47**) The vehicle was in the "sardinel" (the gutter) (**SUMF 48**) It had two tires on that, and two tires on the tarmac (**SUMF 48**) The area was a wooded area. But at the same time a ravine. (**SUMF 50**) Lebrón learned that there had been three individuals in the car and that some of them had entered the ravine. (**SUMF 51 and 52**) Lebrón and Ortiz walked further up by a two-level house and after that they went into the yard where there is a residence for female mental patients and Lebrón went to the right and Ortiz went to the left (**SUMF 53**) After Lebrón split from Ortiz, Lebrón continued to walk to the right and went down an abandoned path and then he reached to the back

part of a business establishment known as "El Tequila", located on Road 175. (**SUMF 54**) That is when Lebrón heard two gunshots. (**SUMF 55**) Lebrón sped up the pace and as he was going up the path, he heard approximately two or three more gunshots. He sped up his pace even more and as he was going up and reaching the top of the little hill, he then saw his fellow officer Ortiz running down towards where he was located. (**SUMF 56**) When Lebrón met Ortiz he was alone. (**SUMF 58**) Lebrón did not know how or where the plaintiff was shot. (**SUMF 72**) Lebrón was not accused for the incident. (**SUMF 74 and 75**)

Again, Plaintiff cannot conjure up any evidence linking Lebrón to the alleged Fourth Amended Claim, either by direct participation or by failing to intervene. All that Plaintiffs have are conclusory allegation in their Complaint. EFJ is not able to identify who shot him. He remember two cops because they went to Court. Those two officers were witnesses in the criminal complaint against him. They were supporting the one who shot at EFJ. (**SUMF 14**). Thus, Plaintiffs' claims against Lebrón must also be **DISMISSED WITH PREJUDICE** for lack of personal involvement.

**C) NO PERSONAL INVOLVEMENT OF DEFENDANT VÁZQUEZ**

From the Defendants' SUMF, it is clear that Vázquez were physically present when Agent Juan Ortiz ("Ortiz") shot at Plainitff EFJ, for which reason it is impossible for them to have either participated in said aggression or for them to have been in a position to prevent Ortiz from firing his weapon.

To prevail in a § 1983 claim, plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law and (ii) that [alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." See Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996)

(citations omitted). As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91-92 (1st Cir. 1994) (finding that there is no liability on the basis of *respondeat superior*, and thus, "[a] supervisor may be found liable only on the basis of his own acts or omissions"); Wilson, 801 F.2d at 322 (finding, in a § 1983 action against police officers, that "liability may be found only if there is personal involvement of the officer being sued").

In cases where the Plaintiff alleges that a supervisor's conduct caused a constitutional deprivation, the Supreme Court has firmly rejected *respondeat superior* as a basis for § 1983 liability of supervisory officials. See Votour v. Vitale, 761 F.2d 812, 819 (1st 1985) (*citing* Monell, 436 US at 694). It has been established that §1983 "should not be constructed to include vicarious liability, which is based on considerations of public policy, rather than fault or causation." (Id.) As such, the Supreme Court has declined to find causation where the alleged liability stems merely from an employment relationship. See City of Oklahoma v. Tuttle, 471 US 808, 818 (1985). Following this lead, the Court of Appeals for the First Circuit has emphasized that supervisory liability cannot be predicated on a *respondeat superior* theory. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999). Supervisors may only be held liable under § 1983 based on their own acts or omissions. Id. Section 1983 does not impose purely supervisory liability, Rizzo v. Goode, 423 U.S. 362, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561(1976); it aims at "persons who have actually abused their positions of authority," Durham v. Crosby, 435 F.2d 1177, 1180 (1st Cir. 1970), and hence "only persons who were directly involved in the wrongdoing may be held liable." Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir. 2007)(citing Kostka v. Hogg, 560 F.2d 37, 39 (1st Cir. 1977)).

Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *See* Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Absent direct participation, a supervisor may only be held liable where "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link [ed] ' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.' " Pineda v. Toomey, 533 F.3d 50, 54 (2008); Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir. 1995) (*quoting* Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir. 1988)), but that is a demanding standard; *see* Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997)." Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir. 2007). The requirement of an "affirmative link" between the behavior of a subordinate and the action or inaction of his supervisor "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *See* Hegarty, 53 F.3d at 1380. Merely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a Section 1983 claim against a supervisor. Figueroa-Flores v. Acevedo-Vilá, 491 F.Supp.2d 214, 226 (D.P.R. 2007); *see also* Esteras v. Díaz, 266 F.Supp.2d 270 (D.P.R. 2003).

In the case of Vázquez, he was not a supervisor for any of the PRPD Defendants, nor was he charged with their training. Vázquez has no personal knowledge of what transpired on December 31, 2010 with regards to the Complaint. This is so because I was not present at place of the alleged events at any time. (**SUMF 135**) He does not personally know any of the named PRPD defendants nor does he know their disciplinary records. (**SUMF 136, 137, 138, 139, 140, and 141**) Furthermore, he did not have any supervisory responsibilities over the PRPD personnel

11

that participated in the events as described in the complaint. (**SUMF 142**) And he was not in charge with the training or recruitment of the PRPD personnel that participated in the events as described in the complaint. (**SUMF 143**) And, for the sake of argument, even if Vázquez did have knowledge and Ortiz violated the Plaintiffs' Fourth Amended Rights, of the few administrative complaints filed against the PRPD officers, there is no way in which they would put Vázquez on notice of the offending behavior. In the same manner, Plaintiffs have no evidence to support the affirmative link between his alleged Fourth Amended Claim and Vázquez. Furthermore, the Court has never had any jurisdiction over Ortiz. As a consequence, he is not a party in the instant complaint.

As such, all claims against Vázquez should be DISMISSED WITH PREJUDICE for lack of personal involvement in the alleged constitutional violations.

### D) NO PERSONAL INVOLVEMENT OF DEFENDANT FIGUEROA

It is clear from the Defendants' SUMF that Figueroa-Sancha was physically present when Agent Juan Ortiz ("Ortiz") shot at Plainitff EFJ, for which reason it is impossible for them to have either participated in said aggression or for them to have been in a position to prevent Ortiz from firing his weapon. In the case of Figueroa, he adopts be reference all of Vázquez arguments regarding the lack of personal involvement. (*SUMFS 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, and 133*).

As such, all claims against Vázquez should be DISMISSED WITH PREJUDICE for lack of personal involvement in the alleged constitutional violations.

### E) PLAINTIFFS' REQUEST TO DISMISS THEIR CLAIMS AGAINST DÍAZ

In the case of Díaz, we was included as a Defendant "because Defendant Emilio Díaz Colón (Diaz-Colon) is at present Superintendent of the Police Department." (Docket No. 1, p. 3,

¶ 5). Now, considering for the sake of argument that Plaintiffs' claims were to succeed, given that Díaz no longer occupies that position within the PRPD, he is not available to answer to any of Plaintiffs claims.

As such, any claims against Díaz must be DISMISS WITH PREJUDICE for lack of personal involvement.

**F) STATE LAW CLAIMS**

Plaintiffs allege violation under the Constitution of the Commonwealth of Puerto Rico and Article 1802 and 1803 of the Civil Code of Puerto Rico.  Pretrial termination of federal-law claims forces dismissal of pendent state-law claims in the absence of any other cognizable basis for federal jurisdiction. Rodríguez v. Doral Mortgage Corp., 57 F. 3d 1168, 1175-117 (1st. Cir. 1995).  In deciding whether or not to retain jurisdiction on state-law claims after a dismissal of all claims over which the trial court has original jurisdiction, the trial court must take into consideration concerns of comity, judicial economy, convenience and fairness. *See* Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995). In the instant case, there are no valid federal claims against Codefendants Ortiz, and De Jesus, thus, the pendent state-law claims should all be **DISMISSED WITH PREJUDICE** as to them pursuant to 28 U.S.C. sec. 1367(c)(3).

**G) ALLEGATIONS AGAINST JOHN AND JANE DOES.**

Rule 4(m) of the Federal Rules of Civil Procedure clearly establishes that "[if] service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative, shall dismiss the action…" Fed R. Civ. P. 4(m). "…Rule 4(m) of the Federal Rules of Civil Procedure provides a time limit for service. When service of the Complaint is not done within the time frame prescribed by Rule 4(m), a

dismissal under 12(b)(5) is … appropriate." Austin v. Spaulding, 2001 WL 345605, at * 2 (D.R.I. 2001) (Not Reported in F.Supp.2d). Other agents identified as John or Jane Does where never served pursuant to the Federal Rules of Civil Procedure. Also, Plaintiff has never request leave to amend the complaint. Thus, any allegations against them should be **DISMISSED WITH PREJUDICE**.

### H) QUALIFIED IMMUNITY

Government officers sued under § 1983 may avoid liability under the defense of qualified immunity so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Saucier v. Katz, 533 U.S. 194 (2001). Thus, although it is beyond dispute the abstract right of a citizen to be free from excessive force is clearly established, this is not enough to defeat qualified immunity.

Qualified immunity has three prongs in the First Circuit, which require to inquire: (1) if a plaintiff's facts can establish a constitutional violation; (2) if the constitutional right at issue was clearly established at the time of the violation; and (3) if a reasonable official, situated in a position similar to the defendants', would have understood his actions to be constitutional. The general rule is that the First Circuit will treat these questions sequentially, although there can be exceptions to this order of inquiry. See Saucier, 533 U.S. at 200-202; Limone v. Condon, 372 F. 3d 39, 44 (1st Cir. 2004).

In Dirrane v. Brookline Police Dept., 315 F.3d 65 (1st Cir. 2002), the Court clarified that a finding that the applicable law was clearly established, **did not necessarily preclude qualified immunity**. ("Immunity **exists** even where the abstract 'right' invoked by the plaintiff is **well-**

**established**, so long as the official could **reasonably have believed** 'on the facts' that no violation existed."). Id. at 69. This approach was recently reaffirmed by the Supreme Court. See Pearson v. Callahan, 555 U.S. 223 (2009).

Appearing Defendants incorporate by reference all of their above stated arguments. On this record, it cannot be said that, given the nature of any of the PRPD Defendants' administrative record they departed from objective legal reasonableness or otherwise incurred in a violation of clearly established law, particularly given the fact that there was no precedent where liability had attached in an analogous scenario.

The individual-capacity defendants are thus entitled to qualified immunity.

### IV.   CONCLUSION

**WHEREFORE** it is respectfully requested from this Honorable Court that the instant action be hereby **DISMISSED** with regards to the appearing co-defendants.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on this 14th day of April 2014.

IT IS HEREBY CERTIFIED that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

>  CÉSAR MIRANDA RODRÍGUEZ
>  Designated Secretary of Justice
>
>  MARTA ELISA GONZÁLEZ Y.
>  Deputy Secretary of Justice
>  in Charge of Litigation
>
>  JANITZA M. GARCÍA MARRERO
>  USDC-PR No. 222603
>  Director
>  Federal Litigation Division

        Department of Justice

        S/*Jaime J. Zampierollo-Vilá*
        JAIME J. ZAMPIEROLLO-VILÁ
        USDC-PR No. 228710
        Federal Litigation Division
        Department of Justice
        P.O. Box 9020192
        San Juan, PR  00902-0192
        Office (787) 721-2900 2650/2646
        Fax. (787) 723-9188
        Email: jzampierollo@justicia.pr.gov