Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 1 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

KeyCite Yellow Flag - Negative Treatment
Distinguished by [Acevedo Rivera v. Hospital Interamericano De Medicina Avanzada San Pablo De Caguas,](#) TCA, January 29, 2019

186 D.P.R. 365, 2012 WL 3655336 (P.R.), 2012 TSPR 126

Daniel Fraguada Bonilla y otros, recurridos,

v.

Hospital Auxilio Mutuo, Dr. Manuel Anguita y otros, peticionarios.

En El Tribunal Supremo De Puerto Rico.
Número: CC-2009-918

**Synopsis**
Petición de *Certiorari* de una Resolución de *Guillermo Arbona Lago, Andrés E. Salas Soler* y *Luisa M. Colom García*, Js. del Tribunal de Apelaciones, que denegó expedir el recurso de *certiorari* fundamentando su determinación en la norma establecida en *Arroyo v. Hospital La Concepción*, 130:596. *Se expide el auto de "certiorari" y se revoca la norma de Arroyo v. Hospital La Concepción*, supra, *en cuanto a la interrupción del término prescriptivo en reclamaciones al amparo del Art. 1802 del Código Civil,* [31 L.P.R.A. sec. 5141](#)*, cuando son varios los causantes de un daño extracontractual, así como cualquier otro pronunciamiento incompatible con lo aquí resuelto. Además, se imparte carácter prospectivo a la norma adoptada y, en consecuencia, se confirma la resolución emitida por el Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.*

*Maritza López Camuy* y *Ricardo A. Ramírez Lugo*, abogados de la parte peticionaria; *Wilfredo Zayas Nieves*, abogado de la parte recurrrida.

El Juez Asociado Señor Estrella Martínez emitió la opinión del Tribunal.

Hoy tenemos la oportunidad de examinar nuestra nor **\*369** mativa sobre la interrupción del término prescriptivo en situaciones en las que concurren múltiples causantes de un daño extracontractual. Para ello, debemos determinar si procede distinguir entre los efectos de la solidaridad pactada o de vínculo prexistente y los de la solidaridad que surge cuando son varios los causantes de un daño extracontractual.

**I**

El 2 de mayo de 2002 los familiares de la Sra. Hilda Pérez presentaron una demanda de daños y perjuicios contra el Hospital Auxilio Mutuo y el Dr. Manuel Anguita.[1] En la demanda también se incluyeron a John Doe y a Richard Roe como demandados desconocidos. Se alegó que eran solidariamente responsables en la eventualidad de que se determinara que incurrieron en negligencia.[2] Posteriormente, la demanda fue enmendada para incluir ciertas alegaciones.

En conjunto, los demandantes adujeron que el 14 de enero de 2000 el Dr. Manuel Anguita operó a la señora Pérez y encontró que el intestino de ella estaba obstruido. Luego de la operación, el personal del hospital le colocó un tubo nasogástrico a la paciente de sesenta años de edad. **\*370** Una enfermera procedió a realizarle un estudio llamado *Turner* y le inyectó un líquido a través del referido tubo sin presuntamente cerciorarse si éste se encontraba en el estómago. Los demandantes alegaron que en ese momento la señora Pérez comenzó a gritar.

Posteriormente desarrolló un cuadro de dificultad respiratoria y hubo que entubarla. Meses después, el 1 de julio de 2000, la paciente murió. Con acopio de todas estas alegaciones, los demandantes señalaron que la señora Pérez falleció debido a las actuaciones negligentes del Hospital Auxilio Mutuo y de su personal, al haber fallado en brindarle un tratamiento médico adecuado.[3]

Seis años después de iniciado el pleito, los demandantes realizaron una solicitud para enmendar la demanda para incluir a otros presuntos cocausantes del daño. Específicamente, solicitaron traer al pleito al Dr. Noel Totti y al Dr. Octavio Mestre.[4] Luego de que el Tribunal de Primera Instancia concediera la enmienda solicitada, el 21 de mayo de 2008 los demandantes enmendaron la demanda. Fue entonces cuando el doctor Mestre Morera y el doctor Totti se enteraron que tanto ellos como sus respectivas Sociedades Legales de Gananciales eran codemandados en un litigio entablado hacía más de media década. Los galenos, según alegaron los demandantes, colocaron el tubo nasogástrico a la señora Pérez de modo negligente.

El doctor Mestre Morera presentó su contestación a la demanda enmendada. Más adelante, y al corriente del litigio, **\*371** el médico interpuso una moción de sentencia sumaria. En ella argumentó que la reclamación estaba prescrita porque la parte demandante conocía de antemano su identidad y su participación en el evento.[5] Así, el doctor acentuó que

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 2 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

aunque la parte demandante estaba en posición de ejercer su reclamo, no fue sino hasta seis años después de interpuesta la demanda original que presentaron la acción en su contra. Aseguró que esa tardanza constituía una falta crasa de diligencia de la parte demandante en ejercitar su causa de acción, por lo que la reclamación en su contra debía ser desestimada.

Los demandantes presentaron su oposición a la moción de sentencia sumaria del doctor Mestre Morera. No justificaron la dilación para reclamarle luego de seis años, pero señalaron que aunque su participación fue menor que la de los otros galenos, desde el momento cuando presentaron la demanda original se interrumpió el término prescriptivo contra cualquier médico que fuera negligente en el tratamiento brindado a la señora Pérez.[6]

Evaluadas las posturas de las partes, el Tribunal de Primera Instancia emitió una resolución en la que declaró "no ha lugar" la moción de sentencia sumaria. Inconforme con *372 ese dictamen, el doctor Mestre Morera presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Posteriormente, el foro apelativo intermedio emitió una resolución en la que denegó expedir el recurso. Fundamentó su determinación en la norma recogida en *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992).

Nuevamente inconforme, el doctor Mestre Morera recurrió ante nos por medio de un recurso de *certiorari*. En lo pertinente, señaló que el Tribunal de Apelaciones incidió al concluir que la reclamación presentada seis años después de la demanda original no estaba prescrita. Arguyó que, de acuerdo con la teoría cognoscitiva del daño, el término para entablar la reclamación había expirado, pues los demandantes conocían de antemano su identidad y el resto de los elementos necesarios para poder ejercitar su causa de acción. El médico cuestionó que, mediante un mero formalismo procesal sin trámite ulterior, la parte demandante quedara relevada de su deber de actuar de modo diligente y oportuno en el reclamo de sus derechos.

Inevitablemente nos convoca a revocar la norma pautada en *Arroyo v. Hospital La Concepción*, supra, sobre la interrupción automática e indefinida del término prescriptivo contra los presuntos cocausantes solidarios de un daño que no fueron incluidos en la demanda original. En su lugar, propone que adoptemos la doctrina de la obligación *in solidum*.

El 16 de abril de 2010 concedimos un término a los demandantes para que mostraran causa por la cual no debíamos expedir el auto de *certiorari* y revocar la determinación del Tribunal de Apelaciones. Han comparecido. Con el beneficio de las diferentes posturas, procedemos a resolver.

## II

**[1–2]** A. La prescripción es una institución que extingue un derecho por la inercia de una parte en ejercerlo *373 durante un periodo de tiempo determinado. Reiteradamente hemos explicado que la prescripción extintiva es una figura de naturaleza sustantiva y no procesal, la cual se rige por los principios de nuestro Código Civil. *S.L.G. Serrano-Báez v. Foot Locker*, 182 D.P.R. 824 (2011); *COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 805 (2010); *Santos de García v. Banco Popular*, 172 D.P.R. 759, 766 (2007). Ésta aplica como cuestión de derecho con el transcurso del tiempo, a menos que ocurra alguno de los supuestos previstos en nuestro ordenamiento jurídico. *COSSEC et al. v. González López et al.*, supra, págs. 805–806; *Santos de García v. Banco Popular*, supra, pág. 766. A esos efectos, el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, establece que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor".[7]

**[3]** Los términos prescriptivos buscan castigar la inercia y estimular el ejercicio rápido de las acciones. *COSSEC et al. v. González López et al.*, supra, pág. 806; *Campos v. Cía. Fom. Ind.*, 153 D.P.R. 137, 143 (2001). Su objetivo es promover la seguridad en el tráfico jurídico y la estabilidad de las relaciones jurídicas. Íd. Hemos señalado que la existencia de los términos prescriptivos responde a una política firmemente establecida para la solución expedita de las reclamaciones. *Campos v. Cía. Fom. Ind.*, supra, pág. 143. De esta forma se evitan las sorpresas que genera la resucitación de reclamaciones viejas, además de las consecuencias inevitables del transcurso del tiempo, tales como pérdida de evidencia, memoria imprecisa y dificultad para encontrar testigos. Íd., pág. 144. Esta figura está basada en "la experiencia humana de que las reclamaciones válidas se accionan inmediatamente y no se abandonan". *374 *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943, 950 (1991). Al respecto, transcurrido el periodo de tiempo establecido por ley sin reclamo alguno por parte del titular del derecho, se origina una presunción legal de abandono. Véase *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 752 (1992).

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 3 of 19

**Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)**
2012 TSPR 126

**[4]** Como bien es sabido, las obligaciones que nacen de la culpa o de la negligencia se rigen por lo dispuesto en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, el cual establece que quien "por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". El término prescriptivo de estas acciones es de un año, según lo dispuesto por el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. La brevedad de este plazo responde a la inexistencia de una relación jurídica previa entre el demandante y el demandado. *Culebra Enterprises Corp. v. E.L.A.*, supra, págs. 951–952. En particular, el mencionado término prescriptivo busca fomentar el establecimiento oportuno de las acciones, en aras de asegurar que el transcurso del tiempo no confundirá ni borrará el esclarecimiento de la verdad en sus dimensiones de responsabilidad y evaluación de la cuantía. *Campos v. Cía. Fom. Ind.*, supra, pág. 143; *Culebra Enterprises Corp. v. E.L.A.*, supra, pág. 950.

**[5]** De acuerdo con la teoría cognoscitiva del daño, este término prescriptivo comienza a transcurrir cuando el reclamante conoció o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios para poder ejercitar efectivamente su causa de acción. Véanse: *COSSEC et al. v. González López et al.*, supra; *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249, 254–255 (1992); *Colón Prieto v. Géigel*, 115 D.P.R. 232, 247 (1984). Empero, hemos expresado reiteradamente que "si el desconocimiento se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción". *COSSEC et al. v. González López et al.*, supra, pág. 806. **\*375**

**[6]** B. Las obligaciones pueden ser clasificadas de acuerdo con los sujetos que componen la relación. Así, existen obligaciones mancomunadas y solidarias. En las obligaciones mancomunadas, la deuda puede ser dividida y cada deudor ha de cumplir con su parte de forma independiente. J. Castán Tobeñas, *Derecho civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 107. En las obligaciones solidarias, cada acreedor tiene derecho a pedir y cada deudor tiene el deber de realizar íntegramente la prestación debida. Íd.

**[7]** La regla que impera en materia de derecho civil es que la solidaridad no se presume. El Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, establece que la concurrencia de dos o más deudores en una sola obligación no implica que cada uno de éstos deba prestar íntegramente las cosas objeto de dicha obligación. Este artículo establece la mancomunidad como la regla y la solidaridad como la excepción, y surge esta última solo cuando la obligación expresamente lo determine.

**[8]** En materia de responsabilidad extracontractual, en *Cruz et al. v. Frau*, 31 D.P.R. 92, 100 (1922), establecimos que cuando se ocasiona un daño por la negligencia concurrente de varias personas, el descuido de éstas es la causa próxima del accidente y todas son responsables de reparar el mal causado. Luego, en *Cubano v. Jiménez et al.*, 32 D.P.R. 167, 170 (1923), este Tribunal expresó que "la tendencia de la jurisprudencia ha sido declarar *in solidum* la responsabilidad de los varios demandados".

No obstante nuestras expresiones anteriores, ante la interrogante de la existencia del derecho a contribución en nuestro ordenamiento jurídico, en *García v. Gobierno de la Capital*, 72 D.P.R. 138, 148–149 (1951), extendimos jurisprudencialmente la aplicación de los Arts. 1094, 1098 y 1874 del Código Civil, 31 L.P.R.A. secs. 3105, 3109, 5304, referentes a los efectos de la solidaridad, a los casos de daños y perjuicios. Como paso previo a dicha conclusión, **\*376** expresamos, tal vez por el borde exterior de la claridad, que quienes ocasionan un daño son responsables solidariamente ante el agraviado por la sentencia que en su día le resulte favorable a este último. *García v. Gobierno de la Capital*, supra, págs. 146–147.

**[9]** Más adelante tuvimos ocasión para aclarar nuestros pronunciamientos sobre la doctrina de solidaridad. En *Arroyo v. Hospital La Concepción*, supra, pág. 605, reiteramos que "lo dispuesto en el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, respecto a la no presunción de la solidaridad, no aplica en materia de responsabilidad extracontractual". (Énfasis suplido). Pero más importante aún, movidos principalmente por la doctrina española de aquel entonces —1992—, en ese caso preferimos no hacer distinción entre los distintos tipos de solidaridad —perfecta e imperfecta— y sostuvimos jurisprudencialmente que la solidaridad en nuestro ordenamiento tenía un carácter homogéneo, por lo que le aplicaban tanto los efectos primarios como los secundarios. En consecuencia, resolvimos que la presentación a tiempo de una demanda por parte de un perjudicado contra un coautor solidario interrumpe automáticamente el término prescriptivo contra todos los demás cocausantes del daño. Señalamos que con una enmienda a la demanda o una demanda contra tercero se puede incorporar en el pleito a los alegados cocausantes solidarios del daño no incluidos originalmente, y que el reclamante solo debe alegar bien y suficientemente que el nuevo demandado responde solidariamente por los daños. Con ello, en ese caso

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 4 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

permitimos que se trajera al pleito a varios codemandados cuatro años después de presentada la demanda inicial.

Posteriormente, resolvimos *García Pérez v. Corp. Serv. Mujer*, 174 D.P.R. 138, 155 (2008), el cual tuvo la singularidad de que la demandante conocía de antemano la identidad y los elementos necesarios para poder ejercitar su causa de acción contra una presunta coautora solidaria, **\*377** pero no la incluyó en la demanda original.[8] No fue hasta tres años más tarde que la perjudicada enmendó la demanda para incluirla como cocausante solidaria del daño.[9] En esa ocasión reiteramos la norma de *Arroyo v. Hospital La Concepción*, supra, y decidimos que como en la demanda enmendada se alegó que la nueva codemandada respondía solidariamente por todos los daños causados, el término prescriptivo quedó interrumpido con la presentación inicial de la demanda. Íd., pág. 159.

Según mencionamos, en *Arroyo v. Hospital La Concepción*, supra, acogimos la interpretación de la doctrina y de la jurisprudencia española vigentes en esa época. El tiempo ha discurrido y no han sido pocos los cambios acaecidos desde entonces. La interpretación admitida en el aludido caso fue abandonada en España desde hace ya varios años y, en su lugar, se acogió la doctrina francesa que distingue entre dos tipos de solidaridad: perfecta e imperfecta.

### III

Nos corresponde resolver si debe mantenerse vigente la normativa establecida sobre prescripción en acciones de daños y perjuicios; en particular, si la interposición de una demanda por responsabilidad civil extracontractual contra un alegado cocausante solidario interrumpe el término prescriptivo contra el resto de los presuntos cocausantes. Para ello, analizamos si debemos integrar una distinción entre los casos de solidaridad pactada o de vínculo prexistente —conocido como solidaridad propia o solidaridad perfecta— y los casos de solidaridad cuando son varios los responsables de un daño extracontractual —conocida como solidaridad impropia o solidaridad imperfecta—. De admitirse **\*378** esta distinción, el efecto interruptor del Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304, aplicaría a los casos de solidaridad propia, pero no se extendería al ámbito de la responsabilidad civil extracontractual cuando son varios los cocausantes condenados judicialmente.[10]

El estudio ponderado de las obligaciones derivadas de la responsabilidad por daños extracontractuales requiere un examen histórico de su naturaleza y extensión.

**[10]** A. La palabra "solidaridad" proviene del latín *in solidum*, la cual se define como la totalidad de una suma. A. Blánquez Fraile, *Diccionario latino-español, español-latino*, Barcelona, Ed. Ramón Sopena, 1985, T. II, pág. 1460. La institución de la obligación *in solidum* proviene, a su vez, del Derecho romano. Éste reconoció en toda su extensión la división entre las obligaciones mancomunadas y solidarias, según se diera o no la distribución de la responsabilidad entre las partes. J.R. León Alonso, *La categoría de la obligación "in solidum"*, Sevilla, Pubs. de la Universidad de Sevilla, 1978, pág. 51. Las obligaciones con pluralidad de sujetos eran consideradas solidarias siempre que no existiera un pacto entre las partes. C. Gómez Ligüerre, *Solidaridad y derecho de daños: los límites de la responsabilidad colectiva*, [s.l.], Thomson, Civitas, 2007, pág. 79. La solidaridad romana permitía que el acreedor pudiera exigir el cumplimiento íntegro de la obligación a cualquiera de los deudores.

Desde el 286 a. C., a través de la Ley Aquilia, los romanos proveyeron un régimen para las situaciones en las que concurrirían varios causantes de un daño. Gómez Ligüerre, *op. cit.* pág. 81. Conforme a éste, la víctima podía reclamar la totalidad de la indemnización a cualquiera de los declarados responsables. Íd. **\*379**

Las obligaciones en el Derecho romano se presumían solidarias. La mancomunidad era la excepción, y se aplicaba cuando era convenida entre las partes o cuando la obligación era divisible. Posteriormente, este razonamiento fue invertido por el Derecho de Justiniano (527–565 d. C.), el cual cambió la presunción: impuso la división de la obligación como la regla y estableció la solidaridad solo cuando era pactada. Gómez Ligüerre, *op. cit.*, pág. 80. Era un requisito ineludible que la reclamación fuera dirigida contra todos los deudores a la vez. Íd., pág. 81.

Desde su concepción la solidaridad ha sido dividida de acuerdo con la fuente de la cual emana. El Derecho romano propuso la idea de distinguir entre dos clases de obligaciones plurales: las obligaciones correales y las *in solidum*. Véase E. Petit, *Tratado elemental de Derecho Romano* (J. Ferrández González, trad.), México, Editora Nacional, 1966, págs. 348–355. Aunque similares en apariencia, ambas obligaciones se diferenciaban en su fuente u origen. J. Cubides Camacho, *Obligaciones*, 5ta ed., Bogotá, Ed. Pontificia Universidad Javeriana, 2007, pág. 68. Las obligaciones *in solidum* provenían de causas naturales —como las derivadas de la falta o del delito común de los deudores— y las obligaciones correales procedían de causas voluntarias. Petit,

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 5 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

*op. cit.*, págs. 353–354. De igual forma, las obligaciones *in solidum* solo podían existir entre deudores, mientras que las correales podían establecerse tanto entre deudores como entre acreedores. Íd.

La regla de la no presunción de la solidaridad del Derecho romano tuvo significativa influencia en la creación de los códigos civiles de Francia y España. Empero, estos códigos no establecen expresamente cómo responderán los cocausantes de un daño extracontractual, por lo que ambos países han suplido esta ausencia mediante la juris prudencia. En este aspecto, nuestro Código Civil es similar al de Francia y España. **\*380**

B. En Francia, el Art. 1.202 de su Código Civil dispone que la solidaridad no se presume, sino que deberá ser expresamente pactada. Como dijimos, el referido código guarda silencio acerca de la obligación que debe existir en casos de pluralidad de causantes de un daño.

En materia de responsabilidad general, la doctrina francesa distingue entre dos tipos de efectos de la solidaridad: los efectos primarios y los efectos secundarios. Los primarios incluyen la unidad de la deuda y la pluralidad de vínculos. Los secundarios son la interrupción de la prescripción, la interrupción de la mora y la promesa de cumplimiento de todos los deudores solidarios. Gómez Ligüerre, *op. cit.*, pág. 127. Esta distinción es crucial en esa doctrina, ya que los efectos secundarios de la solidaridad no aplican al ámbito de responsabilidad extracontractual.

Debido a que la solidaridad puede nacer de la ley o de la voluntad de las partes, en Francia se hace una distinción entre los casos de solidaridad perfecta y aquellos en los cuales la solidaridad es imperfecta. La solidaridad es considerada perfecta cuando es "entre varias personas unidas por un interés común, que tienen entre sí relaciones frecuentes o se conocen". León Alonso, *op. cit.*, pág. 32. En cambio, es imperfecta cuando es establecida mediante ley "entre personas que no se conocen, que no son sino codeudores accidentales o cuando sus relaciones son esporádicas". Íd., págs. 32–33.

Cuando la solidaridad es imperfecta, surge una obligación *in solidum*.[11] De acuerdo con ésta, en los casos de pluralidad de causantes, cada uno de ellos responde por entero, pero su responsabilidad es autónoma. Á. Cristóbal Montes, *Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil*, Barcelona, Ed. Bosch, 1985, pág. 36. Ello, debido a que el vínculo del cual deriva **\*381** la obligación de cada cocausante es independiente. Íd. Por esto, la doctrina francesa no considera tal obligación como una obligación solidaria regular, sino como *in solidum*. Aunque cada uno de los cocausantes tiene la responsabilidad de pagar el todo, los efectos secundarios de la solidaridad tradicional —entre éstos, la interrupción del término prescriptivo— no rigen. Esto significa que en las acciones de daños extracontractuales el damnificado debe interrumpir individualmente el término prescriptivo respecto a cada cocausante solidario. Íd., pág. 38. Es decir, la oportuna interposición de una demanda contra un cocausante solidario de un daño extracontractual no interrumpe el término contra el resto de los alegados autores.

En lo referente a la interrupción de la prescripción, el Art. 1.206 del Código Civil francés —similar al Art. 1874 de nuestro Código Civil, *supra*— establece que "[l]as acciones ejercidas contra uno de los deudores solidarios interrumpe la prescripción con respecto a todos ellos". *Código Civil francés* (Á. Núñez Iglesias, trad.), Madrid, Ed. Marcial Pons, 2005, pág. 552. Ahora bien, la doctrina francesa no aplica este artículo al ámbito extracontractual. Esto se debe principalmente a que en Francia se explica la solidaridad clásica como una idea de representación mutua, que exige que todos estén animados por una voluntad común. Véase Gómez Ligüerre, *op. cit.*, pág. 99. Ello no ocurre en los casos de responsabilidad *in solidum*. En éstos, como no existe una representación mutua debido a la ausencia de voluntad de los copartícipes a obligarse conjuntamente, la obligación que surge entre los cocausantes de un daño no es considerada equiparable en toda su extensión a una obligación solidaria propia.

La exclusión de los efectos secundarios de la solidaridad de varios causantes de un daño extracontractual se justifica por la ausencia de una comunidad de intereses entre los coobligados. J. López Richart, *Responsabilidad personal e individualizada*, Madrid, Ed. Dikinson, 2003, pág. **\*382** 40. No existe interés común ni mutua representación porque la obligación *in solidum* no surge de un acuerdo o pacto previo, sino de un evento no convencional. I. Sierra Gil de la Cuesta, *Tratado de responsabilidad civil*, España, Ed. Bosch, 2008, T. II, pág. 669.

En suma, en el ámbito extracontractual, la doctrina francesa considera que cuando coexisten varios causantes de un daño extracontractual surge una obligación *in solidum* en la cual no se producen los efectos secundarios de la solidaridad. Para que la parte lesionada pueda conservar su acción contra los

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 6 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

alegados cocausantes, debe interrumpir la prescripción contra cada uno de ellos. Cristóbal Montes, *op. cit.*, pág. 38.

C. El Código Civil de España sigue el modelo del Código Civil francés y no dispone de forma expresa el supuesto obligacional que rige en casos de responsabilidad extracontractual de varios causantes de un daño. Cristóbal Montes, *op. cit.*, pág. 29. El Art. 1.902 del Código Civil español —similar al Art. 1802 de nuestro Código Civil, *supra*— recoge la figura de la culpa extracontractual. Por su parte, el Art. 1.137 del Código Civil de España establece que la solidaridad no se presume. [12] Sin embargo, por interpretación judicial, los cocausantes de un daño extracontractual responden solidariamente.

Para la época en que resolvimos *Arroyo v. Hospital La Concepción*, supra, la norma vigente en España establecía una solidaridad homogénea, que aceptaba que la presentación oportuna de una demanda por parte de un agraviado contra un coautor solidario de daños y perjuicios, interrumpiera *\*383* el término prescriptivo contra los que posteriormente fueran encontrados solidariamente responsables. Esto, pues no había distinción entre la solidaridad nacida del pacto y la solidaridad producto del daño ocasionado por varios autores. Según mencionamos, esta normativa fue abandonada en España. En su lugar, se incorporó la interpretación francesa dominante, que admite una distinción entre la solidaridad propia y la impropia. De acuerdo con la norma moderna en España, la solidaridad es propia cuando su carácter se deriva de una norma legal o de un pacto convencional, y es impropia cuando nace de la sentencia. Véase S. 7 de junio de 2010, Núm. 521/2010.

La figura de la solidaridad impropia presentó "la solución a uno de los problemas que plantea la responsabilidad solidaria: la interrupción de la prescripción". Gómez Ligüerre, *op. cit.*, pág. 129. Ello debido a que la solidaridad impropia es una excepción a la norma de interrupción de la prescripción. La figura española es muy similar a la consolidada doctrina francesa *in solidum*, vigente desde el siglo XIX. Gómez Ligüerre, *op. cit.*, pág. 125. Fue específicamente en la Sentencia de 14 de marzo de 2003, S. de 14 de marzo de 2003, Núm. 3645/2003, que la jurisprudencia española integró la aludida distinción. Los hechos de esa sentencia son los siguientes. Un obrero demandó por daños y perjuicios a la empresa para la cual trabajaba, a la entidad promotora de la obra y al arquitecto director. Una sentencia absolvió al último y, en el acto, condenó a los dos primeros a indemnizar al perjudicado. Éste no pudo percibir la compensación debido a la insolvencia de los demandados y procedió a demandar al arquitecto técnico y a sus compañías aseguradoras. Los tribunales inferiores determinaron que la acción estaba prescrita porque el Art. 1.974 del Código Civil español no aplicaba a esa causa de acción extracontractual. El Tribunal Supremo de España confirmó el dictamen luego de consultar a la Junta General de *\*384* los Magistrados de la Sala Primera del Tribunal Supremo, la cual adoptó, por amplia mayoría de votos, el acuerdo siguiente:

> El párrafo primero del artículo 1.974 del Código Civil únicamente contempla efecto interruptivo en el supuesto de las obligaciones solidarias en sentido propio cuando tal carácter deriva de norma legal o pacto convencional, *sin que pueda extenderse al ámbito de responsabilidad extracontractual cuando son varios los condenados judicialmente.* (Énfasis nuestro). S. de 14 de marzo de 2003, Núm. 3645/2003.

Como ha de observarse, en la actualidad la jurisprudencia española —al igual que la doctrina francesa— considera que el efecto interruptor de la prescripción que establece su Art. 1.974 aplica solamente a los casos de solidaridad propia. Véanse: Sentencia de 14 de marzo de 2003, Núm. 3645/2003; Sentencia de 4 de junio de 2007, Núm. 662/2007. Esto es, en el caso de España, cuando tal carácter surge del pacto o la ley. Íd. No obstante, la interrupción no se extiende a la solidaridad impropia debido a que ésta es inexistente hasta el momento cuando surge en virtud de una sentencia. Íd. Esta solidaridad no nace de un vínculo preexistente, sino del acto ilícito productor del daño, el cual obtiene su reconocimiento por medio de la sentencia que así lo declare. Íd. Por ello, los actos interruptores operan individualmente. "[S]i la solidaridad no nace sino de la sentencia, que es la llamada solidaridad impropia, la interrupción de la prescripción respecto a uno de los deudores no alcanza al otro, ya que no era deudor solidario y sólo lo fue desde la sentencia que así lo declaró, no antes". S. de 4 de junio de 2007, Núm. 3645/2007; S. de 14 de marzo de 2003, Núm. 3612/2003.

Esta doctrina se consolidó en España —S. de 19 de octubre de 2007, Núm. 1086/2007— y ha sido aplicada de manera uniforme desde el 2003. Véanse: S. de 18 de julio de

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 7 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

2011, Núm. 545/2011; S. de 19 de octubre de 2007, Núm. 1086/2007; S. de 8 de mayo de 2007, Núm. 466/2007; S. de *385 23 de octubre de 2003, Núm. 979/2003; S. de 5 de junio de 2003, Núm. 534/2003.

### IV

Hemos examinado detenidamente la norma de *Arroyo v. Hospital La Concepción*, supra. En ese caso nos enfrentamos a la existencia de dos posibles interpretaciones sobre la solidaridad en nuestro ordenamiento jurídico. Una de ellas reiteraba el carácter homogéneo de la solidaridad y, en consecuencia, el reconocimiento en toda su extensión de sus efectos primarios y secundarios. La otra admitía una distinción entre la solidaridad propia y la impropia. Según esta última exégesis, los efectos primarios de la solidaridad quedarían intactos —que cada codeudor sea responsable de pagar la totalidad de la deuda—, pero no se reconocerían los efectos secundarios de la solidaridad —en este caso, que la interrupción del término prescriptivo contra un cocausante de un daño extracontractual interrumpiera a su vez, de forma indefinida, el término contra el resto de los cocausantes—.

Ante esa coyuntura, en *Arroyo v. Hospital La Concepción*, supra, nos inclinamos por la apreciación de la doctrina española vigente en aquel entonces —y abandonada en esa jurisdicción hace casi una década— e interpretamos que de acuerdo con el Art. 1874 de nuestro Código Civil, *supra*, cuyo primer párrafo dispone que "[l]a interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores o deudores", la presentación oportuna de una demanda por daños y perjuicios contra un cocausante solidario interrumpía el término prescriptivo contra todos los que fueran responsables de forma solidaria. No era la primera vez que suplíamos un vacío en la legislación sobre responsabilidad civil extracontractual, pues la propia responsabilidad solidaria de los cocausantes del daño no surge expresamente *386 de la ley, sino de una interpretación judicial de las disposiciones de nuestro Código Civil. C.J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, 6ta ed., [s. l.], ed. del autor, 2007, pág. 343. Así, en *Arroyo v. Hospital La Concepción*, supra, interpretamos que en nuestro ordenamiento solo había una obligación solidaria y rechazamos hacer una distinción entre la solidaridad perfecta y la imperfecta, y admitir, a su vez, los efectos que ello implicaba en cuanto a la interrupción del término prescriptivo.

Hicimos lo anterior con el propósito de lograr un justo balance entre las fuerzas encontradas. Afirmamos en *Arroyo v. Hospital La Concepción*, supra, pág. 608, que la norma allí adoptada "alcanza[ba] el mejor equilibrio entre todos los intereses". Era la enunciación de una hipótesis por comprobarse. Dos decenios más tarde, el acervo de experiencias nos obliga a concluir que la norma allí pautada no alcanzó el equilibrio buscado. Efectivamente, luego de *Arroyo v. Hospital La Concepción*, supra, reconocimos que esa norma le brinda en realidad mayor protección a la parte demandante. Véase, a manera de ejemplo, *García Pérez v. Corp. Serv. Mujer*, supra, pág. 151. Así lo sostienen los múltiples efectos de la normativa aplicada en la práctica.

El demandante puede traer al pleito a otra persona como codemandada aun cuando le reclame fuera del término prescriptivo. De hecho, aunque conozca de antemano la identidad del alegado cocausante solidario, no tiene que incluirlo en la demanda original. Véase *García Pérez v. Corp. Serv. Mujer*, supra. El perjudicado ni siquiera tiene que alegar en esa demanda la solidaridad de los cocausantes, ya que puede hacerlo luego mediante una enmienda a la demanda. Íd. En esa enmienda solo debe alegar que el nuevo demandado responde solidariamente por los daños reclamados al demandado original, contra quien presentó la demanda dentro del término prescriptivo dispuesto por el ordenamiento jurídico. De esa forma, aunque el demandante *387 esté en posición de ejercitar su causa de acción contra el presunto cocausante solidario, no tiene límite alguno para así hacerlo. Esto, pues la norma de *Arroyo v. Hospital La Concepción*, supra, proveyó un efecto interruptor automático e indefinido en perjuicio de todos los que pudieran ser solidariamente responsables del daño.

Por su parte, el alegado cocausante solidario traído al pleito luego de varios años de instada la demanda original —seis años en este caso— ha de emplear, en no pocas ocasiones, muchos esfuerzos para recordar con determinada certeza —si alguna— los eventos particulares que motivaron el reclamo en su contra. Debe encarar, además, la búsqueda acuciosa de documentos concebidos en ese momento histórico, asunto que se complica cuando éstos se encuentran en manos de terceros con los cuales se tiene poca o ninguna relación, o en manos de un tercero que ya no existe. Del mismo modo, mientras más discurra el tiempo hasta que finalmente sea incorporado como codemandado, mayor será la probabilidad de afrontar dificultades para encontrar testigos. Asimismo, el presunto cocausante solidario deberá incurrir en gastos asociados a un litigio que de otra forma estaría prescrito, debido a la brevedad del término en nuestro Código Civil para estas reclamaciones.

Como puede advertirse, lejos de lograr un equilibrio entre los intereses opuestos, esta normativa desnivela la situación

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 8 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

a favor de la parte reclamante. Como consecuencia de lo anterior, y pese al reconocimiento *expreso* y *extenso* de la figura sustantiva de la prescripción en los Arts. 1840 al 1874 de nuestro Código Civil, 31 L.P.R.A. secs. 5261–5304, la severidad que caracteriza a los términos prescriptivos disminuye considerablemente. Ello a pesar de que la existencia de éstos se cimenta en la búsqueda de la estabilidad para las relaciones jurídicas y en fomentar la diligencia en la vindicación de los derechos.

Adviértase nuevamente que la normativa sobre solidaridad en materia de responsabilidad extracontractual edificada **\*388** en *Arroyo v. Hospital La Concepción*, supra, no surge expresamente de nuestro Código Civil. Cuando éste alude a "las obligaciones solidarias", no especifica si estamos ante un supuesto de una sola obligación solidaria o de varias, y en ese último caso, de cuántas y cuáles en particular. Muy a pesar de tal ausencia, jurisprudencialmente le dimos preeminencia a la norma allí adoptada sobre la figura sustantiva de la prescripción, que sí está expresamente regulada en nuestro Código. El problema de la construcción de esa norma es que no alcanzó una solución que estuviera en armonía con el resto del ordenamiento jurídico. El resultado ha sido socavar la institución de la prescripción, pues una parte tiene el derecho eterno de reclamarle a otra por daños y perjuicios. Con igual peligrosidad, tal normativa tiene el lamentable efecto de premiar la inercia en la vindicación de un derecho y de fomentar el uso estratégico de la inacción, dado que el demandante puede seleccionar a su arbitrio el momento que le resulte más oportuno para incluir a una parte en el litigio.

Otro problema que enfrenta la interrupción automática y el diferimiento indefinido de la causa de acción es que el término prescriptivo limitado a un año para reclamaciones al amparo del Art. 1802 del Código Civil, *supra*, responde principalmente a la ausencia de una relación jurídica previa entre el demandante y el demandado. La obligación por causar un daño extracontractual no surge del acuerdo entre las partes, por lo que no hay oportunidad alguna de negociar los términos de la obligación ni de consentir libremente, contrario a la relación contractual. De ahí el breve plazo dispuesto por el legislador. De ese modo se le otorgó un mínimo de certeza a una relación desprovista de ella. Ese mínimo de seguridad compensa de alguna forma la ausencia de conocimiento sobre el alcance de la obligación. Provee, pues, una ínfima salvaguarda que permite conservar un justo equilibrio entre las partes. Y no debe soslayarse. **\*389**

**[11]** Por todo lo aquí intimado, adoptamos en nuestra jurisdicción la obligación *in solidum* en materia de prescripción de la causa de acción por responsabilidad civil extracontractual cuando coincide más de un causante.[13] Conforme a ésta, el perjudicado podrá recobrar de cada cocausante demandado la totalidad de la deuda *que proceda*, porque los efectos primarios de la solidaridad se mantienen. Sin embargo, deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil, *supra*, si interesa conservar su causa de acción contra cada uno de ellos. Esto no constituye una carga mayor para el perjudicado, pues solamente debe ejercer la misma diligencia requerida cuando reclama a un autor del daño. De esta forma, la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación *in solidum*.[14] Por lo tanto, el Art. 1874 de nuestro Código Civil, *supra*, no aplica a los casos de daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*.[15] **\*390**

**[12]** Claro está, la norma hoy adoptada también es cónsona con la teoría cognoscitiva del daño, por lo que el término prescriptivo comienza a transcurrir cuando la parte perjudicada conoció o debió conocer, si hubiera empleado algún grado de diligencia, la existencia del daño y quién lo causó, así como los elementos necesarios para poder ejercitar efectivamente su causa de acción. *CSMPR v. Carlo Marrero et als.*, 182 D.P.R. 411, 425–426 (2011); *COSSEC et al. v. González López et al.*, supra; *Vera v. Dr. Bravo*, 161 D.P.R. 308, 328 (2004); *Santiago v. Ríos Alonso*, 156 D.P.R. 181, 189 (2002). Por ello, si mediante el descubrimiento de prueba u otro medio el agraviado conoce de la existencia de otro coautor y del resto de los elementos necesarios para reclamarle, el término prescriptivo contra ese alegado cocausante comenzará a transcurrir en ese momento. Esto, pues un estatuto de prescripción cuyo efecto sea exigir a la parte demandante que presente una causa de acción antes de tener conocimiento de la existencia de ésta, viola el debido proceso de ley. *COSSEC et al. v. González López et al.*, supra, págs. 821–822; *Vera v. Dr. Bravo*, supra, pág. 327; *Vega v. J. Pérez & Cía, Inc.*, 135 D.P.R. 746, 754 (1994). **\*391**

De este modo armonizamos la normativa cuando son varios los causantes de un daño extracontractual con la teoría cognoscitiva del daño y con la figura sustantiva de la prescripción, a la vez que respetamos el mínimo de certidumbre concedido por el legislador para este tipo de relación. Al mismo tiempo, mediante la adopción de la solidaridad impropia resolvemos el problema de

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 9 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

incertidumbre que presenta la pendencia indefinida de la causa de acción por responsabilidad civil extracontractual. La norma aquí pautada permite mantener a raya la peligrosa frontera donde la búsqueda de reparación de un daño no encuentra exigencia alguna de diligencia, muy a pesar del mandato expreso de las disposiciones de nuestro Código Civil. La diligencia en el reclamo deviene ahora imprescindible.

Somos conscientes de que la doctrina anterior es una consolidada, pero tal circunstancia no impide armonizar nuestro ordenamiento jurídico y remediar una injusticia. Si bien la doctrina de *stare decisis* establece que un tribunal debe seguir sus decisiones en casos posteriores, ésta no llega al extremo de declarar que la opinión de un tribunal se convierta en un dogma que el Tribunal debe seguir ciegamente. *Pueblo v. Díaz De León*, 176 D.P.R. 913, 921 (2009); *Am. Railroad Co. v. Comisión Industrial*, 61 D.P.R. 314, 326 (1943). Es por esto que cuando el razonamiento de una decisión ya no resiste un análisis cuidadoso, no estamos obligados a seguirla. *Arizona v. Gant*, 556 U.S. 332, 348 (2009). De esta forma se permite el desarrollo consistente de principios legales. *Pueblo v. Díaz De León*, supra; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

**V**

La demanda del caso de autos fue presentada el 2 de mayo de 2002. Fueron seis largos años en que los demandantes contuvieron su reclamación contra el doctor Mestre **\*392** Morera, a quien finalmente incorporaron en el pleito el 21 de mayo de 2008 mediante una demanda enmendada.

Las propias declaraciones de la parte demandante manifiestan su conocimiento sobre la identidad y la participación del doctor Mestre Morera en el acontecimiento. La codemandante Fraguada Pérez testificó que se encontraba en la habitación de la señora Pérez atenta al procedimiento que le realizaba la enfermera. Fue entonces cuando observó que la señora Pérez comenzó a toser repetidamente. Ante el imprevisto, el doctor Mestre Morera y otro médico acudieron apresurados a la habitación. La propia codemandante urgió a los doctores que hicieran algo, mientras se mantenía firme al lado de su madre. Asimismo, presenció la alegada discusión entre el doctor Mestre Morera y el otro galeno respecto a la ubicación del tubo nasogástrico en el pulmón de la paciente y la advertencia que uno de éstos lanzó a su interlocutor sobre el peligro potencial de una embolia. La codemandante continuaba al lado de su madre y muy cerca de los médicos, quienes — según declaró— se ordenaban alternativamente retirar el tubo de la paciente. En ese instante, ante la mirada y presencia de la codemandante, el tubo fue apartado del interior de la señora Pérez.

Precisamente, la presunta colocación equivocada del tubo nasogástrico y la alegada discusión del doctor Mestre Morera son las únicas dos razones por las cuales la parte demandante reclama al galeno en la demanda enmendada que presentó seis años más tarde. Del testimonio de la codemandante vertido en una deposición surge claramente que desde el día del evento los demandantes conocían la identidad del médico y su alegada responsabilidad en la producción del alegado daño, el cual tuvo su momento culminante meses después con el fallecimiento de la señora Pérez. A pesar de estar al corriente de lo anterior, la parte demandante no incluyó al doctor Mestre Morera en su demanda original. Por el contrario, optó por hacerlo seis años después, actuación que demuestra su dejadez y abandono **\*393** de esa reclamación.[16] Por lo tanto, según la norma hoy adoptada, la parte demandante debió reclamar individualmente al doctor Mestre Morera como alegado cocausante solidario dentro del término prescriptivo de un año dispuesto en el Art. 1868 de nuestro Código Civil, *supra*, el cual comenzó a transcurrir tan pronto conoció el daño, la identidad del autor y los elementos necesarios para ejercitar su causa de acción.

No obstante lo anterior, al evaluar los criterios establecidos para declarar la aplicación retroactiva o prospectiva de una determinación judicial — confianza depositada por los demandantes en la antigua norma; propósito que persigue la nueva regla para determinar si su retroactividad lo adelanta y el efecto de la nueva normativa en la administración de la justicia— resolvemos que nuestra decisión debe tener efecto prospectivo. Véanse: *Isla Verde Rental v. García*, 165 D.P.R. 499, 505 (2005); *Datiz v. Hospital Episcopal*, 163 D.P.R. 10, 18 (2004); *Gorbea Vallés v. Registrador*, 131 D.P.R. 10, 16 (1992); *Correa Vélez v. Carrasquillo*, 103 D.P.R. 912, 918 (1975). Ello porque la norma es de nuevo cuño y su aplicación al presente caso conllevaría resultados sustancialmente injustos para los recurridos, quienes confiaron en la norma anterior que quedó desplazada por la nueva norma que hoy implantamos. Consideraciones de política pública y orden social motivan a que esta nueva norma tenga efectos prospectivos, pues el objetivo que se persigue es conceder remedios justos y equitativos que respondan a la mejor convivencia social. *López v. Porrata Doria*, 169 D.P.R. 135, 169 (2006); *Isla Verde Rental v. García*, supra. En lo sucesivo, toda causa de acción instada según el Art. 1802 del Código Civil, *supra*, será juzgada de acuerdo con la normativa aquí intimada. **\*394**

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 10 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

## VI

Por todo lo cual, *expedimos el auto de "certiorari" y revocamos la norma de Arroyo v. Hospital La Concepción*, supra, *en cuanto a la interrupción del término prescriptivo en reclamaciones al amparo del el Art. 1802 del Código Civil*, supra, *cuando son varios los causantes de un daño extracontractual, así como cualquier otro pronunciamiento incompatible con lo aquí resuelto. Además, impartimos carácter prospectivo a la norma adoptada y, en consecuencia, confirmamos la resolución emitida por el Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.*

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Pabón Charneco disintió con una opinión escrita, a la cual se unieron los Jueces Asociados Señores Rivera García y Feliberti Cintrón. La Jueza Asociada Señora Fiol Matta hace la expresión siguiente:

> Disiento de la decisión del Tribunal que revoca la norma pautada en *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992). Las opiniones en *Arroyo* y en *García Pérez v. Corp. Serv. Mujer*, 174 D.P.R. 138 (2008), así como la opinión disidente en este caso de la Jueza Asociada Señora Pabón Charneco y el artículo del profesor José Julián Álvarez González *Responsabilidad Civil Extracontractual,* 78 Rev. Jur. U.P.R. 457, 473 (2009), explican las razones por las que no debe adoptarse en nuestra jurisdicción la doctrina *in solidum.*
>
> Coincido con la Opinión mayoritaria en las dificultades que presenta el que un potencial codemandado sea traído a un pleito años después de instarse el mismo, como cocausante solidario del daño alegado, porque la demanda original interrumpió los términos prescriptivos para todos cocausantes. Sin embargo, la norma adoptada en *Arroyo* permitía que se atendiera este problema adecuadamente, pues no impedía en lo absoluto que se consideraran, al amparo de la doctrina de incuria, aquellas circunstancias extraordinarias, como las de autos, en las que un demandante se cruza de brazos y no es diligente en averiguar la identidad de otros posibles cocausantes **\*395** del daño o, de conocerlos, traerlos al pleito. Para ello, no hacía falta recurrir a la doctrina *in solidum* y dividir la solidaridad extracontractual entre efectos primarios y secundarios. Lo que correspondía era descartar una aplicación inflexible de la norma de *Arroyo* y atemperarla para atender situaciones como la de autos sin tener que revocar veinte años de precedentes y adoptar una nueva interpretación del Código Civil. El resultado en este caso hubiera sido, sin duda, la desestimación de la demanda, no por la aplicación de la nueva doctrina, sino porque el demandante incurrió en incuria al cruzarse de brazos y no enmendar la demanda cuando conoció la identidad de los cocausantes.
>
> Me preocupa que la nueva norma cause más problemas de los que resuelve y produzca situaciones en las que una víctima sea innecesariamente perjudicada. Creo que la Opinión del Tribunal reconoce parcialmente esta realidad y, por eso, se ve obligada a establecer numerosas salvaguardas, creando así un esquema innecesariamente confuso y complicado. Según *Arroyo*, nuestro ordenamiento daba prioridad a la reparación del daño sufrido por la víctima, mientras protegía a los demandados en casos de dejadez y falta de diligencia por parte de los demandantes. Ahora, para proteger a los potenciales codemandados traídos tardíamente a los pleitos, se priva a las víctimas de una de las principales herramientas para intentar resarcir sus daños: la interrupción simultánea de los términos prescriptivos para todos los cocausantes solidarios, sujeto, claro está, a normas básicas de derecho, entre ellas la diligencia. Temo que la consecuencia inevitable de esta decisión sea la adopción eventual de una norma de mancomunidad para los casos de responsabilidad civil extracontractual, dejando sin efecto casi un siglo de precedentes de interpretación estatutaria que no ha sido alterado por la Asamblea Legislativa.
>
> Comparto muchas de las preocupaciones de la Opinión mayoritaria. Sin duda, una aplicación inflexible de la norma de *Arroyo* podría producir situaciones patentemente injustas para algunos potenciales demandados que quedarían sujetos a que algunos demandantes que se crucen de brazos confiando en que la demanda contra un cocausante interrumpe perpetuamente los términos prescriptivos contra los demás. Pero esto se puede atender sin trastocar la norma hasta ahora vigente. Por eso difiero, muy respetuosamente, de la solución adoptada. **\*396**

--O--

Opinión disidente emitida por la Jueza Asociada Señora Pabón Charneco, a la que se unen el Juez Asociado Señor Rivera García y el Juez Asociado Señor Feliberti Cintrón.

Disiento respetuosamente de la Opinión mayoritaria. Esta lleva a cabo un cambio normativo de carácter regresivo en el campo de la responsabilidad civil extracontractual al adoptar

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 11 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

*parcialmente* la doctrina de las obligaciones *in solidum*.[1] De esta forma, la Opinión introduce un *tertium genus* entre las obligaciones mancomunadas y solidarias que no reconoce nuestro ordenamiento.[2] A su vez, descarta sin más una jurisprudencia consolidada con el fin de limitar el término prescriptivo para los cocausantes de un daño que no fueron traídos al pleito en la demanda original.

Ciertamente, en ocasiones, el acreedor del daño omite demandar a uno de los cocausantes por un periodo prolongado —a pesar de conocer su identidad— y durante el transcurso del pleito enmienda la demanda para incluirlo. Esta situación que en principio se ajusta a la letra de la ley, puede percibirse como un abuso en el ejercicio anormal del derecho cuando afecta la defensa de los cocausantes, así como la efectiva economía judicial. No cabe duda de que nuestro ordenamiento jurídico provee las herramientas para lidiar con las dificultades que este tipo de práctica pueda conllevar sin necesidad de acudir a una doctrina que no se ajusta a nuestro sistema. **\*397**

Examinemos brevemente los hechos que dieron génesis a la presente controversia.

**I**

El 2 de mayo de 2002, la parte recurrida (integrada por el Sr. Daniel Fraguada Bonilla, el Sr. Héctor L. Fraguada Pérez, la Sra. Ana Hilda Fraguada Pérez, la Sra. María de los Ángeles Fraguada Pérez, el Sr. Carlos Daniel Fraguada Pérez y el Sr. Ángel G. Osorio Fraguada) presentó una demanda de daños y perjuicios contra el Hospital Auxilio Mutuo, el Dr. Manuel Anguita Alvarado y otros dos (2) galenos desconocidos. En síntesis, alegó negligencia en el tratamiento médico de la Sra. Hilda Pérez, quien falleciera el 1 de julio de 2000. Además, en la demanda hizo la salvedad de "[q]ue al momento de la presentación de esta demanda no se conoc[ían] todos los detalles relacionados a los hechos y la misma se radica[ba] con el propósito de interrumpir el término prescriptivo".[3]

El 25 de octubre de 2006, el foro primario emitió una Sentencia Parcial por Estipulación Enmendada, mediante la cual aprobó la transacción y relevó de la reclamación al Hospital Auxilio Mutuo.[4] Así las cosas, en abril de 2008, la parte recurrida solicitó una autorización para enmendar la demanda e indicó que, como producto de su acción en la etapa investigativa de la prueba, surgió información de otros dos (2) doctores que fueron negligentes en el tratamiento de la señora Pérez. El 14 de abril de 2008 la parte recurrida enmendó la demanda para incluir como codemandados al Dr. Octavio Mestre Morera (en adelante, doctor Mestre Morera o peticionario) y al Dr. Noel Totti.

Por su parte, el doctor Mestre Morera presentó, en su Contestación a la Demanda de 14 de abril de 2008, la defensa **\*398** afirmativa de prescripción el 10 de febrero de 2009. Particularmente, indicó:

> La causa de acción que se intenta ejercer en contra del compareciente está prescrita. Nuestro ordenamiento vigente promueve la diligencia en el ejercicio de los derechos y penaliza la incuria. La presentación de la demanda enmendada que nos ocupa para incluir al compareciente *seis años* después de la presentación de la demanda original denota una falta crasa de diligencia por la parte demandante. (Énfasis en original). Apéndice de la Petición de *certiorari*, pág. 84.

El 14 de abril de 2009, el peticionario presentó una Moción Solicitando Sentencia Sumaria por el Fundamento de Prescripción.[5] En esta indicó que surgía de una deposición tomada el 11 de junio de 2005 a la codemandante María de los Ángeles Fraguada que la parte recurrida conocía que el doctor Mestre Morera había intervenido en el tratamiento de la señora Pérez. Añadió que ya para esa fecha la parte recurrida contaba con un informe pericial al respecto.[6] Por lo tanto, solicitó la desestimación de la causa de acción ante la falta de diligencia de la parte demandante de ejercitar su acción, pues ya habían trascurrido tres (3) años desde que la parte demandante contaba con la información necesaria. Por otro lado, la parte recurrida indicó que la presentación de la demanda original había interrumpido el término prescriptivo en cuanto a los demás cocausantes solidarios y que estos podían ser incluidos al pleito mediante una demanda enmendada, en conformidad con el derecho vigente. Esta solicitud fue declarada "no ha lugar" el 9 de julio de 2009.

Tras la presentación de una oportuna moción de reconsideración que fuera declarada "sin lugar" por el tribunal de instancia, el peticionario instó un recurso de *certiorari* ante el Tribunal de Apelaciones. Este fue denegado. **\*399**

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 12 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

Inconforme, el peticionario recurre ante nos y señala el error siguiente:

> Erró el Tribunal de Apelaciones al aplicar la doctrina de la solidaridad entre alegados cocausantes solidarios sin tomar en consideración el planteamiento de incuria argumentado por el compareciente para sostener que en el presente caso la parte demandante no debe beneficiarse de las condiciones liberales de la prescripción, considerando que los hechos por los cuales se le reclama al compareciente ocurrieron ocho años antes de la presentación de la demanda enmendada con la cual se le incluyó en el litigio y que conforme a la teoría cognoscitiva del daño la parte demandante contó con todos los elementos necesarios para reclamarle al Dr. Mestre Morera tres años antes de la radicación de la demanda enmendada[.] Petición de *certiorari*, pág. 9.

### II A.

La responsabilidad civil extracontractual se cimenta esencialmente en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Este artículo prescribe, en lo pertinente, que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".

A su vez, el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, dispone de un término prescriptivo de un (1) año para estas acciones. Este comienza a transcurrir cuando la parte perjudicada descubre o puede descubrir el daño, su causante, así como los elementos necesarios para poder ejercitar efectivamente su causa de acción.[7] Art. 1869 del *400 Código Civil, 31 L.P.R.A. sec. 5299. Véanse, además: *COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 806 (2010); *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315, 325 (1994). Esto, pues el transcurso del tiempo conlleva la pérdida del ejercicio de los derechos de forma que se evite la incertidumbre de las relaciones jurídicas y se castigue la inacción de los titulares en el ejercicio de sus derechos. *García Pérez v. Corp. Serv. Mujer*, 174 D.P.R. 138, 147 (2008). Por lo tanto, debe ser interrumpido en conformidad con el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303.

A pesar de estas normas, constantemente se presentan nuevas cuestiones que requieren un mayor análisis e interpretación de estas para dar respuesta a las nuevas situaciones que continuamente surgen en ese campo. Una situación frecuente es la pluralidad de posibles causantes de un daño cuyo régimen jurídico no está expresamente determinado en nuestro Código Civil. Esto, a su vez, genera múltiples dificultades sustantivas y procesales. Examinemos cómo hemos atendido las situaciones de pluralidad de responsables del daño.

### B.

Ante múltiples causantes de un daño mediando culpa o negligencia, no cabe duda de que cada uno está obligado a reparar el daño causado. *Cubano v. Jiménez et al.*, 32 D.P.R. 167 (1923). No obstante, una de las dificultades que enfrentamos debido a las escuetas expresiones del Código Civil, sin que conlleve un obstáculo insuperable, es si la obligación de reparar el daño entre cocausantes es mancomunada o solidaria. Nuestro Código —al igual que el Código Civil español— no señala expresamente esta distinción, a diferencia de la mayor parte de los Códigos Civiles extranjeros.[8] *401

Es conocido que las obligaciones con pluralidad de sujetos pueden ser *mancomunadas* o *solidarias*. En principio, el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, dispone que ante la concurrencia de dos (2) o más deudores, o de dos (2) o más acreedores, la solidaridad no se presume, sino la mancomunidad. Es decir, el crédito o la deuda se presume dividido en tantas partes iguales como acreedores o deudores haya, considerándose créditos o deudas distintos unos de otros cuando del texto de la obligación no resulta otra cosa. Art. 1091 del Código Civil, 31 L.P.R.A. sec. 3102. Esto dado que la solidaridad entre los deudores agrava la carga que la deuda representa en cuanto es posible que uno de los deudores satisfaga su deuda y la ajena ante la insolvencia de los coobligados. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596, 602 (1992). Como explicaremos más adelante, ya hemos definido que el Art. 1090 del Código Civil, *supra*, aplica solo en el régimen contractual; interpretación que la opinión mayoritaria tampoco contra dice.[9]

Por otro lado, se entiende por "obligación solidaria"

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 13 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

... aquella en la que concurren varios acreedores (solidaridad activa) o varios deudores (solidaridad pasiva), o varios acreedores y al mismo tiempo varios deudores (solidaridad mixta), y en que cada acreedor tiene derecho a pedir, y cada deudor tiene la obligación o deber de realizar íntegramente, la prestación debida. *Arroyo v. Hospital La Concepción*, supra, pág. 600.

En los casos en que el deudor solidario pague la totalidad de la prestación se extingue la obligación, pues el acreedor solo tiene derecho a recibirla una sola vez. No obstante, este podrá recobrar de los demás lo que ha pagado en exceso. Art. 1098 del Código Civil, 31 L.P.R.A. sec. 3109. *A contrario sensu*, cuando el acreedor no logre cobrar **\*402** la deuda por completo mediante la reclamación entablada contra uno (1) o varios de los deudores, este podrá dirigirse posteriormente contra los restantes. Art. 1097 del Código Civil, 31 L.P.R.A. sec. 3108.

Con el pasar del tiempo y tras un cuidadoso análisis, hemos desarrollado una consolidada jurisprudencia en la que se precisa que el régimen jurídico en los casos de pluralidad de causantes de un daño indivisible es la solidaridad.[10] *Arroyo v. Hospital La Concepción*, supra, págs. 604–605. Véanse, además: *García Pérez v. Corp. Serv. Mujer*, supra; *García v. Gobierno de la Capital*, 72 D.P.R. 138, 145 (1951).

A pesar de expresiones previas en *Cubano v. Jiménez et al.*, supra, y *García v. Gobierno de la Capital*, supra, fue en *Arroyo v. Hospital La Concepción*, supra, que aclaramos que la presunción de no solidaridad del Art. 1090, *supra*, no aplica en materia de responsabilidad extracontractual. Esto porque los razonamientos de la aplicabilidad de este artículo en el ámbito contractual son distintos. Al respecto, indicamos que "no es la voluntad de las partes la que crea la obligación, sino ella surge de una manera unilateral, en virtud de un acto realizado libremente por una persona en relación con otra; y la ley da eficacia y sanciona la obligación natural de reparar los perjuicios invocados". (Énfasis suprimido). *Arroyo v. Hospital La Concepción*, supra, pág. 602, citando a A. Borell Macía, *Responsabilidades derivadas de culpa extracontractual civil*, 2da ed., Barcelona, Ed. Bosch, 1958, pág. 319. Además, en estos casos la obligación emana del propio Art. 1802 del Código Civil, *supra*, que requiere al obligado reparar el daño causado.[11] Es por ello que adoptamos la interpretación de la doctrina mayoritaria **\*403** — y en ese entonces en la jurisprudencia española— en cuanto a que existe solidaridad legal al amparo del Art. 1802 cuando dos (2) o más causan un daño único e indivisible.

Véase H.M. Brau, *El término prescriptivo y su interrupción en acciones en daños por responsabilidad extracontractual solidaria en el derecho puertorriqueño*, 44 (Núm. 2) Rev. C. Abo. P.R. 203, 204–205 (1983). De esta forma se aumenta la garantía del lesionado y se le protege con más eficacia, de forma que pueda recibir la reparación íntegra en caso de la insolvencia de cualquiera de los causantes.[12]

A tenor con estos principios, también establecimos que dicha "solidaridad legal" tiene las mismas consecuencias que en el ámbito contractual. Al adoptarse la solidaridad entre los corresponsables de un mismo daño, debe de ser con todos sus efectos, pues no se justifica en nuestro Código Civil distintos tipos de solidaridad. *Arroyo v. Hospital La Concepción*, supra, pág. 606. Véanse: J.J. Álvarez González, *Responsabilidad civil extracontractual*, 78 (Núm. 2) Rev. Jur. U.P.R. 457, 504–505 (2009); L.F. Reglero Campos, *La prescripción de la acción de reclamación de daños, en tratado de responsabilidad civil*, Ed. Aranzadi, 2008, T.I, pág. 1280; M. Albaladejo García, *Interrupción o no de la prescripción frente a todos los deudores solidarios por reclamación a uno solo: comentario a la Sentencia del Tribunal Supremo de 14 de marzo de 2003*, Rev. Der. Priv. 553 (2003); A. Cristóbal Montes, *Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil*, Barcelona, Ed. Bosch, 1985, pág. 42. Como parte de estos efectos, la interrupción de la prescripción contra uno perjudica a los demás en conformidad con el Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304. *Rivera Otero v. Casco Sales Co.*, 115 D.P.R. 662 (1984). Específicamente, resolvimos que[13] **\*404**

> ... *la doctrina de la solidaridad* [consagrada en *García v. Gobierno de la Capital*, supra,] *permite traer a juicio instado a tiempo, a un* [*cocausante*] *solidario que originalmente no fue inclu[i]do en el pleito* ... a través de demanda contra tercero por parte del demandado origina[l o] por enmienda a la demanda por parte del demandante .... [Só]lo se requiere alegar bien y suficientemente en la demanda — el hecho que el nuevo demandado, o tercero demandado, según los casos, responde solidariamente por los daños reclamados con el demandado original, contra quien se *radicó demanda* dentro del término prescriptivo dispuesto por el ordenamiento .... (Corchetes y énfasis en original). *Arroyo v. Hospital La Concepción*, supra, págs. 607–608, citando a H.M. Brau, *op. cit.*, pág. 243. Véase, además, *García Pérez v. Corp. Serv. Mujer*, supra, pág. 155.

Al respecto, la Opinión mayoritaria reitera que "la no presunción de la solidaridad", no aplica en materia de

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 14 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

responsabilidad extracontractual.[14] Sin embargo, elimina el tratamiento homogéneo de la solidaridad en conformidad con lo pautado por el propio Código Civil, o por lo menos parcialmente al adoptar dicha doctrina solo en cuanto a la prescripción. De esta forma crea unos efectos hasta entonces desconocidos por nuestro ordenamiento jurídico y que corresponde adoptar a la Asamblea Legislativa. Para ello, abraza la doctrina de las obligaciones *in solidum*, según explica, para "armoniza[r] la normativa cuando son varios los causantes de un daño extracontractual con la teoría cognoscitiva del daño y con la figura sustantiva de la prescripción a la vez que respetamos el mínimo de certidumbre concedido por el legislador para este tipo de relación".[15] Por lo tanto, examinemos lo que esta doctrina sostiene.

C. Ante la regla general de que la solidaridad no se presume, la doctrina francesa ha desarrollado convenientemente la doctrina de las obligaciones *in solidum*. Con ella se intenta justificar el que cada uno de los responsables **\*405** esté obligado a pagar la totalidad de la deuda sin algunos de sus efectos, entre ellos, la prescripción, la oponibilidad de cosa juzgada frente a otros deudores y la apelación.[16] Para ello distingue entre dos (2) tipos de solidaridad en el ámbito de la solidaridad pasiva: la solidaridad perfecta e imperfecta. Nuestro Código Civil no contiene estas distinciones.[17]

Para explicar esta distinción, la opinión mayoritaria toma prestada la definición de obligaciones *in solidum* que ofrece José Ricardo León Alonso. "La solidaridad es considerada perfecta cuando es 'entre varias personas unidas por un interés común, que tienen entre sí relaciones frecuentes o se conocen' ", pero es "imperfecta cuando es establecida mediante ley' entre personas que no se conocen, que no son sino codeudores accidentales o cuando sus relaciones son esporádicas' ".[18] Véase J.R. León Alonso, *La categoría de la obligación "in solidum"*, Sevilla, Pubs. de la Universidad de Sevilla, 1978, págs. 32–33, citando a Mourlon, *Répétitions écrites sur le Code Civil*, Paris, T. III, 1896, núm 1.260.

Como claramente resume la Prof. Virginia Múrtula Lafuente, la doctrina de las obligaciones *in solidum*

> ... se basa en que determinados casos de pluralidad de deudores, aunque cada uno de ellos responda por entero, su responsabilidad es autónoma de la de los otros, ya que el vínculo del que la misma deriva es un vínculo independiente, que ha nacido por sí solo (parte, pues, del principio de equivalencia de **\*406** causas —todos aquellos que han participado en el hecho dañoso deben ser considerados autores del hecho—). A diferencia de las obligaciones solidarias, donde cada deudor debe la misma prestación, en las obligaciones *in solidum* se adeuda idénticas prestaciones. Con ello se trata de evitar determinadas consecuencias propias de la solidaridad pasiva. Así, la parte lesionada para conservar su acción contra cada uno de los coautores, deberá de interrumpir la prescripción en relación [con] cada uno de ellos; la sentencia que obtenga frente a uno no será oponible a los otros; y la apelación interpuesta por uno contra una sentencia común no aprovechará a los demás. No obstante, se le reconocen efectos comunes a la obligación solidaria: el acreedor puede reclamar la prestación íntegramente a cualquiera de los deudores y el pago realizado por uno de ellos libera a todos. V. Múrtula Lafuente, *La responsabilidad civil por los daños causados por un miembro indeterminado de un grupo*, Madrid, Ed. Dykinson, 2005, págs. 103–104.

Esta doctrina fue aceptada por la jurisprudencia española. Mediante la Sentencia de 14 de marzo de 2003, el Tribunal Supremo español examinó el recurso presentado. En ese caso, el demandante sufrió un grave accidente laboral mientras trabajaba en una obra de construcción. Este presentó demanda en la que reclamó una indemnización por el daño contra la empresa para la que trabajaba, el promotor de la obra y el arquitecto. No obstante, ya recaída la Sentencia y debido a la insolvencia de los condenados, formuló una nueva demanda contra el arquitecto técnico y dos (2) compañías aseguradoras. La demanda fue desestimada por prescripción. La Sentencia indicó que:

> ... la doctrina ha reconocido junto a la " 'solidaridad propia" ... otra modalidad de la solidaridad llamada "impropia" u obligaciones "in solidum" que dimanan de la naturaleza del ilícito y de la pluralidad de sujetos que hayan concurrido a su producción, y que surge cuando no resulta posible individualizar las respectivas responsabilidades. A esta última especie de solidaridad no son aplicables todas las reglas prevenidas para la solidaridad propia, y en especial no cabe que se tome en consideración el art. 1.974 del Código civil en su párrafo primero .... **\*407**

[Al hacer referencia a la sentencia de 21 de octubre de 2002, añade que] la fuente de donde nace la solidaridad ... es la sentencia, y que no existe con anterioridad.[19] S. de 14 de marzo de 2003, Núm. 223/2003.

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 15 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

No obstante, la doctrina continúa descartando las obligaciones *in solidum*, pues el ordenamiento jurídico divide a las obligaciones con pluralidad de sujetos en mancomunadas y solidarias, y en vista de ello establece su régimen jurídico. Véanse: Múrtula Lafuente, *op. cit.*, pág. 104; M. Martín-Casals y J. Solé, *Multiple Tortfeasors under Spanish Law*, en W.V.H. Rogers, *Unification of Tort Law: Multiple Tortfeasors*, The Hague, Ed. Kluwer Law International, 2004, pág. 193.

### III

El que la doctrina de las obligaciones *in solidum* haya sido adoptada en España no desmerece el que nuestro ordenamiento reconozca solamente un tipo de solidaridad. En vista de ello, todavía son válidas y correctas las razones por las que interpretamos que las obligaciones surgidas por el daño causado por una pluralidad de causantes es solidaria, con todos los efectos que la solidaridad conlleva. En esencia, no se introducen distinciones que no encuentran justificación en el Código Civil, se aumenta la garantía del lesionado para que reciba la reparación íntegra de su daño y se abona a la efectiva economía judicial. De igual forma, al incluir mediante una demanda enmendada a un codeudor no traído al pleito originalmente se mejora la posición del cocausante solidario a quien podría dificultársele su defensa por el transcurso del tiempo. Sin embargo, esto **\*408** no elimina una inquietud de considerable importancia: ¿es que no existe límite temporal para que el acreedor incluya mediante una demanda enmendada a un cocausante del daño del que conoce su identidad, así como todos los elementos necesarios para poder ejercitar efectivamente la causa de acción?

Ciertamente, es una prerrogativa del acreedor presentar una demanda contra uno o todos los cocausantes, ya sea según nuestro ordenamiento jurídico vigente o según la propuesta doctrina de obligaciones *in solidum*. El Art. 1097 del Código Civil, *supra*, expresa que

> [e]l acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente. Las reclamaciones entabladas contra uno no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada la deuda por completo.

De este artículo se deducen las opciones para que el acreedor dirija su acción: (1) contra todos los codeudores, (2) contra algunos de ellos, (3) contra uno solo o (4) contra uno y después contra otros hasta que cobre la totalidad de la deuda, pues solo el pago de la deuda en su totalidad libera a todos los codeudores. Art. 1098 del Código Civil, *supra*. Además, hemos reconocido que la doctrina de solidaridad permite también traer a un pleito instado a tiempo a un cocausante que originalmente no fue incluido a través de una enmienda a la demanda. *Arroyo v. Hospital La Concepción*, supra, págs. 607–608. Sin embargo, este derecho no es absoluto ni ilimitado.

Al respecto, Luis Puig y Ferriol nos ilustra con las expresiones siguientes:

> [H]a de pensarse que son posibles en el sistema del Código las sucesivas reclamaciones judiciales en tanto el interés del acreedor no haya quedado enteramente satisfecho, y sin que, por otra parte, se imponga al acreedor notificar a los codeudores los distintos procedimientos que entable, lo cual quizás pudiera constituir una medida de sana prudencia, con el fin de evitar gastos inútiles. *En todo caso cabe conjurar algunos de* **\*409** *estos inconvenientes conjugando este "ius variandi" del acreedor ex artículo 1.144 C. c. con el principio de la buena fe* (cfr. Arts. 7–1 y 1.258 C. c.) *y con la condena del abuso del derecho* (art. 7–2 C. c.),[20] *como quizás se daría en el caso de sucesivos litigios instados por el acreedor con el único fin de acumular gastos judiciales o eventuales condenas en costas.* (Énfasis suplido). L. Puig y Ferriol, *Régimen jurídico de la solidaridad de deudores*, en *Libro-homenaje a Ramón Ma. Roca Sastre*, Madrid, Gráficas Cóndor, 1976, Vol. II, pág. 457.

De igual forma, en Puerto Rico hemos reconocido el principio de que los derechos deben ejercitarse conforme a las

Case 3:11-cv-02268-JAG   Document 321-1   Filed 03/05/20   Page 16 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

exigencias de la buena fe. *Soriano Tavárez v. Rivera Anaya,* 108 D.P.R. 663, 670 (1979). Asimismo, hemos indicado que la ley no ampara el abuso del derecho o su ejercicio antisocial. Íd. Es decir, el ejercicio de todo derecho debe ser razonable sin que conlleve la ruptura de la ordenada convivencia social, ya sea en su vertiente subjetiva (por el ejercicio del derecho con la intención de dañar o sin verdadero interés) u objetiva (cuando el titular excede manifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho). Íd., págs. 670–671. Véase, además, J. Roca, *Art. 7.2* en *Comentarios a las reformas del código civil: el nuevo título preliminar y la Ley de 2 de mayo de 1975*, Madrid, Ed. Tecnos, Vol. I, pág. 375. Además, el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica y se extiende a la totalidad del ordenamiento jurídico. *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585 (1981). Por lo **\*410** tanto, nuestro ordenamiento provee vías para sancionar la diligencia y evitar conductas excesivas. Una de ellas es el principio del abuso del derecho.[21]

El fin social y económico de autorizar las enmiendas a la Demanda es proveer mayores garantías para que la persona afectada obtenga la reparación de todo el daño causado, así como propender a una eficiente economía judicial. No obstante, la víctima tiene que ejercitarlo de forma razonable y justa, y no despreocupada. Por lo tanto, de entenderse que hubo abuso del derecho por el juzgador, debe admitirse la adopción de medidas judiciales, tales como la desestimación de la demanda en cuanto a ese codeudor.[22] En estos casos, el exceso se traduce en afectar el equilibrio entre todos los intereses, particularmente la defensa de los demandados, así como la economía procesal; razones por las que hemos concluido que aplica el régimen jurídico de la solidaridad con todos sus efectos a este tipo de casos. Por lo tanto, no existe el tan aclamado "derecho eterno" que la Opinión mayoritaria comenta. *A contrario sensu*, podemos considerar abusivo cuando ya presentada la demanda el acreedor la enmienda para incluir a un cocausante pasado un término irrazonable desde que tuvo conocimiento de su identidad y otros elementos necesarios. Esto salvo cuando la tardanza surge de acciones u omisiones atribuibles al cocausante. Al respecto, la Asamblea Legislativa ya ha determinado como razonable el término de un año. Sin embargo, **\*411** corresponde al codeudor alegar tal abuso del derecho y señalar los hechos de los que se deduce.

Cónsono con lo anterior, el que una doctrina esté consolidada no elimina el que pueda ser mejorada o que responda más eficientemente a los retos de una sociedad cambiante. Nuestro ordenamiento jurídico provee la claridad y seguridad necesaria para atender las consecuencias de una obligación surgida por múltiples causantes de un daño. Por lo tanto, no tenemos que recurrir a confecciones de otras jurisdicciones. Hacer distinciones que el Código Civil no provee, tales como reconocer la existencia de dos (2) tipos de obligaciones solidarias —perfectas e imperfectas— para poder seleccionar entre unos efectos y descartar otros, en nada contribuye a la seguridad jurídica de las partes. Por lo tanto, no nos podemos amparar en la idea de que se alcanza la armonía del ordenamiento jurídico a través de la introducción parcial de una figura que no es reconocida en este.

IV

En el caso de autos la parte recurrida interrumpió el término prescriptivo de un (1) año mediante reclamación judicial. A su vez, hizo la salvedad de que al momento no conocía todos los detalles relacionados a los hechos. Por ello, demandó también a dos (2) galenos desconocidos. Sin embargo, durante el transcurso del proceso tuvo conocimiento de los nombres de otros doctores que intervinieron con la Sra. Hilda Pérez, entre ellos el doctor Mestre Morera, y un informe pericial que imputaba faltas en el diagnóstico y tratamiento que ofrecieron. Empero, transcurrieron más de tres (3) años desde que la parte recurrida tuvo conocimiento de todos los elementos y trajo al pleito al doctor Mestre Morera. Por otra parte, el peticionario alegó y justificó ante el foro de instancia el exceso incurrido por la parte recurrida. Cónsono con lo expresado, la tardanza de **\*412** la parte recurrida es excesiva y no es acorde con la finalidad de autorizar las enmiendas a la Demanda. Tampoco puede atribuirse esta tardanza a las acciones u omisiones del peticionario.

V

Por los argumentos antes expresados, disiento de la Opinión mayoritaria. En cambio, exhortaría a las víctimas de un daño a presentar prontamente su acción contra aquellos causantes tras conocer su identidad, si es su interés tener mayores garantías de obtener una indemnización completa. De otra forma corre el riesgo de que se considere su omisión como una actitud abusiva hacia el causante.

Footnotes

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 17 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

1. Los familiares demandantes son los siguientes: el Sr. Daniel Fraguada Bonilla, el Sr. Héctor L. Fraguada Pérez, la Sra. Ana Hilda Fraguada Pérez, la Sra. María de los Ángeles Fraguada Pérez, el Sr. Carlos Daniel Fraguada Pérez y el Sr. Ángel G. Osorio Fraguada.

2. Es necesario aclarar que en el caso ante nos no aplica la Regla 15.4 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), sobre parte demandada de nombre desconocido. Como es sabido, el solo hecho de incluir en una demanda la mención de un nombre ficticio para un demandado no hace que aplique automáticamente esta regla. Esta regla exige que se exponga la reclamación específica y que se conozca la identidad del demandado.

   Al examinar la alegación incluida en la demanda nos percatamos que es en extremo sucinta; no se expuso una reclamación de manera específica como requiere la Regla 15.4, *supra.* Estamos ante una situación de demandado desconocido, por lo que no aplica la citada regla. Aun en el supuesto de que nos encontráramos ante un caso de demandado de nombre desconocido, los demandantes no cumplieron con la exigencia de la Regla 15.4, *supra*, de realizar la enmienda correspondiente con toda prontitud al descubrirse el nombre verdadero.

3. El 18 de mayo de 2006 se concretó un acuerdo de transacción. Los demandantes convinieron desistir de la reclamación en cuanto al Hospital Auxilio Mutuo y éste se obligó a pagarles $70,000. El 25 de octubre de 2006 el Tribunal de Primera Instancia emitió una sentencia parcial mediante la cual dispuso del asunto según el acuerdo transaccional habido entre estas partes.

4. En esta solicitud, la parte demandante alegó que, como producto del descubrimiento de prueba, había surgido información de que los mencionados doctores habían sido negligentes en el tratamiento médico brindado a la señora Pérez.

   La solicitud realizada en el 2008 para enmendar la demanda no fue para sustituir o para indicar los nombres de los demandados de nombres desconocidos, sino que fue para traer al pleito unos nuevos demandados. Además, en la demanda enmendada del 2008 permaneció la alegación de responsabilidad de los demandados John Doe y Richard Roe que se había incluido en la demanda inicial.

5. La alegación sobre el conocimiento de los demandantes de la identidad de los galenos tiene como fundamento una deposición tomada a la codemandante, Sra. María de los Ángeles Fraguada Pérez, el 11 de julio de 2005. Apéndice, pág. 101. En ésta, la señora Fraguada Pérez —hija de la señora Pérez— hizo una relación cronológica y detallada de lo sucedido según su percepción. En específico, testificó que el día de los hechos alegados, los doctores Mestre Morera y Totti llegaron a la habitación de la señora Pérez después de que ella le pidiera a la enfermera que consiguiera a un médico, porque su madre comenzó a toser luego de que le echaran un líquido a través del tubo nasogástrico para realizarle un examen. La codemandante sostuvo que escuchó a los doctores Mestre Morera y Totti ordenarse alternativamente retirar el tubo, porque éste se encontraba en el pulmón y podía causar una embolia. Íd. Además, el doctor Mestre Morera puntualizó que, de todas formas, desde el 12 de enero de 2005 los demandantes contaban con un informe de su perito que imputaba desviaciones en la colocación del tubo nasogástrico. Argumentó que si se tomara la fecha de la deposición como el momento del conocimiento de los demandantes sobre los elementos para ejercitar su causa de acción, aun así habrían transcurrido tres años desde ese punto de inflexión en el tiempo hasta que finalmente se le reclamó.

6. En esta oposición a la sentencia sumaria, la parte demandante aseguró que una presunta discusión entre los doctores Mestre Morera y Totti se realizó *en presencia de los familiares.*

7. También son relevantes en cuanto a la prescripción los Arts. 1094, 1868 y 1874 del Código Civil, 31 L.P.R.A. secs. 3105, 5298 y 5304.

8. Tampoco incluyó al Estado Libre Asociado (E.L.A.) como alegado responsable solidario.

9. En esa oportunidad también incorporó al E.L.A. como parte codemandada.

10. El Art. 1874 de nuestro Código Civil dispone, en lo pertinente, que "[l]a interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores o deudores". 31 L.P.R.A. sec. 5304.

11. Algunos tratadistas han atribuido a la doctrina francesa la creación de la obligación *in solidum.* J.R. León Alonso, *La categoría de la obligación "in solidum"*, Sevilla, Pubs. de la Universidad de Sevilla, 1978, pág. 32.

12. El Art. 1.137 del Código español —idéntico a nuestro Art. 1090, *supra*— establece lo siguiente:

    "La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir, ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria".

13. Reiteramos, además, que lo dispuesto en el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, en cuanto a la no presunción de la solidaridad, no aplica en materia de responsabilidad extracontractual. Asimismo, puntualizamos que no adoptamos la norma de la obligación *in solidum* en toda su extensión, sino solo respecto a la interrupción del término

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 18 of 19

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

prescriptivo cuando coinciden varios cocausantes del daño al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

14 La solidaridad impropia no admite interrupción automática e indefinida del término prescriptivo en perjuicio de otros cocausantes, los cuales, por su propia culpa, tienen una obligación con el damnificado. La responsabilidad de cada uno de ellos es autónoma de la de los demás, por lo que surge una pluralidad de vínculos independientes. Esta pluralidad requiere que el término prescriptivo contra cada deudor se interrumpa de forma individual, pues la solidaridad imperfecta no nace de un vínculo prexistente, sino del acto ilícito productor del daño según reconocido por la sentencia que lo declare así.

15 En Puerto Rico, al igual que ocurrió en España, se han planteado preocupaciones acerca de la adopción de esta norma. Las inquietudes giran principalmente en torno a que existe un precedente sólido y el posible efecto que este cambio de norma tendría en la seguridad jurídica. De igual forma, se ha señalado que su adopción va contra el propósito de la aplicación de la solidaridad en los casos de responsabilidad extracontractual. Véase J.J. Álvarez González, *Responsabilidad civil extracontractual*, 78 (Núm. 2) Rev. Jur. U.P.R. 457 (2009). Diferimos de tal interpretación. Tal como señalamos, el justo balance que se buscaba lograr con la aplicación de la solidaridad en las acciones de daños extracontractuales, en realidad resultó en una mayor protección a la parte demandante, diferimientos indefinidos de causas de acción, entre otros efectos que socaban la estabilidad jurídica. La norma que hoy adoptamos respecto a la interrupción del término prescriptivo cuando coinciden varios cocausantes de un daño al amparo del Art. 1802 del Código Civil, *supra*, logra un justo equilibrio entre las partes y armoniza nuestro ordenamiento jurídico. Tampoco representa una carga mayor para el demandante, quien solo deberá ejercer con diligencia su causa de acción contra todos los posibles cocausantes del daño cuya identidad conozca. Es decir, en total armonía con la teoría cognoscitiva del daño. Otra de las inquietudes expresadas giraba en torno a que la norma que hoy adoptamos era contraria a la Regla 51.7 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). La mencionada regla fue eliminada del cuerpo de Reglas de Procedimiento Civil de 2009 precisamente por ser "contrari[a] al ordenamiento jurídico, ya que permit[ía] ejecutar una sentencia contra una persona que no fue parte en el pleito y sobre la cual el tribunal no adquirió jurisdicción". Informe de Reglas de Procedimiento Civil, Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, marzo 2008, pág. 583. Por ello, consideramos que la necesidad del cambio de norma sobrepasa las preocupaciones expresadas.

16 Nótese, además, que desde el 2005 la parte demandante contaba con un informe pericial que le advertía sobre las desviaciones en la colocación del tubo nasogástrico. A pesar de ello, tampoco reclamó al doctor Mestre Morera hasta transcurridos tres años desde que obtuvo elreferido informe.

1 La opinión mayoritaria adopta la doctrina de las obligaciones *in solidum* "solo respecto a la interrupción del término prescriptivo cuando coinciden varios cocausantes del daño al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141". Opinión mayoritaria, pág. 389 esc. 13.

2 V. Múrtula Lafuente, *La responsabilidad civil por los daños causados por un miembro indeterminado de un grupo*, Madrid, Ed. Dykinson, 2005, págs. 103–104; A. Cristóbal Montes, *Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil*, Barcelona, Ed. Bosch, 1985, pág. 41.

3 Apéndice de la Petición de *certiorari*, pág. 50.

4 Íd., pág. 64.

5 Íd., págs. 85–94.

6 Íd., págs. 99–101.

7 "No es necesario que el perjudicado conozca en ese momento toda la magnitud y extensión de las consecuencias lesivas de las lesiones corporales, ya que tal extremo se puede establecer en un momento posterior ...". *Vera v. Dr. Bravo*, 161 D.P.R. 308, 330 (2004). Sin embargo, dado que la prescripción extintiva castiga la indolencia de la parte, si el desconocimiento se debe a la falta de diligencia del reclamante, entonces no aplican las consideraciones sobre la prescripción. *COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 806 (2010).

8 Para una relación sucinta, véanse: J. Santos Briz, *La responsabilidad por hecho de otro derivada de acto ilícito no penal*, en *Tratado de responsabilidad civil* (I. Sierra Gil de la Cuesta, cord.), Barcelona, Ed. Bosch, 2008, T. II, pág. 670; J.J. Álvarez González, *Responsabilidad civil extracontractual*, 78 (Núm. 2) Rev. Jur. U.P.R. 457, 478 (2009).

9 Opinión mayoritaria, pág. 389 esc. 13.

10 Esta jurisprudencia está apoyada también por la doctrina prevaleciente. M. Martín-Casals y J. Solé, *Multiple Tortfeasors under Spanish Law* en W.V.H. Rogers, *Unification of Tort Law: Multiple Tortfeasors*, The Hague, Ed. Kluwer Law International, 2004, pág. 189.

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S. Government Works.  18

Case 3:11-cv-02268-JAG Document 321-1 Filed 03/05/20 Page 19 of 19

**Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)**
2012 TSPR 126

| | |
|---|---|
| 11 | "Las normas legales ordenadoras de la solidaridad han de ser sometidas, como es lógico, a interpretación". L. Díez-Picazo, *Fundamentos del Derecho Civil patrimonial*, 6ta ed., Madrid, Ed. Thompson, 2008, Vol. II, pág. 200. |
| 12 | Al respecto, hemos reconocido el debate doctrinal. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992). |
| 13 | Esto tras examinar las doctrinas francesa, alemana, italiana y españolas en cuanto a la prescripción en estos supuestos. |
| 14 | Opinión mayoritaria, pág. 389 esc. 13. |
| 15 | Opinión mayoritaria, pág. 391. |
| 16 | Álvarez González, *supra*, págs. 478 y 504 esc. 206. |
| 17 | Como reconoce José Ricardo León Alonso, uno de los defensores de la doctrina de las obligaciones *in solidum*: "[e]n nuestro Derecho ... la obligación *in solidum* no cuenta ni con una base doctrinal en que asentarse, ni con una específica normativa de donde partir; por ello, será conveniente el estudio sucesivo de la posible ubicación de la obligación *in solidum* en el articulado o en el espíritu de nuestro C.c., el deslinde terminológico de figuras particularmente afines y, desde luego, el recorrido por el oscuro panorama doctrinal". J.R. León Alonso, *La categoría de la obligación "in solidum"*, Sevilla, Pubs. de la Universidad de Sevilla, 1978, pág. 27. |
| 18 | Opinión mayoritaria, pág. 380. |
| 19 | Al respecto, la opinión mayoritaria acoge que "la solidaridad imperfecta no nace de un vínculo prexistente, sino del acto ilícito productor del daño según reconocido por la sentencia que lo declare así". Opinión mayoritaria, pág. 389 esc. 14. Esta postura es altamente criticada. Véase M. Albaladejo García, *Interrupción o no de la prescripción frente a todos los deudores solidarios por reclamación a uno solo: comentario a la Sentencia del Tribunal Supremo de 14 de marzo de 2003*, Rev. Der. Priv. 543, 554 (2003). |
| 20 | Luego de considerar la doctrina y la aplicación de la jurisprudencia, el legislador español incorporó el abuso del Derecho al Código Civil mediante una reforma del título preliminar de 1973–1974. El apartado 2 del Art. 7 del Código Civil español indica lo siguiente:<br>"1. Los derechos deberán ejercitarse conforme a las exigencias de la buena fe.<br>"2. La ley no ampara el abuso del derecho o el ejercicio antisocial del mismo. Todo acto u omisión que por la intención de su autor, por su objeto o por las circunstancias en que se realice sobrepase manifiestamente los límites normales del ejercicio de un derecho, con daño para tercero, dará lugar a la correspondiente indemnización y a la adopción de las medidas judiciales o administrativas que impidan la persistencia en el abuso". *Código Civil*, 8va ed., Madrid, Ed. Civitas, 1984, Art. 7, pág. 54.<br>En Puerto Rico no contamos con una disposición idéntica en el Código Civil. |
| 21 | De igual forma, también hemos reconocido la Doctrina de Incuria para desestimar acciones en las que se presenta dejadez o negligencia en el reclamo de un derecho. Para ello no basta el mero transcurso del tiempo sino que hay que evaluar otras circunstancias, entre ellas la justificación para la demora, el perjuicio que acarrea y el efecto sobre los intereses involucrados. Véanse: *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990). Sin embargo, consideramos suficiente la protección que provee el principio de abuso del derecho y que se enmarca dentro de la tradición civilista. |
| 22 | Sin embargo, hemos señalado que el contenido de eticidad de cada acto debe examinarse a la luz de sus circunstancias particulares. *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585 (1981). Véase, además, C. Lasarte Álvarez, *Principios de Derecho Civil*, Madrid, Ed. Trivium, 1992, T. 1, pág. 171. |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.