Daniel Fraguada Bonilla et als, Appellees v.
Hospital Auxilio Mutuo, Dr. Manuel Anguita,
et als, Petitioners

CC-2009-918

SUPREME COURT OF PUERTO RICO

*2012 TSPR 126; 2012 PR Sup. LEXIS 124*

August 13, 2012

**PRIOR HISTORY:  [*1]**
Court of Appeals: San Juan Judicial Region. Matter: Damages --
Art. 1802 Civil Code -- Interruption of the prescriptive term
in claims when there are several co-causers; revocation of the
standard of Arroyo v. Hospital La Concepción regarding
interruption of the term in these situations.

Attorney for the Petitioner: Atty. Maritza López Camuy.
Attorneys for the Appellee: Atty. Wilfredo Zayas Nieves, Atty.
Zedided Ortiz Martínez, Atty. José A. González Villamil.

**JUSTICES:** Opinion of the Court issued by Associate Justice
MISTER ESTRELLA MARTÍNEZ. Dissident Opinion issued by
Associate Justice Mrs. PABÓN CHARNECO who is joined by
Associate Justice Mister RIVERA GARCÍA and Associate Justice
Mister FELIBERTI CINTRÓN.

**OPINION:**

San Juan, Puerto Rico, August 13, 2012.

We have occasion today to examine our rules regarding the
interruption of the prescriptive period in situations where
there concur multiple co-causers of an extracontractual
damage. For this, we must determine if it is pertinent to
distinguish between the effects of the solidarity agreed or of

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

a pre-existing bond and those of the solidarity that arises where there are several causers of an extracontractual damage.

I

On May 2, 2002 the **[*2]** relatives of Mrs. Hilda Pérez filed a complaint for damages against Hospital Auxilio Mutuo and Dr. Manuel Anguita.[1] In the complaint there were also included John Doe and Richard Roe as unknown defendants. It was alleged that they were jointly and severally liable in the event it was determined that they incurred in negligence.[2] Subsequently, the complaint was amended to include certain allegations. Jointly, the plaintiffs alleged that on January 14, 2000 Dr. Manuel Anguita operated Mrs. Pérez and found that her intestine was obstructed. After the operation, the personnel of the hospital placed a nasogastric tube on the sixty year old patient. A nurse proceeded to perform a test called Turner and injected a liquid through the aforementioned tube without allegedly verifying if it was in the stomach. The plaintiffs alleged that at this time Mrs. Pérez started to scream.

-----------------------Footnotes---------------------------
1 The plaintiff relatives are the following: Mr. Daniel Fraguada Bonilla, Mr. Héctor L. Fraguada Pérez, Mrs. Ana Hilda Fraguada Pérez, Mrs. María de los Ángeles Fraguada Pérez, Mr. Carlos Daniel Fraguada Pérez and **[*3]** Mr. Ángel G. Osorio Fraguada.

2 It is necessary to clarify that in the case before us Rule 15.4 of the Rules of Civil Procedure of 1979, 32 L.P.R.A. Ap. III R. 15.4, regarding a defendant of an unknown name is not applicable. As is known, the mere fact of including in a complaint the mention of a fictitious name for a defendant does not make Rule 15.4, supra, automatically applicable. This rule requires that the specific claim be stated and that the identity of the defendant be known.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

Upon examining the allegation included in the complaint we notice that it is one extremely succinct; a claim was not specifically stated as required by Rule 15.4, *supra*. We are before the situation of an unknown defendant, wherefore the cited rule is not applicable. Even in the assumption that we were before a case of a defendant of an unknown name, the plaintiffs did not comply with the requirements of Rule 15.4, *supra*, of making the corresponding amendment promptly upon discovering the true name.-----End Footnotes--------------

Subsequently, she developed respiratory difficulty and she had to be intubated. Months later, on July 1, 2000, the patient died. With the inclusion of all **[*4]** these allegations the plaintiffs stated that Mrs. Pérez died due to the negligent actions of Hospital Auxilio Mutuo and of its personnel, since they failed to provide an adequate medical treatment.[3]

------------------------Footnotes--------------------------
3  On May 18, 2006 a settlement agreement was reached. The plaintiffs agreed to dismiss the claim with regard to Hospital Auxilio Mutuo and it agreed to pay them $70,000. On October 25, 2006, the Court of First Instance issued a partial judgment whereby it disposed of the matter according to the settlement agreement between these parties.---End Footnotes---

Six years after the action commenced, the plaintiffs made a request to amend the complaint in order to include other presumed co-causers of the damage. They specifically, requested to bring Dr. Noel Totti and Dr. Octavio Mestre into the action.[4] After the Court of First Instance granted the amendment requested, on May 21, 2008 the plaintiffs amended the complaint. It was then that Doctor Mestre Morera and Doctor Totti found out that they as well as their respective conjugal partnerships were co-defendants in a litigation that had been filed more than half a decade ago. The physicians,

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

[*5] as alleged by the plaintiffs, had placed the nasogastric
tube on Mrs. Pérez in a negligent manner.

------------------------Footnotes------------------------
4  In this request, the plaintiff alleged that as a result of
the discovery there had emerged information that the
aforementioned Doctors had been negligent in the medical
treatment provided to Mrs. Pérez.

The request made in 2008 to amend the complaint was not
one of substitution or of indication of the names of
defendants of an unknown name, but for the purpose of bringing
new defendants into the action.  Furthermore, in the
complaint amended in 2008, there remained the allegation of
liability of defendants John Doe and Richard Roe which had
been included in the initial complaint.---End Footnotes-----

Doctor Mestre Morera filed his answer to the amended
complaint.  Later on, and during the litigation, the physician
filed a motion for summary judgment.  In the same he argued
that the claim had prescribed because the plaintiff previously
knew his identity and his participation in the event.[5]  Thus,
the doctor emphasized that even though the plaintiff was in a
position to exercise his claim it was not until six years
after having filed the original complaint that they filed [*6]
the action against him.  He assured that this delay
constituted a gross lack of diligence by the plaintiff in
exercising its cause of action, wherefore the claim against
him should be dismissed.

------------------------ Footnotes ------------------------
5  The allegation regarding knowledge of the plaintiffs of the
identity of the physicians is based on a deposition taken to
the co-plaintiff, Mrs. María de loa Angeles Fraguada Pérez on
July 11, 2005, Appendix, page 101.  In the same, Mrs. Fraguada
Pérez ---the daughter of Mrs. Pérez--- made a chronological
and detailed narration of what had occurred according to her

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

perception.    Specifically, she testified that on the day of the alleged facts Doctors Mestre Morera and Totti arrived at Mrs. Pérez' room after she requested that the nurse find a physician, because her mother started to cough after they placed a liquid through the nasogastric tube to perform the exam.    Co-plaintiff sustained that she heard Doctors Mestre Morera and Totti alternatively order each other to remove the tube, because it was in the lung and it could cause an embolism.    Id.    Furthermore, Doctor Mestre emphasized that anyway, as of January 12, 2005 the [*7] plaintiffs had a report from their expert that alleged deviations in the placement of the nasogastric tube. He argued that if the date of the deposition was taken into consideration as the moment of awareness of the plaintiffs regarding the elements to exercise their cause of action, three years would have still elapsed as of that point of inflection to the time that a claim was finally made from him.------------End Footnotes---

Plaintiffs fild their oposition to the motion for summary judgment of Doctor Mestre Morera. They did not justify the delay to file a claim against him after six years, but stated that even though his participation was minor to that of the other physicians, as of the moment in which they filed the original complaint the prescriptive term against any physician that was negligent in the treatment of Mrs. Pérez was interrupted.[6]

--------------------------Footnotes-------------------------
6 In this opposition to summary judgment the plaintiff assured that the alleged discussion between Doctors Mestre Morera and Totti was made *in the presence of the relatives*.----End Footnotes-------------------------------------------------

Having evaluated the positions of the parties, the Court of First Instance issued a resolution in which it "denied" the motion for summary judgment.  Not in agreement with this ruling, Dr. Mestre Morera [*8] filed a request for *certiorari*

Certified to be a true and correct translation from its original.

Aída Torres, USCCI
787.723.4644
2/5/13

before the Court of Appeals. Subsequently, the intermediate appellate forum issued a resolution in which it denied to issue the appeal. It based its ruling on the standard contained in *Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992)*.

Once again not in agreement, Doctor Mestre Morera resorted to us, through a request for *certiorari*. In what is pertinent, he stated that the Court of Appeals erred in concluding that the claim filed six years after the original complaint had not prescribed. He argued that according to the cognoscitive theory of the damage, the term to file the claim had expired, since the plaintiffs previously knew his identity and the rest of the elements necessary to be able to exercise their cause of action. The physician questioned that through a mere procedural formality without any ulterior proceeding, the plaintiff was relieved of its duty to act in a diligent and timely manner in claiming its rights.

Inevitably he requests that we revoke the standard established in *Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992)*, regarding the automatic and indefinite interruption of the prescriptive term against the **[*9]** alleged joint and several co-causers of a damage who were not included in the original complaint. In its stead, he proposes that we adopt the doctrine of *in solidum* obligation.

On April 16, 2010, we granted the plaintiff a term to show cause why we should not issue the writ of *certiorari* and revoke the finding of the Court of Appeals. They have appeared. With the benefit of the different positions, we proceed to resolve.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

## II

## A.

   Prescription is an institution that extinguishes a right due to the inertia of a party to exercise it during a specific period of time. We have repeatedly explained that extinctive prescription is a figure of a substantive and not a procedural nature, which is governed by the principles of our Civil Code. *Serrano Rivera v. Foot Locker Retail Inc.*, res. on August 15, 2011, 182 D.P.R. (2011); *COSSEC et al. v. González López et al., 179 D.P.R. 793, 805 (2010); Santos de García v. Banco Popular,* 172 D.P.R. 759, 766 (2007). This applies as a matter of law with the passing of time, unless there occurs any of the assumptions provided in our juridical laws. COSSEC at al v. *González López et al., supra,* pages **[*10]** 805-806; *Santos de García v. Banco Popular, supra,* page 766. To that effect, Art. 1873 of the Civil Code, 31 L.P.R.A. sec. 5303, establishes that the prescription of actions is interrupted by its exercise before the courts, by an extrajudicial claim of the creditor and by any act of recognition of the debt by the debtor.[7]

---------------------------Footnotes------------------------
7 Also relevant with regard to prescription are Arts. 1094, 1868, and 1874 (31 L.P.R.A. secs. 3105, 5298 and 5394).--End Footnotes----------------------------------------------

   Prescriptive terms seek to punish inertia and stimulate the rapid exercise of the actions, *COSSEC et al. v. González López et al., supra, page 806;* Campos v. Cía. Fom. Ind., 153 D.P.R. 137, 143 (2001). The objective of the same is to promote security in the juridical traffic and the stability of juridical relations. Id. We have stated that the existence of prescriptive terms responds to a firmly established policy for the expedited solution of claims. Campos v. Cia. Fom. Ind., supra, page 143. In this manner we avoid surprises

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

generated by the resuscitation of old claims, in addition to the inevitable consequence of the passing of time, such as: loss of evidence, imprecise memory and **[\*11]** difficulty to find witnesses. Id., page 144. This figure is based on "the human experience that valid claims are acted on immediately and are not abandoned." *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943, 950 (1991). In this regard, the passing of the period of time established by law, without any claim whatsoever by the owner of the right, originates a legal presumption of abandonment. See, *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 752 (1992).

As is well known, obligations arising from fault or negligence are governed by what is provided in Art. 1802 of the Civil Code, 31 L.P.R.A. sec. 5141, which establishes that whoever "by action or omission causes damage to another, intervening fault or negligence, is obligated to indemnify the damage caused." The prescriptive term of these actions is one year pursuant to the provisions of Art. 1868 of the Civil Code, 31 L.P.R.A. sec. 5298. The brevity of this term responds to the lack of existence of a prior juridical relationship between the plaintiff and the defendant. *Culebra Enterprises corp. v. E.L.A., supra,* pages 951-952. In particular, the aforementioned term of prescription seeks to promote the timely establishment of the actions, **[\*12]** seeking to assure that the passing of time will not confuse or erase the clarification of the truth in its dimensions of responsibility and evaluation of the amount. Campos v. Cía. Fom. Ind., *supra,* page 950.

In accordance with the **cognoscitive theory of the damage,** this prescriptive term commences to count when the claimant knew, or should have known that he suffered a damage, who caused it to him and the necessary elements to be able to effectively exercise his cause of action. See, *COSSEC et al v. González López et al,* supra; *Toledo Maldonado v. Cartagena Ortiz, 132 D.P.R. 249, 254-255 (1992); Colón Prieto v. Géigel,*

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
787.723.4644
2/5/13

115 D.P.R. 232, 247 (1984). However, we have repeatedly stated that "if the lack of knowledge is due to lack of diligence, then these considerations regarding prescription are not applicable". COSSEC et al v. González López et al, supra.

**B.**

Obligations can be classified according to the subjects that comprise the relationship. Thus, there are joint and several obligations. In joint obligations the debt can be divided and each debtor has to independently comply with his part. J. Castán **[*13]** Tobeñas, Derecho Civil Español, 10th ed., Madrid, Ed. Reus, 1967, T. III, page 107. In joint and several obligations each creditor is entitled to request and each debtor has the duty to pay the consideration due in its entirety. Id.

The rule that governs in matters of civil law is that solidarity is not presumed. Art. 1090 of the Civil Code, 31 L.P.R.A. sec. 3101, establishes that the concurrence of two or more debtors in a single obligation does not mean that each one of them should totally render the things object of the same. This article establishes joint liability as the rule and solidarity as the exception, the latter only arising when the obligation expressly determines it.

In matters of extracontractual liability, in Cruz v. Frau, 31 D.P.R. 92, 100 (1922), we established that when a damage is caused by the concurrent negligence of several persons, their carelessness is the proximate cause of the accident, and, all are liable for indemnifying the damage caused. Later in Cubano v. Jiménez et al., 32 D.P.R. 167, 170 (1923), this Court stated that "the tendency of jurisprudence has been to declare in solidum the liability of the different defendants."

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

Despite our **[*14]** previous statements, in view of the query about the existence of the right to contribution in our code of laws, in *García v. Gobierno de la Capital, 72 D.P.R. 138, 148-149 (1951),* we jurisprudentially extended the application of Arts. 1094, 1098 and 1874 of the Civil Code, 31 L.P.R.A. secs. 3105, 3109, 5304, regarding the effects of solidarity, to cases for damages. As a previous step to said conclusion, we stated, perhaps due to the exterior margin of clarity, that those who cause a damage are jointly and severally liable to the aggrieved for the judgment which is favorably issued to the same in due time. *García v. Gobierno de la Capital, supra,* pages 146-147.

Later on we had the opportunity to clarify our pronouncement regarding the doctrine of joint and several liability. **In *Arroyo v. Hospital La Concepción, supra*, we reiterated that "what is provided in Art. 1090 of the Civil Code, 31 L.P.R.A. sec. 3101, with regard to the non presumption of joint and several liability, does not apply in matters of extracontractual liability."** Id., page 605 But what is even more important, yet, moved mainly by the Spanish doctrine of that time --1992-- in that case we preferred not to make a distinction between different **[*15]** types of solidarity -- perfect and imperfect-- and jurisprudentially sustained that solidarity in our laws had a homogenous nature, wherefore the primary as well as the secondary effects were applicable. As a result thereof, **we resolved that the timely filing of a complaint by an aggrieved against a joint and several co-author automatically interrupts the prescriptive term against all of the other co-causers of the damage.** We stated that with an amendment to the complaint or a third party complaint the alleged joint and several co-causers of the damage not originally included, can be incorporated into the action, and that the claimant only has to allege well and sufficiently that the new defendant is jointly and severally liable for the damages. With this, in that case we allowed that there be

Certified to be a true and correct
translation from its original.
*Aida Torres*
Aida Torres, USCCI
787.723.4644
2/5/13

brought into the action several co-defendants four years after the initial complaint was filed.

We subsequently resolved *García Pérez v. Corp. Serv. Mujer, 174 D.P.R. 138, 155 (2008)*, which had the singularity that the plaintiff was aware beforehand of the identity and the necessary elements to be able to exercise his cause of action against a presumed joint and several co-author, but did not include the same in the original **[*16]** complaint.[8] It was not until three years later that the aggrieved amended the complaint to include her as a joint and several co-causer of the damage.[9] **On this occasion we reiterated the standard of *Arroyo v. Hospital La Concepción, supra,* and decided that since in the amended complaint it was alleged that the new co-defendant was jointly and severally liable for all of the damages caused, the prescriptive term was interrupted with the initial filing of the complaint.** Id, page 159.

---------------------------Footnotes-------------------------
8  It also did not include the Commonwealth of Puerto Rico (C.W.P.R.) as an alleged joint and several liable person.

9  In that opportunity it also incorporated the C.W.P.R. as a co-defendant.----------------------End Footnotes----------

As we mentioned, in *Arroyo v. Hospital La Concepción, supra,* we accepted the interpretation of the Spanish doctrine and jurisprudence in effect at that time. Time has passed and the changes that have occurred since then have not been few. The interpretation admitted in the alluded case was abandoned in Spain for several years now, and in its stead there was adopted the French doctrine that distinguishes between two types of several liability: perfect and imperfect.

Certified to be a true and correct translation from its original.

Aída Torres, USCCI
787.723.4644
2/5/13

### III

It corresponds to us to resolve if the rules established regarding prescription in actions for damages should be maintained in effect. In particular **[\*17]** if the filing of a complaint for civil extracontractual liability against an alleged joint and several co-causer interrupts the prescriptive term against the rest of the presumed co-causers. For this, **we analyzed if we must integrate a distinction between the cases of joint and several liability agreed or pre-existing bond --known as proper solidarity or perfect solidarity-- and the cases of joint and several liability when there are several persons responsible for an extracontractual damage-- known as improper solidarity or imperfect solidarity.** If this distinction is admitted, the interruptive effect of Art. 1874 of the Civil Code, 31 L.P.R.A. sec. 5304, would apply to cases of proper solidarity, but would not extend to the scope of civil extracontractual liability when there are several co-causers who are judicially condemned.[10]

---------------------Footnotes--------------------
10  Art. 1874 of our Civil Code provides, in what is pertinent:  that "[t]he interruption of the prescription of actions in joint and several obligations equally benefits or affects all of the creditors or debtors." 31 L.P.R.A. sec. 5304.-------------End Footnotes---------------------------

The prudent study of the obligations derived from the responsibility for extracontractual damages requires a historic examination of its nature **[\*18]** and extension.

### A.

The word solidarity originates from the latin *in solidum*, which is defined as the whole of a sum.  A. Blánquez Fraile, Diccionario Latino-Español, Español-Latino, Barcelona, Ed.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

Ramón Sopena, S.A., 1985, T. II, page 1460.  The institution of the *in solidum* obligation originates in turn from Roman Law.  It recognized it all its extension the division between joint and joint and several obligations as the distribution of the liability occurred or not between the parties. J. R. León Alonso, La Categoría de la obligación *in solidum*, Sevilla, Publicaciones de la Universidad de Sevilla, 1978, page 51. Obligations with a plurality of subjects were considered joint and several provided there was no pact between the parties. C. Gómez Ligüerre, Solidaridad y Derecho de daños. Los límites de la responsabilidad colectiva, (s.l.), Thomson, Civitas, 2007, page 79.  Roman joint and several liability allowed the creditor to be able to require the entire compliance of the obligation from any of the debtors.

Since 1286 b.c., through  Aquilian Law, Romans provided a regime for situations where there concurred several co-causers of a damage. Gómez Ligüerre, op. cit. page 81. **[\*19]** Pursuant to the same, the victim could claim the entire indemnification from any of those declared liable. Id.

Obligations in Roman Law were presumed joint and several. Joint liability was the exception, and it was applied when it was agreed between the parties or when the obligation was divisible.  Subsequently, this rationale was inverted by Justinian Law (527-565 a.c.), which changed the presumption: it imposed the division of the obligation as the rule and established joint and several liability only when it was agreed.  Gómez Ligüerre, *op. cit.*, page 80.  It was an unavoidable requirement that the claim be directed against all of the debtors at the same time. Id., page 81.

Since its creation, joint and several liability has been divided according to the source from which it originates. Roman Law proposed the idea of distinguishing between two types of plural obligations: correal and *in solidum* obligations.  See: E. Petit, Tratado Elemental de Derecho

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

Romano (J.M. Rizzi, trad.), México, Ed. Editora Nacional, 1966, pages 348-355. Although similar in appearance, both obligations were differentiated in their source or origin. J. Cubides Camacho, Obligaciones, 5th Ed., Bogotá, D.C., 2007, page 68. Id. **[*20]** *In solidum* obligations originated from natural causes --such as those derived from the common fault or offense of the debtors--- and correal obligations originated from voluntary causes. E. Petit, *op. cit.*, pages 353-354. Similarly, *in solidum* obligations could only exist between debtors, while correal could be established between debtors as well as creditors. Id.

The rule of non presumption of solidarity of the Roman Law had a significant influence in the creation of the civil codes of France and Spain. However, these codes do not expressly establish how the co-causers of an extracontractual damage will respond, wherefore both countries have supplied this absence through jurisprudence. In this aspect our Civil Code is similar to that of France and Spain.

**B.**

In France, Art. 1.202 of its Civil Code provides that solidarity is not presumed, it must be expressly agreed. As we suggested, the aforementioned code is silent about the obligation that should exist in cases of plurality of causers of a damage.

In matters of general liability, French doctrine distinguishes between two types of effects of solidarity: **[*21]** the primary effects and the secondary effects. The primary include the unity of the debt and the plurality of bonds. Secondary are the interruption of prescription, the interruption of the delay, and the promise of compliance of all of the joint and several debtors. Gómez Liguerre, *op. cit.*, page 127. This distinction is crucial in this doctrine,

Certified to be a true and correct
translation from its original.
*Aida Torres*
Aida Torres, USCCI
787.723.4644
2/5/13

since the secondary effects of the solidarity are not applicable to the scope of extrancontractual liability.

Since solidarity can originate from the law or from the will of the parties, in France a distinction is made between the cases of perfect solidarity and those where solidarity is imperfect. The solidarity is considered percent when it is "between several persons joined by a common interest, which have frequent relations among themselves or know each other. J. R. León Alonso, op. cit., page 32. On the other hand, imperfect is when it is established by law "between persons who do not know each other, who are merely accidental co-debtors or when their relations are sporadic." Id. pages 32-33.

When the solidarity is imperfect, there arises an *in solidum* obligation.[11] Pursuant to the same, in cases of plurality of causers each of them **[*22]** is entirely liable, but his liability is autonomous from that of the others. Á. Cristóbal Montes, Mancomunidad o solidaridad, 1985, ed. Bosch, Casa Editorial, S. A., Barcelona, page 36. This, since the bond from which the obligation of each co-causer is derived is independent. Id. That is why, the French doctrine does not consider said obligation as one that is regular and several, but *in solidum*. Even though each of the co-causers has the responsibility for paying the whole, the secondary effects of the traditional solidiarity --among them, the interruption of the prescriptive term-- do not govern. This means that in actions for extrancontractual damages, the injured party must individually interrupt the prescriptive term with regard to each joint and several co-causer. Id, page 38. That is, the time filing of a complaint against one joint and several co-causer of an extrancontractual damage does not interrupt the term against the rest of the alleged authors.

Certified to be a true and correct translation from its original.
Aída Torres, USCCI
787.723.4644
2/5/13

-----------------------------Footnotes---------------------------
11 Some commentators have attributed to the French doctrine the creation of the *in solidum* obligation. J. R. León Alonso, *op. cit.*, page 32.--------------*End Footnotes*---------------

Insofar as the interruption of the prescription, Art. 1.206 of the French Civil Code --similar **[*22]** to Art. 1874 of our Civil Code, *supra*-- establishes that "actions exercised against one of the joint and several debtors interrupts the prescription with regard to all of them." French Civil Code (Á. Núñez Igleasias, comm.), Madrid, Ed. Marcial Mons, 2005, page 552. Now, however, **the French doctrine does not apply this article to the extracontractual field.** This is mainly due to the fact that the classic solidarity is explained in France as an idea of mutual representation, which requires that all be inspired by a common will. See. Gómez Liguerre, *op. cit.*, page 99. This does not occur in cases of *in solidum* liability. In the same, since there does not exist a mutual representation due to the absence of the will of the co-participants to bind themselves jointly, the obligation that arises among the co-causers of a damage is not considered comparable in all its extension to a proper solidarity.

The exclusion of the secondary effects of the solidarity of several causers of an extracontractual damage is justified by the absence of a community of interests among those co-obligated. J. López Richart, Responsabilidad Personal e Individualizada, Madrid, Ed. Dikinson, 2003, page 40. There does not exist **[*24]** a common interest or a mutual representation because the *in solidum* obligation does not arise from a prior agreement or pact, but from an unconventional event. I. Sierra Gil de la Cuesta, Tratado de Responsabilidad Civil, España, Ed. Bosch, 2008, T. II, page 669.

In short, in the extracontractual field, the French doctrine considers that when there coexist several causers of

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

an extracontractual damage there arises an *in solidum* obligation where the secondary effects of the solidarity are not produced. In order for the injured party to conserve its action against the alleged co-causers, he must interrupt the prescription against each one of them. Á. Cristóbal Montes, *op. cit.,* page 38.

**C.**

The Civil Code of Spain follows the model of the French Civil Code and does not expressly contemplate the alleged obligation that governs in cases of extracontractual liability of several causers of a damage. Á. Cristóbal Montes, *op. cit.,* page 29. Art. 1.902 of the Spanish Civil Code --similar to Art. 1802 of our Civil Code, *supra*-- encompasses the figure of extracontractual fault. On its part, Art. 1.137 of the Civil Code of Spain establishes that solidarity is not presumed.[12] Nevertheless, pursuant to judicial interpretation **[*25]** the co-causers of an extracontractual damage are jointly and severally liable.

---------------------------Footnotes----------------------
12 Art. 1.137 of the Spanish Code --identical to our Ar. 1091, 31 L.P.R.A. sec. 3102-- establishes the following:

The concurrence of two or more creditors or of two or more debtors in a single obligation does not entail that each of them is entitled to ask, nor each of them should render in its entirety, the things object of the same. This will only apply when the obligation expressly determines this, being the same constituted with the nature of solidarity.
---------------------------End Footnote----------------------

At the time that we resolved *Arroyo v. Hospital La Concepción, supra,* the standard in effect in Spain

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
2/5/3

contemplated a homogenous solidarity which accepted that the timely filing of a complaint by an aggrieved against a joint and several co-author of damages, interrupted the prescriptive term against those who were subsequently found to be jointly and severally liable. This, since there was no distinction between the solidarity arising from the pact and the solidarity product of the damages caused by several authors. As we mentioned, this rule was abandoned in Spain. In its stead, there was incorporated the dominant French interpretation which admits a distinction between [*26] proper and improper solidarity. According to the modern standard in Spain, solidarity is proper when its nature is derived from a legal standard or from a conventional pact, and it is improper when it originates from the judgment. See J. June 7, 2010, No. 521/2010.

The figure of improper solidarity presented "the solution to one of the problems presented by joint and several liability: the interruption of the prescription". Gómez Liguerre, *op. cit.*, *page 129*. This, due to the fact that improper solidarity is an exception to the standard of interruption of the prescription. The Spanish figure is very similar to the consolidated French doctrine of *in solidum*, in effect since the XIXth century. C. Gómez Liguerre, *op. cit.*, page 125. It was specifically in the judgment of March 14, 2003, J. of March 14, 2003, No. 3645/2003, that Spanish jurisprudence integrated the aforementioned distinction. The facts of this judgment are as follows. A worker sued the company for which he worked, the entity promoting the work and the architectural director for damages. A judgment absolved the latter, and in the act condemned the first two to indemnify the injured party. He was unable to perceive the [*27] compensation due to the insolvency of the defendants and proceeded to sue the technical architect and his insurance companies. The lower courts found that the action had prescribed because Art. 1.974 of the Spanish Civil Code was not applicable to this cause of extracontractual action. The

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

Supreme Court of Spain confirmed the ruling after consulting the General Board of Magistrates of the First Supreme Court, which adopted the following agreement by an ample majority of votes:

> The first paragraph of Article 1.974 of the Civil Code only contemplates an interruptive effect in the assumption of joint and several obligations in the proper sense when said nature is derived from the legal standard or a conventional pact, *without being able to extend it to the scope of extracontractual liability when there are several parties judicially condemned.*   J. of March 14, 2003, No. 3645/2003.   (Emphasis ours)

As can be observed, at present the Spanish jurisprudence --as well as French doctrine-- consider that the interruptive effect of the prescription established in its Art. 1.974 applies only to cases of proper solidarity.  See: Judgment of March 14, 2003, **[*28]**, No. 3645/2003; Judgment of June 4, 2007, No. 662/2007. That is, in the case of Spain, when said nature arises from a pact or the law.  Id.  Nevertheless, the interruption does not extend to improper solidarity since it is non-existent until the moment that it arises pursuant to a judgment.  Id.  This solidarity does not arise from a pre-existing bond, but from the illegal act that produced the damage, which obtains its recognition through the judgment that declares it to be so.  Id.  Therefore, interruptive acts operate individually.  "[I]f the solidarity does not arise except for a judgment, which is the so-called improper solidarity, the interruption of the prescription with regard to one of the debtors does not reach the other, since he was not a joint and several debtor and was only so as of the judgment that declared this, not before." J. of June 4, 2007, No. 3645/2007; J. of March 14, 2003, 3612/2003.

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

This doctrine is already consolidated in Spain. J. of October 19, 2007, No. 1086/2007. And it has been applied uniformly since 2003. See: J. of July 18, 2011, No. 545/2011; J. of October 19, 2007, No. 1086/2007; J. of May 8, 2007, No. 466/2997; J. of May 8, 2007, No 466/2007; J. of June 5, **[*29]** 2003, No. 534/2003; J. of October 23, 2003, No. 979/2003.

**IV**

We have carefully examined the standard of *Arroyo v. Hospital La Concepción, supra*. In this case we are faced with the existence of two possible interpretations regarding solidarity in our code of laws, one of them reiterated the homogeneous nature of solidarity and, as a result thereof, the recognition in all its extension of its primary and secondary effects. The other admitted a distinction between proper and improper solidarity. Pursuant to this last exegesis, the primary effects of solidarity will be intact --that each co-debtor is responsible for paying the entire debt--, but the secondary effects of solidarity would not be recognized --in this case, that the interruption of the prescriptive term against a co-causer of an extracontractual damage will in turn interrupt, in an indefinite manner, the term against the rest of the co-causers--.

Based on this situation, in *Arroyo v. Hospital La Concepción, supra*, we leaned towards the appreciation of the Spanish doctrine in effect at that time --and abandoned in that jurisdiction almost a decade ago-- and interpreted that according to Art. 1874 of our **[*30]** Civil Code, supra, whose first paragraph provides that "[t]he interruption of the prescription of actions in joint and several obligations equally benefits or affects all of the creditors or debtors", the timely filing of a complaint for damages against a joint and several co-causer interrupted the prescriptive term against all of those who were liable in a joint and several manner. It was not the first time that we filled a vacuum in

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

legislation regarding extracontractual civil liability, since the proper joint and several liability of the co-causers of the damage does not arise expressly from the law, but from a judicial interpretation of the provisions of our Civil Code. C.J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, 6th ed., [sin. l.], ed. of the author, 2007, page 343. Thus, in *Arroyo v. Hospital La Concepción, supra,* we jurisprudentially interpreted that in our laws there was only one joint and several obligation and we refused to make a distinction between perfect and imperfect solidarity, and in turn admitted the effects that this implied with regard to the interruption of the prescriptive term.

We did the above for the purpose of achieving a fair balance between **[*31]** opposing forces. We affirmed in *Arroyo v. Hospital La Concepción, supra,* that the standard adopted therein "achieve the best equilibrium between all of the interests". Id., page 608. It was the enunciation of a hypothesis to be verified. Two decades later, the cumulus of experience forces us to conclude that the standard therein established did not achieve the equilibrium that we sought. In effect, after *Arroyo v. Hospital la Concepción, supra,* we recognized that this rule in effect provides a greater protection to the plaintiff. See, by way of example, *García Pérez v. Corp. Serv. Mujer, supra, Page 151.* And this is sustained by the multiple effects of the rule applied in practice.

The plaintiff can bring another person as a co-defendant into the action even though he files the claim outside of the term of prescription. In fact, even though he knows beforehand the identity of the alleged joint and several co-causer, he does not have to include him in the original complaint. See *García Pérez v. Corp. Serv. Mujer, supra.* The aggrieved does not even have to allege the joint and several liability of the co-causers in this complaint, since he can do so afterwards through an amendment to the complaint. Id. In said amendment

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

he must only allege that the new defendant is **[*32]** jointly and severally liable for the damages claimed from the original defendant, against whom he filed the complaint within the term of prescription provided by the code of laws. In this manner, even though the plaintiff is in a position to exercise his cause of action against the presumed joint and several co-cause, he has no limit whatsoever to do so. This, since the standard in *Arroyo v. Hospital La Concepción, supra*, in effect provided an automatic and indefinite interruptive effect in prejudice to all of those who could be jointly and severally liable for the damage.

On its part, the alleged joint and several co-causer brought into the action several years after having filed the original complaint --six years in this case-- has to employ, and not on very few occasions, numerous efforts to remember with specific certainty --if any-- the particular events that motivated the claim against him. He must face, also, the diligent search for documents conceived at that historical point in time; a matter which becomes complicated when they are in the hands of third parties with which one has little or no relationship, or in the hands of a third party that no longer exists. Similarly, the more time passes until he is finally incorporated as a codefendant, **[*32]** the greater will be the probability of confronting difficulties to find witnesses. Similarly, the presumed joint and several co-causer must incur in expenses associated with a litigation which would have otherwise prescribed, due to the brevity of the term in our Civil Code for these claims.

As should be contemplated, far from achieving a balance between opposing interests, this standard tips the balance of the situation in favor of the claimant. As a result of the above, and despite the express and extensive recognition of the substantive figure of prescription in Arts. 1840 to 1874 of our Civil Code, *supra*, the severity that characterizes the terms of prescription diminishes considerably. This, despite

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

the fact that the existence of the same is based on the search for stability of the juridical relations and the promotion of diligence in the vindication of rights.

We note again that the rule regarding solidarity in matters of extracontractual liability devised in *Arroyo v. Hospital la Concepción, supra*, does not arise expressly from our Civil Code. When it alludes to "joint and several obligations" it does not specify if we are before an assumption of a single **[*34]** or several joint and several obligations, and in this last case, how many and which in particular. Sadly and despite said absence, we have jurisprudentially granted preeminence to the standard adopted therein regarding the substantive figure of prescription, which is expressly regulated in our code. The problem of the construction of this standard is that it did not achieve a solution that was in harmony with the rest of the juridical code of laws. Its outcome has been an institution of undermining prescription, since one party has the eternal right to claim damages from another. Equally dangerous, said standard has the unfortunate effect of awarding inertia in the vindication of a right and of promoting the strategic use of inaction, given that the plaintiff can arbitrarily select when it is most convenient for him to include a party in the litigation.

Another problem confronted by the automatic interruption and the indefinite postponement of the cause of action is that the term of prescription limited to one year for claims under Art. 1802 of the Civil Code, *supra*, responds mainly to the absence of a prior juridical relationship between the plaintiff and the defendant. The obligation **[*35]** for causing an extracontractual damage does not arise from the agreement between the parties, wherefore there is no opportunity whatsoever to negotiate the terms of the obligation nor to consent freely, contrary to the contractual relationship. Thus, the brief term provided by the legislator. In this

Certified to be a true and correct translation from its original.

*Aida Torres*
Aida Torres, USCCI
787.723.4644
2/5/13

manner a minimum of certainty was granted to a relationship that did not have the same. This minimum amount of security somehow compensates the absence of knowledge regarding the scope of the obligation. Thus, it provides a minimal protection that allows conserving a fair equilibrium between the parties. And it should not be set aside.

**From everything stated herein, we adopted in our jurisdiction the *in solidum* obligation in matters of prescription of the cause of action for civil extracontractual liability when there coincide more than one causer.[13] Pursuant to the same, the injured party may recover from each co-causer sued the entire amount of the debt that is pertinent, because the primary effects of the solidarity are maintained. But he must interrupt the prescription in relation to each co-causer separately, within the term of one year established by Art. 1868 of the Civil Code, *supra*, if he is interested in conserving his cause of action against each one [\*36] of them. This does not constitute a greater burden for the injured party, since he must only exercise the same diligence required when he claims from an author of the damage. In this manner, the timely filing of a complaint against a presumed co-causer does not interrupt the term of prescription against the rest of the alleged co-causers, because said secondary effect of the solidarity is not pertinent in the *in solidum* obligation.[14] Therefore, Art. 1874 of the Civil Code, *supra*, does not apply to cases of damages under Art. 1802 of the Civil Code, *supra*.[15]**

------------------------Footnotes----------------------------
13 We reiterate, also, that what is provided in Art. 1090 of the Civil Code, *31 L.P.R.A. sec. 3101*, with regard to the non presumption of solidarity, does not apply in matters of extracontractual liability. We also emphasized that we do not adopt the standard of *in solidum* obligation in all its extension, but only with regard to the interruption of the

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
5/1/13

prescriptive term when there coincide several co-causers of the damage under Art. 1802 of the Civil Code, *supra.*

14 Improper solidarity does not admit an automatic an indefinite interruption of the term of prescription in prejudice to other co-causers, which, by their own fault, have an obligation towards the **[*37]** injured party. The responsibility of each of them is autonomous from the others, wherefore there arises a plurality of independent bonds, which requires that the term of prescription against each debtor be individually interrupted. This, since imperfect solidarity does not arise from a pre-existing bond, but from the illegal act that produced the damage as recognized by the judgment that declares it.

15 In Puerto Rico, the same as occurred in Spain, concerns have been stated about the adoption of this standard. The concerns mainly revolve around the existence of a solid precedent and the possible effect that this change in the standard would have on juridical security. Similarly, it has been stated that its adoption is against the purpose of the application of solidarity in cases of extracontractual liability. See, J. J. Álvarez González, El Tribunal Supremo De Puerto Rico: Análisis Del Término 2007-2008, *78 Rev. Jur. U.P.R. 457 (2009).* We differ from said interpretation. As we have stated, the fair balance that we sought to achieve with the application of solidarity in actions for extracontractual damages in reality resulted in a greater protection to the **[*38]** plaintiff, indefinite postponements of causes of action, among other effects which undermine juridical stability. The standard that we adopt today with regard to the interruption of the term of prescription when there coincide several co-causers of a damage under Art. 1802 of the Civil Code, *supra,* achieves a fair equilibrium between the parties and harmonizes our code of laws. Nor does it represent a greater burden for the plaintiff, who must only exercise his cause of action with diligence against all of the possible co-causers of the damage

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

whose identity he knows. That is, in total harmony with the cognoscitive theory of the damage. Another concern stated revolved around the fact that the standard which we today adopt was contrary to Rule 51.7 of Civil Procedure of 1979, 32 L.P.R.A., App. III. The aforementioned rule was eliminated from the body of Rules of Civil Procedure of 2009, precisely because it was "contrary to the juridical code of laws, which allowed executing a judgment against a person who was not a party in the action and over which the court did not acquire jurisdiction." Supreme Court of Puerto Rico, Secretariate of the Judicial and Notarial Conference, Report of Rules of Civil Procedure, **[\*39]** March 2008, page 583. Thus, we consider that the need for a change in standard exceeds the concerns stated.--------------------End Footnotes--------------------

Naturally, the standard adopted today is also in harmony with the cognoscitive theory of the damage, wherefore the prescriptive term commences to count when the aggrieved knew or should have known, if he had employed some degree of diligence, the existence of the damage and who caused it, as well as the necessary elements to be able to effectively exercise his cause of action. *CSMPR v. Carlo Marrero et al., 182 D.P.R. 411, 425-426 (2011)*; COSSEC et al. v. González López *et al., supra*; *Vera v. Dr. Bravo, 161 D.P.R. 308, 328 (2004)*; *Santiago v. Ríos Alonso, 156 D.P.R. 181, 189 (2002)*. Thus, if through the discovery of evidence or another method the aggrieved becomes aware of the existence of another co-author and of the rest of the necessary elements to claim from him, the term of prescription against his alleged co-causer will commence to elapse as of that moment. This, since a statute of prescription whose effect is to require that the plaintiff file a cause of action before becoming aware of the existence of the same, violates due process. *COSSEC et al. v. González López* et al, *supra, pages* **[\*40]** 821-822; *Vera v. Dr. Bravo, supra,* page 327; *Vega v. J. Pérez & Cía., Inc., 135 D.P.R. 746, 754 (1994)*.

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
2/5/13

In this manner we harmonize the standard when there are several co-causers of an extracontractual damage with the cognoscitive theory of the damage and with the substantive figure of prescription, while we respect in turn the minimum of certainty granted by the legislator for this type of relationship. At the same time, through the adoption of improper solidarity we resolve the problem of uncertainty presented by the indefinite duration of the cause of action for civil extracontractual liability. The standard herein established allows the curtailment of the dangerous border where the search for redress of a damage does not find any requirement whatsoever of diligence, despite the express mandate of the provisions of our Civil Code. The diligence in the claim of a right is indispensable in the whole.

We are aware that the previous doctrine is a consolidated one, but said circumstance is not an impediment to harmonizing our juridical code of laws and remedying an injustice. Even though the doctrine of *stare decisis* establishes that a court must follow its decisions in subsequent cases, it does not reach **[*41]** the point of stating that the opinion of a Court becomes a dogma that the Court must blindly follow. *Pueblo v. Díaz De León, 176 D.P.R. 913, 921 (2009); A. Railroad Co. v. Comisión Industrial, 61 D.P.R. 314, 326 (1943)*. That is why when the rationale of a decision no longer resists a careful analysis we are not obligated to follow it. *Arizona v. Gant, 556 U.S. 332, 348 (2009)*. In this manner the consistent development of legal principles is allowed. *Pueblo v. Díaz De León, supra; Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996)*

**V**

The complaint in this case was filed on May 2, 2002. It was six long years in which the plaintiffs contained their claimed against Doctor Mestre Morera, who they finally

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
4/5/13

incorporated into the action on May 21, 2008, through an amended complaint.

The statements of the plaintiff themselves reveals their knowledge about the identity and the participation of Doctor Mestre Morera in the event. Coplaintiff Fraguada Pérez testified that she was in Mrs. Pérez' room, watching the procedure that was being performed by the nurse. It was then when she observed that Mrs. **[\*42]** Pérez started to cough, repetitively. In view of this unexpected situation, Doctor Mestre Morera and another physician went hurriedly to the room. Co-plaintiff herself asked the doctors to do something, while she remained firm at her mother's side. She witnessed the alleged discussion between Doctor Mestre Morera and the other physician regarding the placement of the nasogastric tube in the patient's lung, and the admonishment that one of them launched to his conversational partner about the potential danger of an embolism. The coplaintiff continued at the side of her mother and very near the physicians who --as she testified-- alternatively ordered the removal of the patient's tube. In this instance, and before the eyes and presence of the coplaintiff, the tube was taken out from the interior of Mrs. Pérez.

Precisely, the alleged erroneous placement of the nasogastric tube and the alleged discussion of Doctor Mestre Morera are the only two reasons for which the plaintiff claims from the physician in the amended complaint that was filed six years later. From the coplaintiff's testimony, given in a deposition, it clearly appears that as of the day of the event the plaintiffs were aware of the identity of the physician and **[\*43]** his alleged responsibility in the production of the alleged damage, which had its culminating moment months later with the death of Mrs. Pérez. Despite being aware of the above, the plaintiff did not include Doctor Mestre Morera in its original complaint. On the contrary, it decided to do so six years later, an action which demonstrates its negligence

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
2/5/13

and abandonment of this claim.[16]   Therefore, pursuant to the standard adopted today, the plaintiff should have individually claimed from Doctor Mestre Morera as an alleged joint and several co-causer within the term of prescription of one year provided in Art. 1868 of our Civil Code, *supra*, which commenced to count as soon as it became aware of the damage, the identity of the author, and the necessary elements to exercise its cause of action.

---------------------------Footnotes-----------------------
16  Notice also that since 2005 the plaintiff had the report of an expert which advised about the deviations in the placement of the nasogastric tube. Despite this, it also did not claim to doctor Mestre Morera, until three years had elapses since it obtained the aforementioned report.-----End Footnotes---------------------------------------------------------

Notwithstanding the above, in evaluating the criteria established to declare the retroactive or prospective application **[\*44]** of a judicial finding --reliance deposited by the plaintiffs on the prior standard; purpose pursued by the new rule to determine if their retroactiveness advances it, and the effect of the new standard in the administration of justice-- we resolve that our decision should have a prospective effect. See: *Isla Verde Rental v. García*, 165 D.P.R. 499, 505 (2005); *Datiz v. Hospital Episcopal*, 163 D.P.R. 10, 18 (2004); *Gorbea Vallés v. Registrador*, 131 D.P.R. 10, 16 (1992); *Correa Vélez v. Carrasquillo*, 103 D.P.R. 912, 918 (1975). This is because it is newly minted and the application of said standard to this case would entail substantially unfair results for the appellees, who relied on the previous standard that was displaced by the new standard which we today implement. Considerations of public policy and social order move us to have this new standard have a prospective effect, since the objective pursued is to grant fair and equitable remedies that respond to the best social cohabitation. *López v. Porrata Doria*, 169 D.P.R. 135, 169

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.733.4644
2/5/15

(2006); *Isla Verde Rental v. García, supra.* Hereinafter all causes of action filed pursuant to Art. 1802 of the Civil Code, *supra*, **[\*45]** will be judged according to the standard herein stated.

**VI**

Wherefore, we issue the writ of *certiorari* and revoke the standard of *Arroyo v. Hospital La Concepción, supra,* with regard to the interruption of the term of prescription in claims under Art. 1802 of the Civil Code, *supra*, when there are several causers of an extracontractual damage, as well as any other pronouncement incompatible with what is resolved herein. Furthermore, we issue the request for *certiorari* filed, we impart a prospective nature to the standard adopted and, as a result thereof, we confirm the resolution issued by the Court of Appeals. We remand the case to the Court of First Instance for the continuation of the proceedings.

Judgment will be issued accordingly.

Luis F. Estrella Martínez

Associate Justice

JUDGMENT

San Juan, Puerto Rico, August 13, 2012.

Pursuant to what is stated in the preceding Opinion, which is made to form part of this Judgment, the writ of *certiorari* is issued and the standard of *Arroyo v. Hospital la Concepción, supra,* is revoked with regard to the interruption of the term of prescription for claims under Art. 1802 of the Civil Code, *supra*, when there are several co-causers of an **[\*46]** extracontractual damage, as well as any other pronouncement incompatible with what is resolved herein.

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
2/5/13

Furthermore, we issue the writ of *certiorari* filed, impart a prospective nature to the standard adopted and, as a result thereof, we confirm the resolution issued by the Court of Appeals.  We remand the case to the Court of First Instance for the continuation of the proceedings.

So pronounced, ordered by the Court and certified by the Clerk of the Supreme Court.  Associate Justice Mrs. Pabón Charneco dissents with a written opinion, which is joined by Associate Justices Messrs. Rivera García and Feliberti Cintrón.

Associate Justice Mrs. Fiol Matta makes the following statement:

"Associate Justice Mrs. Fiol Matta dissents of the decision of the Court that revokes the standard established in *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992).  The opinions in *Arroyo* and in *García Pérez v. Corp. Serv. Mujeres*, 174 D.P.R. 138 (2008), as well as the Dissident Opinion in this case of Associate Justice Pabón Charneco and the article of Professor José Julián Álvarez González *"Responsabilidad Civil Extracontractual"*, 78 Rev. Jur. U.P.R. 457, 473 (2009), apply the reasons why the **[\*47]** *in solidum* doctrine should not be adopted in our jurisdiction.

I coincide with the majority Opinion in the difficulties presented that a potential co-defendant be brought into an action years after the same was filed, as a joint and several co-causer of the damage alleged, because the original complaint interrupted the prescriptive terms of all of the co-causers.  Nevertheless, the standard adopted in *Arroyo* allowed attending this problem, adequately, since it did not impede at all that there be

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
4/5/13

considered, under the doctrine of negligence, those extraordinary circumstances, such as the one in this case, where a plaintiff crosses his arms and is not diligent in finding out the identity of other possible co-causers of the damage or, if known, bringing them into the action. For this, it is not necessary to resort to the *in solidum* doctrine and dividing extracontractual solidarity between primary and secondary effects. What was pertinent was ruling out an inflexible application of the *Arroyo* standard and adjusting it to attend situations such as the one in this case, without having to revoke twenty years of precedents and adopting a new interpretation of the Civil Code. The result in this case would have been, without doubt, the dismissal **[*48]** of the complaint, not by the application of the new doctrine, but because the plaintiff incurred in negligence by crossing its arms and not amending the complaint when he knew the identity of the co-causers.

I am concerned that the new standard will cause more problems than those it resolves and will produce situations where a victim is unnecessarily prejudiced. I believe that the Opinion of the Court partially recognizes this reality and, because of that, is obligated to establish numerous protections, thereby creating an unnecessarily confusing and complicated scheme. Under *Arroyo* our standards gave priority to the indemnification of the damage suffered by the victim, while it protected the defendants in case of negligence and lack of diligence by the plaintiffs. Now, to protect the potential co-defendants brought tardily into actions, the victims are deprived of one of the main tools to attempt to redress its damages: the simultaneous interruption of the terms of

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644

prescription for all of the joint and several co-causers, subject, of course, to the basic rules of law, among them, diligence. I fear that the inevitable consequences of this decision will be the eventual adoption of a standard of **[\*49]** joint liability for cases of extracontractual civil liability, setting aside almost one century of precedents of statutory interpretation which have not been altered by the Legislative Assembly.

I share many of the concerns of the majority Opinion. Without doubt, an inflexible application of the standard in *Arroyo* could produce situations that are obviously unfair for some potential defendants which would be subject to some plaintiffs crossing their arms relying on the fact that the complaint against a co-causer perpetually interrupts the terms of prescription against the rest. But this can be attended without altering the standard in effect up to now. That is why I differ, very respectfully, with the solution adopted."

Aida Ileana Oquendo Graulau

Clerk of the Supreme Court

**DISSENSION:**

In San Juan, Puerto Rico, August 13, 2012.

I respectfully dissent with the majority Opinion. It makes a normative change of a regressive nature in the field of civil extracontractual liability by *partially* adopting the Doctrine of *In Solidum* Obligations.[17] In this manner, the Opinion introduces a *tertium genus* between joint and joint and several obligations which are not recognized **[\*50]** in our

Certified to be a true and correct translation from its original.

*[signature]*
Aida Torres, USCCI
787.723.4644
*4/5/13*

rules.[18] In turn, it rules out without further ado a jurisprudence consolidated for the purpose of limiting the term of prescription for the co-causers of a damage that were not brought into the action within the Original complaint.

-------------------- Footnotes---------------------------
17 The majority Opinion adopts the Doctrine of *In Solidum* Obligations "only with regard to the interruption of the term of prescription when there coincide several co-causers of the damage under Art. 1802 of the Civil Code." Majority Opinion, pages 26-27, endnote 11.

18   V. Múrtula Lafuente, La *Responsabilidad Civil por los Daños Causados por un Miembro Indeterminado de un Grupo*, Madrid, Ed. Dykinson, 2005, pages 103-104; A. Cristobal Montes, *Mancomunidad o Solidaridad en la Responsabilidad Plural por Acto Ilicito Civil*, Barcelona, Ed. Bosch, 1985, page 41.-------------End Footnotes-------------------------

Certainly, on occasions the creditor of the damage omits suing one of the co-causers for a prolonged period - despite knowing his identity- and during the course of the action amends the Complaint to include him. This situation which in principle adheres to the language of the law, can be perceived as an abuse of the abnormal exercise of the law when it affects the defense of these co-causers, as well as effective judicial economy. **[*51]** There is no doubt that our juridical system provides the tools to deal with the difficulties that this type of practice can entail without having to resort to a doctrine that does not adhere to our system.

Let us briefly examine the facts that originated this controversy.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
~/5/13

I

On May 2, 2002, the appellee (comprised by Mr. Daniel Fraguada Bonilla, Mr. Héctor L. Fraguada Pérez, Mrs. Ana Hilda Fraguada Pérez, Mrs. María de los Ángeles Fraguada Pérez, Mr. Carlos Daniel Fraguada Pérez and Mr. Ángel G. Osorio Fraguada) filed a Complaint for damages against Hospital Auxilio Mutuo, Dr. Manuel Anguita Alvarado and two (2) other unknown physicians. In short, it alleged negligence in the medical treatment of Mrs. Hilda Pérez, who died on July 1, 2000. Furthermore, in the Complaint the exception was made that "at the time of filing this complaint they did not know all of the details related to the facts and the same was being filed for the purpose of interrupting the term of prescription".[19]

------------------------Footnotes------------------------
10 Appendix to the Petition for *Certiorari*, page 48.
------------------------End Foonotes------------------------

On October 25, 2006, the primary forum issued a Partial Judgment **[*52]** due to an Amended Stipulation pursuant to which it approved the settlement and released the Hospital Auxilio Mutuo from the claim.[20] This being the case, on April 2008 the appellee requested authorization to amend the Complaint and indicated that as a result of its action in the investigative phase of the evidence there arose information of two (2) other doctors who were negligent in the treatment of Mrs. Pérez. On April 14, 2008, the appellee amended the Complaint to include Dr. Octavio Mestre Morera (hereinafter Mestre Morera or petitioner) and Dr. Noel Totti.

------------------------Footnotes------------------------
20 Appendix of the Petition for *Certiorari*, page 64.
------------------------End Footnotes------------------------

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
787.723.4644
2/5/13

On his part, Doctor Mestre Morera filed in his Answer to the Complaint the affirmative defense of prescription on February 10, 2009.  He particularly indicated that:

> The cause of action which is attempted to be exercised against the appearing party has prescribed.  Our current rules promote diligence in the exercise of rights and penalizes negligence. The filing of the amended complaint involved herein to include the appearing party **six years** after the filing of the original complaint denotes a gross lack of diligence by the **[\*53]** plaintiff. (Emphasis in the original).  Appendix of the Petition for *Certiorari*, page 84.

On April 14, 2009, the petitioner filed a Motion Requesting Summary Judgment based on Prescription.[21] In the same he indicated that there arose from a deposition taken on June 11, 2005 from coplaintiff María de los Angeles Fraguada, that the appellee was aware that Dr. Mestre Morera had intervened in the treatment of Mrs. Pérez.  He added that as of that date the appellee already had an expert report in this regard.[22]  Therefore, he requested the dismissal of the cause of action in view of the lack of diligence of the plaintiff in exercising its action, since three (3) years had already elapsed since the plaintiff had the necessary information.  On the other hand, the appellee indicated that the filing of the Original complaint had interrupted the term of prescription with regard to the other joint and several co-causers and that they could be included in the action through an Amended Complaint pursuant to the law in effect.  This request was Denied on July 9, 2009.

-----------------------Footnotes----------------------------
21 Appendix to the Petition for *Certiorari*, pages 85-94.

Certified to be a true and correct
translation from its original.
*[signature]*
Aída Torres, USCCI
787.723.4644
*[handwritten date]*

22 Appendix to the Petition [*54] for *Certiorari*, pages 99–101.

-----------------------End Foonotes-----------------------

After the filing of a timely Motion for Reconsideration that was denied by the court of first instance, the petitioner filed a request for certiorari, before the Court of Appeals. It was denied.

Not in agreement, the petitioner appealed to us and stated the following error:

The Court of Appeals erred in applying the doctrine of solidarity between alleged joint and several co-causers without taking into consideration the allegation of negligence argued by the appearing party to sustain that in this case the plaintiff should not benefit from the liberal conditions of prescription, considering that the facts on which the appearing party is being claimed occurred eight years before the filing of the amended complaint in which he is included in the litigation and which pursuant to the cognoscitive theory of the damage, the plaintiff counted with all of the necessary elements to claim from Dr. Mestre Morera three years before the filing of the amended complaint.

## II

### A.

Civil extracontractual liability, is essentially based on Art. 1802 of the Civil Code, 31 L.P.R.A., sec. 5141. This article prescribes, in what is pertinent [*55] that: "whoever by action of omission causes damages to another, intervening

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644
~/5//3

fault or negligence, is obligated to indemnify the damage caused."

In turn, Art. 1868 of the Civil Code, 31 L.P.R.A. sec. 5298, provides a prescriptive term of one (1) year for these actions. They commence to count when the injured party discovered or was able to discover the damage, its causer, as well as the necessary elements to be able to effectively exercise his cause of action.[23] Art. 1869 of the Civil Code, 31 L.P.R.A. sec. 5299. See also, COSSEC et al. v. González López et al., 179 D.P.R. 793, 806 (2010), Ojeda v. El Vocero, 137 D.P.R. 315, 325 (1994). This, since the passing of time entails the loss of the exercise of the rights in order to prevent the uncertainty of the juridical relations and punishes the inaction of the titleholders in the exercise of their rights. García Pérez v. Corp. Serv. Mujer, 174 D.P.R. 138, 147 (2008). Therefore, it must be interrupted pursuant to Art. 1873 of the Cvil Code, 31 L.P.R.A. sec. 5303.

---------------------------Footnotes------------------------
23 "It is not necessary that the injured party know at that time the entire magnitude and extent of the harmful consequences of the corporal injuries since this [*56] point can be established at a subsequent time." Vera v. Dr. Bravo, 161 D.P.R. 308 (2004). Nevertheless, since prescriptive extinction punishes the indolence of the party, if the lack of awareness is due to the lack of diligence of the claimant, then the considerations regarding prescription are not applicable. COSSEC et al. v. González López et al., 179 D.P.R. 793, 806 (2010).----------End Footnotes-------------

Despite these standards, there constantly appear new issues that require a greater analysis and interpretation of the same to answer new situations which continuously arise in this field. A frequent situation is the plurality of possible co-causers of a damage whose juridical regime is not expressly

Certified to be a true and correct translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

determined in our Civil Code. This, in turn, generates multiple substantive and procedural difficulties. Let us examine how we have attended the situations of plurality of responsibility in the past.

**B.**

Faced with multiple causers of a damage through fault or negligence, there is no doubt that each one is obligated to redress the damage caused. *Cubano v. Jiménez et al., 32 D.P.R. 167 (1923)*. Notwithstanding this, one of the difficulties that we face due to the brief statements of the Civil Code, **[*57]** without this entailing an unsurmountable obstacle, is if the obligation to redress the damage among co-causers is joint or joint and several. Our Code – as well as the Spanish Civil Code– does not expressly state this distinction contrary to most of the foreign Civil Codes.[24]

-----------------------------Footnotes----------------------
24  For a succinct narration, see, J. J. Santos Briz, *La Responsabilidad por Hecho de Otro Derivada de Acto Ilícito No Penal*, en *Tratado de Responsabilidad Civil* (I. Sierra Gil de la Cuesta, cord.) Bosch, T. II, 2008, p. 670; J.J. Álvarez González, *Responsabilidad Civil Extracontractual*, 78 (No. 2) Rev. Jur. U.P.R. 457, 478 (2009).-------- End Footnotes-----

As is known obligations with a plurality of subjects can be **joint or several.** In principle, Art. 1090 of the Civil Code, 31 L.P.R.A. sec. 3101, provides that when before the concurrence of two (2) or more debtors or two (2) or more creditors, solidarity is not presumed except joint liability. That is, the credit or the debt is presumed divided into as many equal parts as there are creditors or debtors, considering different credits or debts one from the others when from the text of the obligation nothing else is stated. Art. 1091 of the Civil Code, 31 L.P.R.A. sec. 3102. **[*58]** This since solidarity between debtors aggravates the burden that

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
2/5/13

the debt represents when it is possible that one of the debtors satisfies his debt and that of the other in view of the insolvency of those co-obligated. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596, 602 (1992). As we will explain later on, we have already defined that Art. 1090 of the Civil Code is only applicable in the contractual regimen; which interpretation is also not contradicted by the majority Opinion.[25]

--------------------- Footnotes ------------------------
25. Majority Opinion, pages 26-27, endnote 11.
----------------------End Footnotes---------------------

On the other hand joint and several obligation is understood to mean

one where there concur several creditors (active solidarity) or several debtors (passive solidarity), or several creditors and at the same time several debtors (mixed solidarity), and where each creditor is entitled to request, and each debtor has the obligation or duty to pay in its entirety, the consideration owed. *Arroyo v. Hospital la Concepción, supra, page 600.*

In those cases where the joint and several debtor pays the entire consideration, the obligation is extinguished, since the creditor is only entitled to receive it once. Nevertheless, he may recover from the others what he has paid in excess. Art. 1098 of the Civil Code, 31 L.P.R.A. sec. 3109. **[*59]** *A contrario sensu*, when the creditor is unable to collect the debt entirely through the claim filed against one (1) or several of the debtors, he may subsequently go against the others. Art. 1097 of the Civil Code, 31 L.P.R.A. sec. 3108.

Certified to be a true and correct
translation from its original.
*Aída Torres*
Aída Torres, USCCI
787.723.4644
2/5/13

　　　With the passing of time and after a careful analysis, we have developed a consolidated jurisprudence where it is stated that the juridical regimen in cases of plurality of causers of an indivisible damage is solidarity.[26] *Arroyo v. Hospital La Concepción,* supra., pages 604-605; *García v. Gobierno de la Capital*, 72 D.P.R. 138, 145 (1951); *García Pérez v. Corp. Serv. Mujer, supra.*

--------------------------Footnotes--------------------------
26　　This jurisprudence is also supported by the prevailing doctrine. M. Martín-Casals y J. Solé, *Multiple Tortfeasors under Spanish Law* en: W.V.H. Rogers, *Unification of Tort Law: Multiple Tortfeasors*, The Hague, Ed. Kluwer Law International, 2004, page 189.-------------- End Footnotes------------------

　　　Despite prior statements in *Cubano v. Jiménez*, et al, supra, and *García v. Gobierno de la Capital, supra*, it was in *Arroyo v. Hospital la Concepcion, supra,* that we clarified that the presumption of non solidarity of Art. 1090 does not apply in matters of extracontractual liability. This is because **[*60]** the rationale of the applicability of Art. 1090 in the contractual field are different. In this regard we indicated that "it is not the will of the parties that creates the obligation, since it arises unilaterally, by virtue of an act freely performed by a person in relation to another; and the law gives efficacy and sanctions the natural obligation to redress the prejudice invoked." (Emphasis in the original suppressed). *Arroyo v. Hospital La Concepción, supra,* page 602, citing A. Borell Macía,*Responsabilidades Derivadas de Culpa Extracontractual Civil*, 2da ed., Barcelona, Ed. Bosch, 1958, pág 319.　　Furthermore, in these cases the obligation arises from Art. 1802 itself, which requires that the obligated redress the damage caused.[27] That is why we adopt the interpretation of the majority doctrine, and at that time in the Spanish jurisprudence, since legal solidarity exists pursuant to Art. 1802 when two (2) or more cause a unique and indivisible damage. See, H.M. Brau, *El término Prescriptivo*

Certified to be a true and correct
translation from its original.

Aída Torres, USCCI
787.723.4644
4/5/13

*y su Interrupción en Acciones en Daños por Responsabilidad Extracontractual Solidaria en el Derecho Puertorriqueño*, 44 (No. 2) Rev. C. Abo. P.R. 203, 204-205 (1983).   In this manner the **[\*63]** guarantee of the injured party is increased and he is protected with greater efficacy so that he can receive the entire indemnification in case of the insolvency of any of the causers.[28]

------------------------- Footnotes-------------------------
27 "The legal standards ordering solidarity have to be submitted, as is logical, to interpretation".   Luis Díez Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Thompson, V.II, 2008, page 2000.

28 In this regard, we have recognized the doctrinal debate. *Arroyo v. Hospital la Concepción, supra*, 130 D.P.R. 596 (1992).-----------------End Footnotes---------------------

     Pursuant to these principles, we also establish that said "legal solidarity" has the same consequences as in the contractual field.  When adopting solidarity between those co-responsible of the same damage, it must be with all its effects, since different types of solidarity are not justified in our Civil Code.  *Arroyo v. Hospital La Concepción, supra*, page 606.  See, J.J. Álvarez González, *Responsabilidad Civil Extracontractual*, 78 (No. 2) Rev. Jur. U.P.R. 457, 504-505 (2009); L.F. Reglero Campos, *La Prescripción de la Acción de Reclamación de Daños*, in *Tratado de Responsabilidad Civil*, Tomo I, Ed. Aranzadi, 2008, T.I, page 1280; M. Albaladejo García, *Interrupción o No de la Prescripción* **[\*62]** *Frente a Todos los Deudores Solidarios por Reclamación a Uno Solo: Comentario a la Sentencia del Tribunal Supremo de 14 de Marzo de 2003*, Rev. Der. Priv. 553 (2003); A. Cristobal Montes, *Mancomunidad o Solidaridad en la Responsabilidad Plural por Acto Ilícito Civil*, Barcelona, Ed. Bosch, 1985, page 42. As part of these effects, the interruption of the prescription against one affects the others pursuant to Art. 1874 of the

Certified to be a true and correct
translation from its original.
*[signature]*
Aída Torres, USCCI
787.723.4644
4/5/13

Civil Code, 31 L.P.R.A. sec. 5304. *Rivera Otero v. Casco Sales Co., 115 D.P.R. 662 (1984).* We specifically resolved that[29]

> *The doctrine of solidarity (consecrated in Garcia v. Gobierno de la Capital, supra) allows bringing to trial filed on time, a joint and several (co-causer) who was not originally [i]ncluded in the action...* through a third party complaint by the original defendant [or] by amendment to the complaint by the plaintiff... [I]t is only required to alleged well and sufficiently in the complaint - the fact that the new defendant, or the third party defendant, whichever the case, responds jointly and severally for the damages claimed in the original complaint, against whom *the complaint was filed* within the term of prescription, provided by the rules... **[*63]** (Emphasis in the original). *Arroyo v. Hospital La Concepción, supra,* pages 607-608, citing H.M. Brau, *op. cit.,* page 243. See also, *García Pérez v. Corp. Serv. Mujer, supra,* page 155.

------------------------------Footnotes----------------------

29   This after examining the French, German, Italian and Spanish doctrines with regard to prescription in these assumptions.

------------------------------End Footnotes--------------------

In this regard, the majority Opinion reiterates "that the non presumption of solidarity" does not apply in matters of extracontractual liability.[30] Nevertheless, it eliminates the homogenous treatment of solidarity pursuant to what was established by the Civil Code itself, or at least partially by

Certified to be a true and correct
translation from its original.

*Aida Torres, USCCI*
787.723.4644
2/5/13

adopting said doctrine only with regard to prescription. In this manner it creates some effects until then unknown by our juridical rules and whose adoption corresponds to the Legislative Assembly. For this, it embraces the Doctrine of *In Solidum* Obligations, as it explains, "to harmonize the rule when there are several causers of an extracontractual damage with the cognoscitive theory of the damage and with the substantive figure of the prescription, while we in turn respect the minimum of certainty granted by the legislator for this type of relationship".[31] Therefore, let us examine what this **[*64]** doctrine sustains.

---------------------------Footnotes-----------------------

30  Majority Opinion, pages 26-27, sec. 11.

31 Majority Opinion, page 28.----------End Footnotes--------

C.


    In view of the general rule that solidarity is not presumed, French doctrine has conveniently developed the Doctrine of *In Solidum* Obligations. With the same it attempts to justify that each one of those responsible is obligated to pay the entire debt without any of its effects, among them: prescription, possibility of res judicata with regard to other debtors and the appeal, among others.[32]  "For this it distinguishes between two (2) types of solidarity in the scope of passive solidarity: perfect and imperfect solidarity; distinctions not contained in our Civil Code."[33]

Certified to be a true and correct
translation from its original.
*Aida Torres*
Aida Torres, USCCI
787,723,4644
2/5/13

-------------------------Footnotes-----------------------

32   J.J. Alvarez González, *supra*, pages 478 nd 504, endnote 206.

33 As recognized by one of the defender of the Doctrine of *In Solidum* Obligations, José Ricardo Leon Alonso:

> "in our Law... the *in solidum* obligation does not have a doctrinal basis on which it can be established, nor a specific standard from where to start; therefore, it will be convenient to successively study the possible placement of the *in solidum* obligation in the articulate or in the spirit of our C.c., the terminological separation of figures **[\*65]** particularly related and of course, the path through the dark doctrinal panorama". J.R. León Alonso, *La Categoría de la Obligación In Solidum*, Sevilla, Pub. de la Universidad de Sevilla, 1978, page 27.

--------------------- End Footnotes-----------------------

To explain this distinction, the majority Opinion borrows the definition of *in solidum* obligations provided by José Ricardo León Alonso,. "Solidarity is perfect when it exists among several persons joined by a common interest, which have frequent relations among themselves or know each other", but it is "imperfect when the Law establishes it among persons who do not know each other, who are merely accidental co-debtors or when their relations are sporadic." See: J.R. León Alonso, *La Categoría de la Obligación In Solidum*, Sevilla, Pub. de la Universidad de Sevilla, 1978, pages 32-33, citing Mourlon, *Repetitions Écrites Sur le Code Civil*, Paris, T.III, 1896, no 1.260.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
2/5/13

--------------------------Footnotes----------------------------
34  Majority Opinion, page 15.------------End Footnotes-----

As clearly summarized by Prof. Virginia Múrtula Lafuente, the Doctrine of *In Solidum* Obligations:

...is based on specific cases of plurality of debtors, even though one of them responds for all, his responsibility is autonomous from that of the others, since the bond that is derived **[*66]** from the same is an independent bond, which has arisen on its own (it derives, then from the principle of equivalence of causes -all those who have participated in the harmful fact must be considered authors of the fact-).  Contrary to joint and several obligations, where each debtor owes the same consideration, in *in solidum* obligations identical considerations are owed.  With this it tries to avoid specific consequences proper of passive solidarity.  Thus, the injured party to preserve its action against each one of the co-authors, must interrupt the prescription in relation to each one of them; the judgment that he obtains with regard to one will not be opposable to the others; and the appeal filed by one against a common judgment will not benefit the others.  Nevertheless, common effects are recognized to the joint and several obligation; the creditor can claim the consideration in its entirety from any of the debtors and the payment made by one of them releases all.  V. Múrtula Lafuente, La *Responsabilidad Civil por los Daños Causados por un Miembro Indeterminado de un Grupo*, Madrid, Ed. Dykinson, 2005, pages 103-104

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
787.723.4644

This doctrine was accepted by Spanish jurisprudence. Through **[*67]** the Judgment of March 14, 2003, the Spanish Supreme Court examined the appeal filed. In that case the plaintiff suffered a serious work accident while working on a construction project. He filed a Complaint claiming indemnification for the damage against the company for which he worked, the promoter of the project and the architect. Nevertheless, when the Judgment had already been issued and due to the insolvency of those condemned, he filed a new Complaint against the technical architect and two (2) insurance companies. The Complaint was dismissed due to prescription. The Judgment indicates that:

> ...doctrine has recognized together with "proper solidarity" ... another modality of solidarity called "improper", or 'in solidum' obligations which originate from the nature of the illegal and that of the plurality of subjects who have concurred in its production, and which arises when it is not possible to individualize the respective responsibilities. All of the rules provided for proper solidarity are not applicable to this last type of solidarity, and especially it does not require that Art. 1.974 of the Civil Code in its first paragraph be taken into consideration...

[When referring to the Judgment of October 31, **[*68]**, 2002, it adds that] the source from where solidarity arises... is the judgment, and it does not exist previously.[35] J. of March 14, 2003, No. 223/2003.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
787.723.4644

------------------------------Footnotes----------------------------

35   In this regard, the majority Opinion accepts that "imperfect solidarity does not arise from a pre-existing bond, but from the illegal act that produces the damage as recognized by the judgment that declares it."   Majority Opinion, page 27, endnote 1.   This position is highly criticized.  See, M. Albaladejo García, *Interrupción o No de la Prescripción Frente a Todos los Deudores Solidarios por Reclamación a Uno Solo: Comentario a la Sentencia del Tribunal Supremo de 14 de marzo de 2003*, Rev. Der. Priv. 543, 554 (2003).------------------- End Footnotes---------------------


Nevertheless, the doctrine continues ruling out *in solidum* obligations, since Juridical Rules divide obligations with a plurality of subjects into joint and joint and several, and in view of this establishes its juridical regimen.  See, V. Múrtula Lafuente, *op. cit*, page 104, M. Martín-Casals and J. Solé, *Multiple Tortfeasors under Spanish Law* in: W.V.H. Rogers, *Unification of Tort Law: Multiple Tortfeasors*, The Hague, Ed. Kluwer Law International, 2004, page 193.


**III**


The fact that the doctrine of *in solidum* obligations has been **[*69]** adopted in Spain, does not deteriorate the fact that our rules only recognize one type of solidarity.  In view of this, there are still valid and correct the reasons why we interpret that the obligations arising from the damage caused by a plurality of causers is joint and several, with all of the effects that the solidarity entails.   In essence, no distinctions are introduced which do not find justification in the Civil Code, the guarantee of the injured party increases so that he can receive the entire indemnification of his damage, and effective judicial economy is fostered.

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644

The header shows garbled overlapping text.

through an amendment to the Complaint. *Arroyo v. Hospital la Concepción, supra*, pages 607-608. Nevertheless this right is not absolute or unlimited.

In this regard, Luis Puig and Ferriol illustrates us with the following statements:

> [I]t should [*71] be believed that successive judicial claims are possible in the system of the Code insofar as the interest of the creditor has not been entirely satisfied, and without, on the other hand, there being imposed on the creditor to notify the different co-debtors the different procedures that he files, which perhaps could constitute a measure of sound prudence, in order to prevent useless expenses. **In any case some of these inconveniences should be established, establishing this *ius variandi* of the creditor ex article 1.144 C.c. with the principle of good faith** (cfr. Arts. 7- and 1.258 C.c.) **and with the condemnation of the abuse of the right** (art. 7-2 C.c.),[36] **as would perhaps occur in the case of successive litigations filed by the creditor for the sole purpose of accumulating judicial expenses or eventual condemnations in costs.** (Emphasis added) L. Puig y Ferriol, *Régimen Jurídico de la Solidaridad de Deudores*, en *Libro-Homenaje a Ramón M.a Roca Sastre*, Madrid, Gráficas Cóndor, V.I, 1976, page 457.

------------------------Footnotes------------------------

26   After a doctrinal consideration and of jurisprudential application, the Spanish legislator incorporated the right to the abuse of the Civil Code through reform of the preliminary title of 1973-74. Clause 2 of Art. 7 of the Spanish Civil Code [*72] indicates that:

Certified to be a true and correct translation from its original.

*Aída Torres*
Aída Torres, USCCI
787.723.4644
2/5/13

Similarly, by including through an Amended Complaint a codebtor not included in the action originally filed improves the position of the solidary co-causer whose defense could be made difficult with the passing of time.

Nevertheless, this does not eliminate a concern of considerable importance: doesn't there exist a temporal limit for the creditor to include through an Amended Complaint a cocauser of the damage whose identity he knows, as well as all of the necessary elements to be able to effectively exercise the cause of action?

Certainly, it is a prerogative of the creditor to file a Complaint against one or all of the co-causers **[*70]** either under our juridical rules in effect as well as under the proposed Doctrine of *In Solidum* Obligations. Art. 1097 of the Civil Code, 31 L.P.R.A. sec. 3108 stats that:

> [t]he creditor can address any of the solidary debtors or against all of them simultaneously. The claims filed against one will not be an obstacle for subsequently addressing them against the others, provided the debt has not been collected in full.

From the article we deduce the options for the creditor to address his action, either (1) against all of the codebtors; (2) against some of them, (3) against only one, or (4) against one and later against others until he collects the entire debt, since only the payment of the debt in its entirety will release all of the codebtors. Art. 1098 of the Civil Code, supra. Furthermore we have recognized that the Doctrine of Solidarity also allows bringing into an action filed in a timely manner a co-causer who was not originally included

Certified to be a true and correct
translation from its original.
*Aida Torres*
Aida Torres, USCCI
787.723.4644
2/5/13

1. Rights must be exercised pursuant to the requirements of good faith.

2. The law does not protect the abuse of the right or the antisocial exercise of the same. Any action or omission which by the intention of its author, by its object or by the circumstances in which they are made manifestly exceeds the normal limits of the exercise of a right, with a damage to a third party, will give rise to the corresponding indemnification and to the adoption of the judicial or administrative measures that prevent the persistence in the abuse. Art. 7 of the Civil Code, Madrid, Ed. Civitas, 1984, page 1554.

In Puerto Rico we do not have an identical provision in the Civil Code.----------------End Footnotes---------------------

Similarly, in Puerto Rico we have recognized the principle that rights should be exercised pursuant to the requirements of good faith. *Soriano Tavárez v. Rivera Anaya, 108 D.P.R. 663, 670 (1979)*. Similarly, we have indicated that the law does not protect the abuse of the right or its anti-social exercise. Id. That is, the exercise of any right must be reasonable without it entailing the rupture of orderly social cohabitation, either in its subjective tendency (by the exercise of the right with the intention to cause harm, or without a true interest) or objective [*73] (when the titleholder manifestly exceeds the limits imposed by good faith or by the social or economic goal of that right). Id, pages 670-671. See also, J. Roca, *Art. 7.2 en Comentarios a las Reformas del Código Civil: El Nuevo Título Preliminar y la Ley de 2 de mayo de 1975*, V. I, Madrid, Ed. Tecnos, page 375. Furthermore, the behavior pursuant to good faith is a general precept encompassed by any juridical activity and it extends to the entire juridical rules. *Velilla v. Pueblo Supermarkets,*

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
787.723.4644
5/13

*Inc., 111 D.P.R. 585 (1981).* Therefore, our rules provide ways to sanction diligence and avoid excessive conducts. One of them is the principle of the abuse of the right.[37]

-------------------------Footnotes------------------------

37 Similarly, we have also recognized the Doctrine of Negligence to dismiss actions in which neglect or negligence are presented in the claim of a right. For this, the passing of time is not sufficient, since other circumstances have to be evaluated, among them the justification for the delay, the prejudice which it represents and the effect on the interests involved. See, *Rivera v. Depto. de Servicios Sociales,* 132 D.P.R. 240 (1992); *Aponte v. Srio. De Hacienda, E.L.A.,* 125 D.P.R. 610 (1990).

Nevertheless **[*74]** we consider sufficient the protection provided by the principle of abuse of the right and which is contained within civil tradition.------End Footnotes----------

The social and economic goal of authorizing amendments to the Complaint is to provide greater guarantees for the person affected to obtain the indemnification of all the damages caused, as well as to foster an efficient judicial economy. Nevertheless the victim has to exercise it reasonably and fairly, and not in an unconcerned manner. Therefore, if it is understood that there was an abuse of the right by the judger, he must admit the adoption of judicial measures, such as the dismissal of the Complaint with regard to that co-debtor.[38] In those cases, the excess translates into affecting the equilibrium between all of the interests, particularly the defense of the defendants, as well as procedural economy; which is why we have concluded that the juridical regimen of solidarity with all its effects applies to this type of case. Therefore, the so-acclaimed "eternal right" that the majority

Certified to be a true and correct translation from its original.

Xida Torres, USCCI
787.723.4644
5/13

Opinion comments, does not exist. *A contrario sensu*, we can consider abusive when already having filed the Complaint the creditor amends it to include a co-causer after an unreasonable period of time **[\*75]** since he was aware of his identity and other necessary elements. This is so except when the delay arises from actions or omissions attributable to the co-causer. In this regard, the Legislative Assembly had already determined as reasonable the term of one year. Nevertheless, it is up to the co-debtor to allege said abuse of the right and state the facts from which it arises.

---------------------Footnotes----------------------------

38   Nevertheless, we have stated that the contents of the ethicity of each act must be examined in light of its particular circumstances. *Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 585 (1981). See also, C. Lasarte Álvarez, *Principios de Derecho Civil*, Madrid, Ed. Trivium, 1992, page 171.------------End Footnotes-------------------

In harmony with the above, the fact that a doctrine is consolidated does not eliminate that it can be improved or that it respond more efficiently to the challenges of a changing society. Our juridical rules provide the necessary clarity and security to attend the consequences of an obligation that arose by multiple causers of a damage. Therefore, we do not have to resort to confections by other jurisdictions. Making distinctions that the Civil Code does not provide, such as recognizing the existence of two (2) types of solidary obligations **[\*76]** -perfect and imperfect- to be able to select among some effects and rule out others, does not contribute at all to the juridical security of the parties. Therefore, we cannot base ourselves on the idea that the harmony of the juridical rule is achieved through the partial introduction of a figure that is not recognizes in the same.

Certified to be a true and correct
translation from its original.

Aida Torres, USCCI
787.723.4644

4/5/13

**IV**

In this case the appellee interrupted the prescriptive term of one (1) year through judicial claim. In turn, it made the exception that at the time it did not know all of the details related to the facts. Thus, it also sued two (2) unknown physicians. Nevertheless, during the course of the proceedings it became aware of the names of the other doctors who intervened with Mrs. Hilda Pérez, among them Dr. Mestre Morera and an expert report that attributed deficiencies in the diagnostic and treatment that they provided. However, more than three (3) years elapsed since the appellee became aware of all of the elements and brought Dr. Mestre Morera into the action. On the other hand, the petitioner alleged and justified before the instant forum the excess incurred by the appellee. In harmony with what is stated, the delay of the appellee **[\*77]** is excessive and is not in agreement with the goal of authorizing amendments to the Complaint. Nor can this delay be attributed to the actions or omissions of the petitioner.

**V**

In view of the arguments stated above, I dissent from the majority Opinion. In exchange, I would urge the victims of a damage to promptly file their action against those causers after knowing their identity, if it is their interest of having greater guarantees of obtaining a complete indemnification. Otherwise, they run the risk that their omission be considered as an abuse attitude against the same.

Mildred G. Pabón Charneco
Associate Justice

Certified to be a true and correct
translation from its original.
Alda Torres, USCCI
787.723.4644
2/05/13